| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1** | |
| In re:<br><br>CUSTOM ALLOY CORPORATION, *et al.,*[1]<br><br><div align="center">Debtors.</div> | Chapter    11<br><br>Case No.   22-18143 (CMG)<br>(Jointly Administered)<br><br>Hon.  Christine M. Gravelle |

# COMBINED DISCLOSURE STATEMENT
## AND JOINT CHAPTER 11 PLAN OF LIQUIDATION

| | |
|---|---|
| Jonathan I. Rabinowitz<br>Henry Karwowski<br>John J. Harmon<br>Jay L. Lubetkin<br>**Rabinowitz, Lubetkin & Tully, L.L.C.**<br>293 Eisenhower Parkway, Suite 100<br>Livingston, New Jersey 07039<br>(973) 597-9100 x109 (telephone)<br>(973) 597-9119 (Facsimile)<br>jrabinowitz@rltlawfirm.com<br>hkarwowski@rltlawfirm.com<br>jharmon@rtllawfirm.com<br>jlubetkin@rtllawfirm.com<br><br>*Counsel for the Debtors and*<br>*Debtors in Possession* | Martha B. Chovanes<br>Joseph J. DiPasquale<br>Michael R. Herz<br>**Fox Rothschild LLP**<br>49 Market Street<br>Morristown, NJ  07960<br>(973) 992-4800 (Telephone)<br>(973) 992-9125 (Facsimile)<br>mchovanes@foxrothschild.com<br>jdipasquale@foxrothschild.com<br>mherz@foxrothschild.com<br><br><br><br>*Counsel for the Official Committee*<br>*of Unsecured Creditors* |

Dated: November 3, 2023

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  Custom Alloy Corporation (7537) and CAC Michigan, LLC (4814).

151074806.1

## TABLE OF CONTENTS

**DISCLAIMER**................................................................................................................7

**INTRODUCTION**.........................................................................................................8

**ARTICLE I**

**DEFINITION AND CONSTRUCTION OF TERMS**.................................................9

**ARTICLE II**

**BACKGROUND**..........................................................................................................9

2.01 General Background................................................................................................9

   A. The Debtors' History and Organizational Structure ............................................9
   B. Prepetition Capital Structure .............................................................................10
   C. Events Giving Rise to These Chapter 11 Cases and the Debtors' Prepetition Marketing Process...................................................................................................11

2.02 These Chapter 11 Cases ......................................................................................11

   A. The Debtors' Bankruptcy Filings and First Day Motions................................12
   B. Appointment of the Committee ........................................................................12
   C. The Debtors' Filing of the Schedules, Section 341(a) Meeting of Creditors, and Bar Dates12
   D. The Debtors' Post-Petition Financing Committee ...........................................13
   E. The Sale of Substantially All of Debtors' Assets .............................................13
   F. The Continued Retention of the Independent Director.....................................14

**ARTICLE III**

**CONFIRMATION PROCEDURES**............................................................................15

3.01 Confirmation Procedures......................................................................................15
3.2 Procedure for Objections........................................................................................15
3.03 Requirements for Confirmation ...........................................................................15
3.04 Classification of Claims and Interests..................................................................16
3.05 Impaired Claims or Interests ................................................................................17
3.06 Confirmation Without necessary Acceptances; Cramdown..................................17
3.07 Feasibility.............................................................................................................19
3.08 Best Interests Test and Liquidation Analysis.......................................................19
3.09 Acceptance of the Plan.........................................................................................20

## ARTICLE IV

## CLASSIFICATION OF CLAIMS AND INTERESTS AND EXPECTED RECOVERIES 20

4.01 Overview of Classification ................................................................................ 20
4.02 Identification and Treatment of Unclassified Claims ....................................... 20
  a. Administrative Claims .................................................................................... 21
  b. U.S. Trustee Fees .......................................................................................... 21
  c. Priority Tax Claims ....................................................................................... 22
  d. Ordinary Course Liabilities ........................................................................... 22
4.03 Identification of Classes and Claims ................................................................ 22
  a. Treatment of CIBC Senior Secured Claims (Class 1) .................................... 22
  b. Treatment of Purchase Money Security Interest ("Equipment PMSI") Claims Not Secured By SDF Equipment (Class 2) .................................................................................................. 22
  c. Treatment of Purchase Money Security Interest Claims Not Secured By SDF Equipment ("SDF PMSI") (Class 3) .................................................................................................. 23
  d. Treatment of Priority Non-Tax Claims (Class 4) ........................................... 23
  e. Treatment o0f General Unsecured Claims (Class 5) ....................................... 24
  f. Treatment of Purchaser Subordinated Unsecured Deficiency Claim (Class 6) .................... 24
  g. Treatment of Intercompany Claims (Class 7) ................................................ 24
  h. Treatment of Interests (Class 8) ................................................................... 24
4.04 Treatment of Classified Classes, Rights to Vote, and Estimated Distributions ................... 24
4.05 Controversy Concerning Classification, Impairment or Voting Rights ............................... 27
4.06 Insurance Recourse ......................................................................................... 28

## ARTICLE V

## CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING ....................... 28

5.01 The Plan May Not Be Accepted ....................................................................... 28
5.02 The Plan May Not Be Confirmed ..................................................................... 28
5.03 Distributions to Holders f Allowed Claims Under the Plan May Be Inconsistent with Projections .................................................................................................. 29
5.04 Objections to Classification of Claims .............................................................. 29
5.05 Failure to Consummate the Plan ...................................................................... 30
5.06 Allowance of Claims May Substantially Dilute the Recovery to Holders of Claims Under the Plan .................................................................................................. 30
5.07 Certain Tax Considerations ............................................................................. 30

## ATICLE VI

## THE LIQUIDATION TRUST ................................................................................ 31

6.01 Liquidation Trust ........................................................................................... 31
6.02 Establishment and Purpose of the Liquidation Trust ........................................ 31

6.03 Authority and Role of the Liquidation Trustee ...............................................................31
6.04 Appointment of the Liquidation Trustee ......................................................................31
6.05 Liquidation Trust Assets ...............................................................................................31
6.06 Treatment of Liquidation Trust for Federal Income Tax Purposes; No Successor-in-Interest 32
   a. Liquidation Trust as a "Grantor Trust" ......................................................................32
   b. Valuation of Liquidation Trust Assets ........................................................................32
   c. Liquidation Trustee's Right and Power to Invest........................................................32
6.07 Responsibilities of the Liquidation Trustee ................................................................33
6.08 Establishment of the Post-Confirmation Committee ..................................................33
6.09 Bankruptcy Court Approval of Liquidation Trustee Actions Not Required................35
6.10 Expenses of the Liquidating Trust ...............................................................................35
6.11 Compensation of the Liquidation Trustee....................................................................35
6.12 Fiduciary Duties of the Liquidation Trustee ...............................................................36
6.13 Transfer of Books and Records ....................................................................................36
6.14 Dissolution of the Liquidation Trust ...........................................................................36
6.15 Full and Final Satisfaction against Liquidation Trust .................................................36

## ARTICLE VII

## MEANS FOR IMPLEMENTATION OF THE PLAN ............................................................37

7.01 Interests in the Debtors.................................................................................................37
7.02 Causes of Auction ........................................................................................................37
7.03 Release of Liens ...........................................................................................................37
7.04 Vesting and Sale or Other Disposition of Assets; Representative of the Estates.................37
7.05 Effectuating Documents; Further Transactions............................................................37
7.06 Deemed Substantive Consolidation .............................................................................38
7.07 Records.........................................................................................................................38
7.08 Insurance Policies.........................................................................................................39
   a. Insurance Policies Remain In Force............................................................................39
   b. Insurance Policies; Employment Practice Liability Policies; Similar Policies...................39
7.09 Dissolution of Committee ............................................................................................39
7.10 Transfer of Privilege/No Waiver..................................................................................39
7.11 Final Decree .................................................................................................................39
7.12 Winddown of Custom Alloy Corporation.....................................................................40

## ARTICLE VIII

## EXECUTORY CONTRACTS ............................................................................................40

8.01 Rejection of Executory Contracts ................................................................................40
8.02 Bar Date for Rejection Damages..................................................................................40

**ARTICLE IX**

**PROVISIONS GOVCERNING RESOLUTION OF CLAIMS AND DISTRIBUTIONS OF PROPERTY UNDER THE PLAN** ................................................................................................... 41

9.01 Claims Objections ....................................................................................................... 41
    a. Right to Object to Claims ........................................................................................ 41
    b. Claims Objection Deadline ...................................................................................... 41
    c. Claim Estimate ......................................................................................................... 41
9.02 Distribution Provisions ............................................................................................... 41
    a. Distributions to be Made .......................................................................................... 41
    b. Establishment of Reserves ....................................................................................... 42
    c. Distribution Record Date .......................................................................................... 42
    d. No Liability .............................................................................................................. 42
    e. Distributions on Account of Disputed Claims ......................................................... 42
    f. No Distributions Pending Allowance ....................................................................... 42
    g. Distributions in Cash ............................................................................................... 43
    h. Timing of Distributions ............................................................................................ 43
    i. Unclaimed Distributions ........................................................................................... 43
    j. Delivery of Distributions and Undeliverable Distributions to Holders of Claims ................. 43
    k. Undeliverable Distributions ..................................................................................... 43
    l. De Minimis Distributions .......................................................................................... 44
    m. Remainder Amounts After Final Distribution ........................................................ 44
9.03 Preservation and Assignment of Subordination Rights ............................................... 44
9.04 Prepetition Purchaser Unsecured Deficiency Claim and Waiver of Other or Further Claims 44

**ARTICLE X**

**EXCULPATION AND INJUNCTION** ................................................................................ 45

10.01 Exculpation ............................................................................................................... 45
10.02 Injunction ................................................................................................................. 45

**ARTICLE XI**

**CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE** ....................................... 46

11.01 Conditions Precedent to Confirmation ..................................................................... 46
11.02 Conditions Precedent to the Effective Date .............................................................. 46
11.03 Waiver of Conditions ............................................................................................... 46
11.04 Effect of Failure of Conditions ................................................................................ 47
11.05 Filing of Notice of the Effective Date ...................................................................... 47

**ARTICLE XII**

**MODIFICATION, REVOCATION OR WITHDRAWAL OF PLAN** ................................. 47

12.01 Modification and Amendments ........................................................................ 47
12.02 Effect of Confirmation on Modifications ......................................................... 47
12.03 Revocation or Withdrawal of the Plan ............................................................ 48

**ARTICLE XIII**

**JURISDICTION** ...................................................................................................... 48

13.01 Bankruptcy Court Jurisdiction ....................................................................... 48
13.02 Limitation on Jurisdiction .............................................................................. 49

**ARTICLE XIV**

**MISCELLANEOUS** ................................................................................................. 50

14.01 Exemption from Taxes .................................................................................... 50
14.02 Compliance with Tax Requirements ............................................................... 50
14.03 Defenses and Setoff ....................................................................................... 51
14.04 Governing Law ............................................................................................... 51
14.05 Successors and Assigns .................................................................................. 51
14.06 Transfer of Claims ......................................................................................... 51
14.07 Post-Effective Date Service List .................................................................... 52
14.08 Notices ........................................................................................................... 52
14.09 Immediate Binding Effect .............................................................................. 53
14.10 Severability of Plan Provisions ...................................................................... 53
14.11 Exhibits .......................................................................................................... 53
14.12 Votes Solicited in Good Faith ........................................................................ 53
14.13 Conflicts ......................................................................................................... 54
14.14 U.S. Trustee Fees ........................................................................................... 54
14.15 Implementation ............................................................................................... 54
14.16 No Admissions ................................................................................................ 54

**EXHIBIT A – DEFINITIONS**

**EXHIBIT B – LIQUIDATION ANALYSIS**

**EXHIBIT C – LIQUIDATION TRUST AGREEMENT**

## DISCLAIMER

THIS COMBINED DISCLOSURE STATEMENT AND PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE (I) DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, (II) ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR (III) DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS OR INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF. HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED DISCLOSURE STATEMENT AND PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THE COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAT THAT WHICH IS CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN. NO REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN. ANY INFORMATION, REPRESENTATIONS OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THE COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR INTEREST. THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(b) AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-APPLICABLE BANKRUPTCY LAWS. THIS COMBINED DISCLOSURE

STATEMENT AND PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

SEE ARTICLE V OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN, ENTITLED "CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING," FOR A DISCUSSION OF CERTAIN CONSIDERATIONS IN CONNECTION WITH A DECISION BY A HOLDER OF AN IMPAIRED CLAIM TO ACCEPT THE COMBINED DISCLOSURE STATEMENT AND PLAN.

## INTRODUCTION

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors" and each being a "Debtor") together with the official committee of unsecured creditors (the "Committee," and together with the Debtors, the "Plan Proponents"), hereby jointly propose this Combined Disclosure Statement and Plan pursuant to sections 1125 and 1129 of the Bankruptcy Code.

This Combined Disclosure Statement and Plan contemplates the establishment of a Liquidation Trust by and through which the Liquidation Trustee will marshal the remaining Assets of the Estates, review Claims, and make Distributions from such Assets to Holders of Allowed Claims, as set forth herein and consistent with the priority provisions of the Bankruptcy Code.

This Combined Disclosure Statement and Plan contains, among other things, (i) a discussion of the Debtors' history and businesses, (ii) a summary of the events leading to these Chapter 11 Cases, (iii) a description of these Chapter 11 Cases, (iv) risk factors, (v) a summary and analysis of this Combined Disclosure Statement and Plan, and (vi) certain other related matters.

ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS ARE ENCOURAGED TO READ THE COMBINED DISCLOSURE STATEMENT AND PLAN IN ITS ENTIRETY, AND TO CONSULT WITH AN ATTORNEY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND IN THE COMBINED DISCLOSURE STATEMENT AND PLAN, THE PLAN PROPONENTS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN, OR ANY PART THEREOF, PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

> THE DEBTORS AND THE COMMITTEE ARE THE PLAN PROPONENTS. THE COMMITTEE IS COMPRISED OF TWO MEMBERS, EACH OF WHICH HOLD GENERAL UNSECURED CLAIMS AGAINST THE DEBTORS. THE COMMITTEE URGES ALL HOLDERS OF IMPAIRED CLAIMS TO VOTE IN FAVOR OF THE PLAN.

## ARTICLE I
## DEFINITION AND CONSTRUCTION OF TERMS

For purposes of the Plan, except as expressly provided or unless the context otherwise requires, (i) capitalized terms used herein shall have the meanings ascribed to them on Exhibit A annexed hereto, (ii) any capitalized term used in this Combined Disclosure Statement and Plan that is not defined herein or on Exhibit A annexed hereto, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, (iii) whenever the context requires, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter, (iv) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (v) any reference in the Plan to an existing document or exhibit means such document or exhibit as it may be amended, modified, or supplemented from time to time, (vi) unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan, (vii) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety rather than to any particular paragraph, subparagraph, or clause contained in the Plan, (viii) captions and headings to articles and sections are inserted for convenience of reference only and shall not limit or otherwise affect the provisions hereof or the interpretation of the Plan, and (ix) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

## ARTICLE II
## BACKGROUND

### 2.01  General Background

#### (a)    The Debtors' History and Organizational Structure

Debtor, Custom Alloy Corporation ("CAC" or "Custom Alloy Corporation"), was founded in 1968. It is a Delaware corporation with its principal place of business located at 3 Washington Avenue, High Bridge, New Jersey. It is a leading global manufacturer of highly customized fittings, forgings, and pipe, utilizing the broadest range of alloys in the industry. CAC's mission is to provide critical fittings, pipes, and forgings for military defense and commercial customers utilizing CAC's vertically integrated manufacturing capabilities.

Debtor, CAC Michigan, LLC ("CAC Michigan"), operates a facility in Troy, Michigan.

CAC Michigan is a wholly owned subsidiary of CAC. CAC is also in the process of developing a location in North Carolina, which CAC intends to utilize to consolidate the entirety of its military applications.

As of the Petition Date, CAC and CAC Michigan employed approximately two hundred (200) employees.

The Debtors are a supplier to the Navy's Columbia and Virginia class nuclear submarines and are the only approved supplier for marine seawater fittings for the Columbia class of nuclear submarines.

In 2019, the Debtors' annual sale revenues were approximately $62,000,000. In 2020, the Debtors' sale revenues declined to approximately $53,600,000, and declined further in 2021 to approximately $47,800,000. Those declines in sales, together with the pivot from oil and gas to military and defense applications, and the Covid-19 pandemic created liquidity issues for the Debtors. Although, Pre-petition, the Debtors and their secured lender CIBC Bank USA attempted to sell the Debtors' business, the board determined that the filing of a chapter 11 petition to allow the business to either be reorganized or sold as a going concern was in the best interest of the Debtors.

### (b)    Prepetition Capital Structure

(i)    Secured Debt

The Debtors are financed primarily by a first priority secured claim owed to CIBC Bank USA ("CIBC") in the amount of approximately $24,000,000 (the "Prepetition Loan Facility"). The Debtors are also subject to a junior priority secured claim in favor of Barings BDC, Inc. ("Barings") in the amount of approximately $64,085,727.82 (the "Barings Debt"). The Debtors also have numerous equipment finance and purchase money security interest agreements with numerous creditors, such as (i) Bank of the West; (ii) Barings; (iii) BB&T Commercial Equipment Capital Corp.; (iv) CIBC Bank USA; (v) Cisco Systems Capital Corporation; (vi) ENGS Commercial Finance Co.; (vii) Financial Agent Services; (viii) HYG Financial Services, Inc.; (ix) Leaf Capital Funding, LLC; (x) Lease Corporation of America; (xi) Midland States Bank; and (xii) U.S. Bank, who have been granted first priority security interests in specific items of equipment (the "PMSI Claims"). The aggregate amount of PMSI Claims does not exceed $1,039,000 and is likely less.

Additionally, the 2019 and 2020 National Defense Authorization Act appropriated and allocated funds for submarine industrial base expansion (the "SDF Funds"). Electric Boat Corporation ("Electric Boat") is an administrator of SDF Funds for the United States Navy. Electric Boat in turn distributes SDF Funds to its subcontractors to purchase equipment which is necessary to manufacture products that are necessary for the national defense. The Debtors are one such subcontractor.

In an effort to enhance the Debtors' manufacturing capacity and enable the Debtors to

fulfill their contracts, Electric Boat has provided various fundings to the Debtors of SDF Funds (the "Debtor SDF Funds") for the purchase of certain equipment (the "SDF Equipment"). The Debtors require the SDF Equipment in order to fulfill their contracts with Electric Boat. The Debtors would have no ability to acquire the SDF Equipment without the Funds.

Under the various SDF agreements (the "SDF Agreements"), the Debtors are not required to make any payments to Electric Boat. Instead, the Debtors are required to bid on all of Electric Boat's requests for purchase that would require the use of the SDF Equipment, to fill all such orders that Electric Boat may request of the Debtor, and to comply with certain reporting obligations. Electric Boat is entitled to claw the SDF Equipment and/or Funds back from the Debtors if the Debtors fail to comply with the terms of SDF Agreement. The term of the SDF Agreement is ten years. After the term ends, the Debtors may retain the SDF Equipment if they have performed under the SDF Agreement.

On the Petition Date, the Debtors' primary assets were inventory, accounts receivable, and equipment.

As of the Petition Date, the Prepetition Loan Facility was secured by substantially all of the Debtors' assets, including intellectual property, accounts receivable, inventory, and equipment. The Debtors also entered into various deposit account control agreements with the Prepetition Lender. Electric Boat claims to be secured by the various pieces of equipment for which they funded the purchase.

<div align="center">(ii)   Unsecured and Subordinated Debt</div>

As of the Petition Date, as set forth in the Debtors' schedules, the Debtors estimate they had approximately $4 million, in the aggregate, of unsecured debt, consisting primarily of trade debt owed to the Debtor's trade vendors.

Additionally, as of the Petition Date, the Debtors had approximately $64 million, in the aggregate, of unsecured debt on account of the Barings Debt.

**(c)   Events Giving Rise to These Chapter 11 Cases and the Debtors' Prepetition Marketing Process**

The decline in sales over a period of years, together with the pivot from oil and gas to military and defense applications, and the Covid-19 pandemic created liquidity issues for the Debtors. As a result, the Debtors had limited liquidity and were at risk of default under their debt agreements. The Debtors and CIBC implemented a marketing and sales process prepetition, which was not successful, prompting CIBC to exercise its rights to implement a UCC-9 sale. Post-petition, CIBC agreed to the chapter 11 process for either a refinancing or a 363 sale of the Debtors' business.

### 2.02  These Chapter 11 Cases

(a)    **The Debtors' Bankruptcy Filings and First Day Motions.**

On October 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary chapter 11 bankruptcy petition. On October 19, 2023, the Debtors filed a number of "first day" motions, including (i) a motion for an order authorizing the Debtors to provide adequate assurance of future payment to utility companies pursuant to section 366(b) of the Bankruptcy Code [Docket No. 26]; (ii) a motion to pay certain prepetition critical vendors [Docket No. 24],   (iii) a motion for joint administration [Docket No. 23]; (iv) a motion for approval of post-petition financing and for use of cash collateral [Docket No. 20]; (v) a motion for an extension of time to file schedules [Docket No. 25]; and (vi) a motion for  authority to pay prepetition employee  wages  and  benefits [Docket No. 27]  (collectively, the "First Day Motions"), among motions for other, initial relief.

On November 4, 2022, the Court entered an order approving the Debtors' retention of Rabinowitz, Lubetkin & Tully, LLC as their counsel [Docket No. 104]. Various other retention orders were entered for a financial advisor, special transactional counsel, and an investment banker.

On October 19, 2022, the Bankruptcy Court entered the first of many weekly orders approving the use of Cash Collateral, until the final order for Use of Cash Collateral and DIP Financing was entered on May 19, 2023, as more fully discussed in Section 2.02(d) herein.

On October 25, 2022, the Bankruptcy Court granted each of the First Day Motions on an interim or final basis, as applicable, and most of the First Day Motions previously approved on an interim basis were subsequently approved on a final basis on December 1, 2023.

On September 7, 2023, the Bankruptcy Court entered an order authorizing the Debtors' retention of ordinary course professionals [Docket No. 583].

(b)    **Appointment of the Committee**

On November 4, 2022, pursuant to Section 1102(a) of the Bankruptcy Code, the Office of United States Trustee filed a *Notice of Appointment of Official Committee of Unsecured Creditors* (the "Appointment Notice") [Docket No. 106]. According to the Appointment Notice, the Committee consisted of three members: A&M Industrial, Inc., Trepanning Specialties, Inc., and Barings BDC, Inc.[2]  The Committee selected Fox Rothschild LLP as legal counsel [Docket No. 191] and KCP Advisory LLC as its financial advisor on January 3, 2023 [Docket No. 234].

(c)    **The Debtors' filing of the Schedules, Section 341(a) Meeting of Creditors, and Bar Dates**

On November 11, 2023, the Debtors filed their Schedules.  *See* Docket Nos. 132, 137 and CAC

---

[2] Shortly prior to the May 3, 2023 auction of the Debtors' assets, Barings transferred its claims to the eventual purchaser, CAC Acquisitions, LLC, and resigned from the Committee.

Michigan Docket Nos. 58, 59, 60.[3]

The U.S. Trustee conducted the Debtors' section 341(a) meeting on November 17, 2023.  *See* Docket No. 3.

On December 22, 2023, the Bankruptcy Court entered the Bar Date Order which, among other relief, established the Bar Dates for Creditors to file Claims, including the General Bar Date of February 20, 2023 and the Governmental Unit Bar Date of June 10, 2023.  Notice of the Bar Dates was provided in accordance with the Bar Date Order.  *See* Docket No. 216.

### (d)    The Debtors' Post-Petition Financing

As more fully set forth in the DIP Motion filed on October 19, 2023 [D.I. 20], on the Petition Date, the Debtors had an immediate need for financing and access to Cash Collateral.  Accordingly, the Debtors filed the DIP Motion seeking authorization for the Debtors to, *inter alia*, utilize cash collateral of the Prepetition Lender CIBC, and to borrow up to $2 million from a separate and new DIP lender.  However, entering into such a DIP financing would require a priming lien fight with respect to CIBC, and therefore the Debtor and CIBC began negotiations on a DIP loan to be provided by CIBC.  The DIP loan negotiations were long and arduous and were just about settled when Electric Boat objected to language included in the proposed final DIP order—specifically language concerning the priority of certain SDF Funding vis-a-vie CIBC.  Negotiations continued for months with weekly or bi-weekly cash collateral orders being entered by agreement of CIBC and the Debtors.  There were no less than 24 interim cash collateral orders (collectively, the "Cash Collateral Orders).

On May 19, 2023, the Bankruptcy Court entered the Final DIP Order which provided for a $3.5 million post-petition loan from which Debtors were able to run a sale process and pay administrative expenses and priority claims.  *See* Docket No. 489.

### (e)    The Sale of Substantially All of Debtors' Assets

Following the Petition Date, the Debtors sought to provide for, on a parallel path, either a plan of reorganization where the Debtors' business could continue under the control of the current owners and managers, or a robust marketing process for the Sale of substantially all of the Debtors' assets.  The Debtors retained SSG Capital Advisors, LLC as its investment banker [Docket No. 272] to find an investor for the business and/or to run the sale process.  It also retained SierraConstellation Partners to be its financial advisor [Docket No. 239].

Additionally, because the Committee and CIBC were concerned that the Debtors' owners and managers would potentially have a conflict of interest in the sale process, the Debtors agreed to retain retired Judge Kevin Gross as an independent director (the "Independent Director") of the Debtors to handle and address any conflicts that arose [Docket No. 351].

On February 27, 2023, the Bankruptcy Court entered the Bid Procedures Order [Docket No.

---

[3] All docket references are to CAC unless otherwise noted.

319]. As part of the Debtors' post-petition marketing efforts, the Debtors and/or their professionals contacted and engaged with numerous parties, culminating in the receipt of three qualified bids for substantially all of the Debtors' Assets.

On April 27, 2023, the Debtors filed a *Notice of Designation of Stalking Horse Bidder*, identifying CAC Acquisitions, LLC ("CAC Acquisitions" or "Purchaser") as the stalking horse purchaser. *See* Docket No. 415.

On May 3, 2023, the Debtors conducted an auction pursuant to the terms of the Bid Procedures Order. Bidding was done by sealed bid. At the conclusion of the auction, the Independent Director, in consultation with the Committee and Electric Boat, selected as the successful bid the bid submitted by the CAC Acquisitions, as increased by both a cash bid increase and a partial credit bid, and the bid submitted by CAA Partners as the backup bid. The Purchaser's successful bid resulted in the Asset Purchase Agreement, which consisted of, *inter alia*, a purchase price of $37,424,000 (the "Purchase Price") plus a credit bid of $30 million of the Barings Debt. On May 9, 2023, the Bankruptcy Court approved the Sale and on May 26, 2023 the Sale Order approving the Sale to the Purchaser pursuant to the Asset Purchase Agreement was entered. *See* Docket No. 500. The Sale closed on June 16, 2023, effective June 15, 2023 at 11:59 P.M. (the "Closing Date").

In connection with the Sale, the Debtors assumed and assigned certain leases for real property located at 3 Washington Avenue, High Bridge, New Jersey and 412 Trimmer Road, Califon, New Jersey. In order to facilitate the assumption and assignment of the leases, the Committee and the landlords, 1742 Square Associates, Ltd., and Trimmer Road Company, LLC, entered into an agreement resolving a potential objection by the Committee to the proposed cure amounts. As part of the agreement, the landlords agreed to allocate the Liquidation Trust Cure Proceeds to the Liquidation Trust, consisting of a portion of the cure amount not exceeding $300,000. The actual amount of the Liquidation Trust Cure Proceeds is approximately $126,316 and is being held in escrow by KCP Advisory Group, LLC, pending the Effective Date of the Plan. Upon the Effective Date of the Plan, the Liquidation Trust Cure Proceeds shall be released to the Liquidation Trust and be a part of the Liquidation Trust Assets.

Also in connection with the sale, the Bankruptcy Court required that the Debtor create a reserve of $1,039,000 to satisfy any allowed PMSI Claims (the "Reserve"). The Reserve has been funded from the closing proceeds and is being maintained at Wilmington Trust. On September 15, 2023, the Court entered a consent order allowing certain PMSI claims, which will be paid from the Reserve [Docket No. 601]. The claims of BMO Harris (which include a claim assigned to it from Bank of the West), US Bank, Cisco and Mitsubishi remain to be resolved.

### (f)    The Continued Retention of the Independent Director

Contemporaneously with the closing of the Sale, the Debtors terminated the employment of their employees and such employees were, for the most part, employed by the Purchaser. Accordingly, following the closing of the Sale, the Debtors no longer had any employees. In order to continue to manage and wind down the Debtors' affairs, the Debtors' board of directors approved

the continued retention of Scott Boen to provide the services necessary for the wind-down of the Debtor.

## ARTICLE III
## CONFIRMATION PROCEDURES

### 3.01    Confirmation Procedures

On [                                    ], the Bankruptcy Court entered the Solicitation Procedures Order [D. I. 319].  Among other things, the Solicitation Procedures Order approved the adequacy of the disclosures in this Combined Disclosure Statement and Plan on an interim basis and set certain deadlines for the solicitation of the Plan, voting on the Plan, filing objections to the Plan, and a hearing to consider approval of the Plan. The Confirmation Hearing has been scheduled for [                    ] **(Eastern Time)** at the Bankruptcy Court, 402 E. State Street, Courtroom 8, Trenton, New Jersey to consider (a) final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (b) Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code. The Confirmation Hearing may be adjourned from time to time by the Plan Proponents without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Bankruptcy Court.

### 3.02    Procedure for Objections

Any objection to final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or Confirmation of the Plan must be made in writing and Filed with the Bankruptcy Court and served on the following parties so as to be actually received on or before [                    ] **at 5:00 p.m. (Eastern Time)** upon (i) counsel to the Debtors, Rabinowitz, Lubetkin and Tully, LLC Attn: Jonathan I. Rabinowitz, (jrabinowitz@rltlawfirm.com) and Henry Karwowski (hkarwowski@rltlawfirm.com); (ii) counsel for the Committee, Fox Rothschild LLP, Attn: Martha Chovanes (mchovanes@foxrothschild.com) and Joseph DiPasquale (jdipasquale@foxrothschild.com); (iii) the Office of the United States Trustee, Attn: Maggie Magee (Maggie.Magee@usdoj.gov).  Unless an objection is timely Filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.

### 3.03    Requirements for Confirmation

The Bankruptcy Court will confirm the Plan only if the Plan meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among other requirements, the Plan (a) must be accepted by all Impaired Classes of Claims or Interests or, if rejected by an Impaired Class, the Plan must not "discriminate unfairly" against, and be "fair and equitable" with respect to, such Class; and (b) must be feasible. The Bankruptcy Court must also find that: (i) the Plan has classified Claims and Interests in a permissible manner; (ii) the Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith.

### 3.04    <u>Classification of Claims and Interests</u>

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders. In accordance with section 1123 of the Bankruptcy Code, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims which pursuant to section 1123(a)(1) of the Bankruptcy Code need not be and have not been classified). The Plan Proponents also are required, under section 1122 of the Bankruptcy Code, to classify Claims and Interests into Classes that contain Claims or Interests that are substantially similar to the other Claims or Interests in such Class.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest. The Plan Proponents believe that the Plan complies with such standard. If the Bankruptcy Court finds otherwise, however, it could deny confirmation of the Plan if the Holders of Claims or Interests affected do not consent to the treatment afforded them under the Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim also is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date. The Plan Proponents believe that the Plan has classified all Claims and Interests in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law. It is possible that a Holder of a Claim or Interest may challenge the Plan Proponents' classification of Claims or Interests and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. If such a situation develops, the Debtors intend, in accordance with the terms of the Plan, to make such permissible modifications to the Plan as may be necessary to permit its Confirmation. Any such reclassification could adversely affect Holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Plan.

EXCEPT AS SET FORTH IN THE PLAN, UNLESS SUCH MODIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.

The amount of any Impaired Claim that ultimately is Allowed by the Bankruptcy Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Bankruptcy Court with respect to each Impaired Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any Impaired Class. Thus, the actual recovery ultimately received by a particular Holder of an Allowed

Claim may be adversely or favorably affected by the aggregate amount of Claims Allowed in the applicable Class. Additionally, any changes to any of the assumptions underlying the estimated Allowed amounts could result in material adjustments to recovery estimates provided herein and/or the actual Distribution received by Creditors. The projected recoveries are based on information available to the Debtors as of the date hereof and reflect the Plan Proponents' views as of the date hereof only.

The classification of Claims and Interests and the nature of Distributions to members of each Class are summarized herein. The Plan Proponents believe that the consideration, if any, provided under the Plan to Holders of Claims reflects an appropriate resolution of their Claims taking into account the differing nature and priority (including applicable contractual or judicial subordination) of such Claims and Interests. The Bankruptcy Court must find, however, that a number of statutory tests are met before it may confirm the Plan. Many of these tests are designed to protect the interests of Holders of Claims or Interests who are not entitled to vote on the Plan, or do not vote to accept the Plan, but who will be bound by the provisions of the Plan if it is confirmed by the Bankruptcy Court.

### 3.05    Impaired Claims or Interests

Pursuant to the provisions of the Bankruptcy Code, only classes of claims or interests that are "impaired" (as defined in section 1124 of the Bankruptcy Code) under a plan may vote to accept or reject such plan. Generally, a claim or interest is impaired under a plan if the holder's legal, equitable or contractual rights are changed under such plan. In addition, if the holders of claims or interests in an impaired class do not receive or retain any property under a plan on account of such claims or interests, such impaired class is deemed to have rejected such plan under section 1126(g) of the Bankruptcy Code and, therefore, such holders are not entitled to vote on such plan.

Under the Plan, only Holders of Claims in Classes 5 and 6 are Impaired and are entitled to vote on the Plan. Under the Plan, Intercompany Claims in Class 7 and Holders of Interests in Class 8 are Impaired and will not receive or retain any property under the Plan on account of such Interests and, therefore, are not entitled to vote on the Plan and are deemed to reject the Plan. Under the Plan, Holders of Claims in Classes 1, 2, 3, and 4 are Unimpaired and, therefore, not entitled to vote on the Plan and are deemed to accept the Plan.

ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASSES 5 (GENERAL UNSECURED CLAIMS) AND 6 (PURCHASER SUBORDINATED UNSECURED DEFICIENCY CLAIM).

### 3.06    Confirmation Without Necessary Acceptances; Cramdown

In the event that any impaired class of claims or interests does not accept a plan, a debtor nevertheless may move for confirmation of the plan. A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of

claims, and the plan meets the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code requires that a court find that a plan (a) "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each non-accepting impaired class of claims or interests. Here, because Holders of Claims and Interests in Classes 7 and 8 are deemed to reject the Plan, the Plan Proponents will seek confirmation of the Plan from the Bankruptcy Court by satisfying the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code. The Plan Proponents believe that such requirements are satisfied, as no Holder of a Claim or Interest junior to those in Classes 7 and 8, respectively, will receive or retain any property under the Plan.

A plan does not "discriminate unfairly" if (a) the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to those of the non-accepting class and (b) no class receives payments in excess of that which it is legally entitled to receive for its claims or interests. The Plan Proponents believe that, under the Plan, all Impaired Classes of Claims or Interests are treated in a manner that is consistent with the treatment of other Classes of Claims or Interests that are similarly situated, if any, and no Class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims or Allowed Interests in such Class. Accordingly, the Plan Proponents believe that the Plan does not discriminate unfairly as to any Impaired Class of Claims or Interests.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable." In order to determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cram down" tests for secured creditors, unsecured creditors and equity holders, as follows:

a.  <u>Secured Creditors</u>. Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as otherwise set forth herein.

b.  <u>Unsecured Creditors</u>. Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

c.  <u>Equity Interests</u>. Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the non-accepting class will not receive or retain any property under the plan. As discussed above, the Plan Proponents believe that the Distributions provided under the Plan satisfy the absolute priority rule described above, where

18

required.

### 3.07   <u>Feasibility</u>

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan will not likely be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Plan). The Plan Proponents have analyzed the ability of the Liquidation Trustee to meet its obligations under the Plan. Based on the Plan Proponents' analysis, the Liquidation Trust will have sufficient assets to accomplish its tasks under the Plan. Therefore, the Plan Proponents believe that the liquidation pursuant to the Plan will meet the feasibility requirements of the Bankruptcy Code.

### 3.08   <u>Best Interests Test and Liquidation Analysis</u>

Even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires a court to determine that such plan is in the best interests of all holders of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code. To calculate the probable distribution to holders of each impaired class of claims and interests if the debtor was liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from a debtor's assets if its chapter 11 cases were converted to chapter 7 cases under the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtors' unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan. If the hypothetical liquidation distribution to holders of claims or interests in any impaired class is greater than the Distributions to be received by such parties under the Plan, then such plan is not in the best interests of the holders of claims or interests in such impaired class. *See* Liquidation Analysis attached as Exhibit B to this Combined Disclosure Statement and Plan.

Because the Plan is a liquidating plan, the "liquidation value" in the hypothetical chapter 7 liquidation analysis for purposes of the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Plan. However, the Plan Proponents believe that in a chapter 7 liquidation, there would be additional costs and expenses that the Estates would incur as a result of liquidating the Estates in chapter 7. The costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as the costs of counsel and other professionals retained by the trustee. The Plan Proponents believe such amount would exceed the amount of expenses that would be incurred in implementing the Plan and winding up the affairs of the Debtors. The Estates would also be obligated to pay all unpaid expenses incurred by the Debtors during these Chapter 11 Cases (such as compensation for

Professionals) that are allowed in the chapter 7 case. Conversion also would likely delay the liquidation process and ultimate Distribution of whatever value remains in the Estates.  Under the Plan, estimated recoveries to Holders of Allowed General Unsecured Claims are approximately 1.4%, whereas under a chapter 7 case, estimated recoveries for such parties are approximately 0%. This does not include recoveries for Causes of Action, which the Committee believes are viable.

Accordingly, the Plan Proponents believe that Holders of Allowed Claims would receive less than anticipated under the Plan if these Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code, and therefore, the requirements of Section 1129(a)(7) of the Bankruptcy Code have been satisfied.

### 3.09    Acceptance of the Plan

The rules and procedures governing eligibility to vote on the Plan, solicitation of votes, and submission of ballots are set forth in the Solicitation Procedures Order. In order for the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting in such Class must vote to accept the Plan. At least one Impaired Voting Class, excluding the votes of Insiders, must actually vote to accept the Plan.

IF YOU ARE ENTITLED TO VOTE ON THE PLAN, YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY MAIL, THE BALLOT YOU RECEIVE. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY AND TO IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE HOLDER. IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE PLAN AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A DAMAGED BALLOT OR YOU LOST YOUR BALLOT OR IF YOU HAVE ANY QUESTIONS CONCERNING THE PLAN OR PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT THE DEBTORS AT RABINOWITZ, LUBETKIN AND TULLY, L.L.C., 293 EISENHOWER PARKWAY, SUITE 100, LIVINGSTON, NEW JERSEY 07039 OR BY EMAIL AT   jrabinowitz@rltlawfirm.com OR hkarwowski@rltlawfirm.com. THE DEBTORS ARE NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

### ARTICLE IV
### CLASSIFICATION OF CLAIMS AND INTERESTS AND EXPECTED RECOVERIES

### 4.01    Overview of Classification.

Pursuant to section 1122 of the Bankruptcy Code, a Claim or Interest is placed in a particular Class for purposes of voting on the Plan and receiving Distributions under the Plan only to the extent (i) the Claim or Interest qualifies within the description of that Class; and (ii) the Claim or Interest has not been paid, released, or otherwise compromised before the Effective Date. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Compensation Claims, and Priority Tax Claims are not classified under the Plan and are excluded from the following Classes.

### 4.02    Identification and Treatment of Unclassified Claims

### (a)    **Administrative Claims**.

On the Effective Date, each Holder of an Allowed Administrative Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Administrative Claim: (a) Cash equal to the amount of such Allowed Administrative Claim; or (b) such other treatment as to which the Debtors or the Liquidation Trustee, as applicable, and the Holder of such Allowed Administrative Claim shall have agreed upon in writing.

#### (i)    Final Administrative Claims Bar Date.

Any Holders of an Administrative Claim accruing from the Closing Date through the Effective Date, other than Professional Fee Claims, shall File and serve on the Liquidation Trustee a request for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, so as to actually be received on or before the Final Administrative Claims Bar Date. Any such Claim not Filed by the Final Administrative Claims Bar Date shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof. The notice of confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the Final Administrative Claims Bar Date and shall constitute notice of such Bar Date. The Liquidation Trustee shall have one hundred and eighty (180) days (or such longer period as may be allowed by order of the Bankruptcy Court on motion of the Liquidation Trustee) following the Final Administrative Claims Bar Date to review and object to Administrative Claims.

#### (ii)    Bar Date for Applications for Professional Fees.

Professional Fee Claims are Administrative Claims and all applications for allowance and payment of Professional Fee Claims shall be Filed with the Bankruptcy Court on or before the Professional Fee Bar Date. If an application for a Professional Fee Claim is not Filed by the Professional Fee Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof. The notice of confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the Professional Fee Bar Date and shall constitute notice of such Bar Date.

#### (iii)    Section 503(b)(9) Claims.

For the avoidance of doubt, (i) the deadline for Filing requests for payment of 503(b)(9) Claims was the General Bar Date and (ii) the deadline for Filing requests for payment of Administrative Claims that arose between the Petition Date through the Effective Date is the Initial Administrative Claim Bar Date, and neither deadline is extended by this Plan or the Confirmation Order.

### (b)    **U.S. Trustee Fees**.

All U.S. Trustee Fees payable on or before the Effective Date shall be paid by the Debtors

on or before the Effective Date. From and after the Effective Date, the Liquidation Trust shall be responsible for payment of all U.S. Trustee Fees assessed in these Chapter 11 Cases until such time as these Chapter 11 Cases are closed, dismissed or converted.  The Liquidation Trust shall file post-confirmation quarterly reports in a format prescribed by the U.S. Trustee until such time as these Chapter 11 Cases are closed, dismissed or converted.  Notwithstanding anything to the contrary in this Combined Disclosure Statement and Plan, the U.S. Trustee shall not be required to File a request for payment of an administrative expense.

### (c)    **Priority Tax Claims.**

On the Effective Date, each Holder of an Allowed Priority Tax Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim: (a) Cash equal to the amount of such Allowed Priority Tax Claim; (b) payment in accordance with 11 U.S.C. § 1129(a)(9)(C); or (c) such other treatment as to which the Debtors or the Liquidation Trustee, as applicable, and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

### (d)    **Ordinary Course Liabilities.**

All Ordinary Course Liabilities are deemed to be Allowed Claims to the extent supported by an invoice and any other appropriate documentation and not disputed by the Debtors prior to the Effective Date or the Liquidation Trustee after the Effective Date. Holders of Administrative Claims on account of Ordinary Course Liabilities are not required to File or serve any request for payment of the Ordinary Course Liability. To the extent applicable, the Debtors shall continue to pay each Ordinary Course Liability accrued prior to the Effective Date, pursuant to the payment terms and conditions of the particular transaction giving rise to the Ordinary Course Liability. To the extent that a Holder of an Administrative Claim, on account of Ordinary Course Liability which accrued prior to the Effective Date, did not submit an invoice for the Ordinary Course Liability to the Debtors prior to the Effective Date, the Holder must submit the invoice to the Liquidation Trust in the ordinary course of business pursuant to the terms and conditions of the particular transaction giving rise to the Ordinary Course Liability. The Liquidation Trustee shall remit payment on any undisputed Ordinary Course Liability within (30) days of receipt of the invoice.

### 4.03    **Identification of Classes of Claims**

### (a)    **Treatment of CIBC Senior Secured Claims (Class 1).**

Each Holder of an Allowed Senior Secured Claim has, out of the proceeds of the sale of the collateral that was consummated prior to the Effective Date, received an amount in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 1 Claim. Such Claim is therefore unimpaired and not entitled to vote.

### (b)    **Treatment of Purchase Money Security Interest (" Equipment PMSI") Claims Not Secured By SDF Equipment (Class 2).**

Each Holder of an Allowed Class 2 Claim, shall receive in full and final satisfaction,

settlement and release of and in exchange for such Allowed Class 2 Claim: (A) return of the collateral securing such Allowed Class 2 Claim; (B) Cash equal to the amount of such Allowed Secured PMSI Claim; or (C) such other treatment which the Plan Proponents and the Holder of such Allowed Class 2 Claim have agreed upon in writing. Such Claims are therefore unimpaired and not entitled to vote.

> **(c)**   **Treatment of Purchase Money Security Interest Claims Secured By SDF Equipment ("SDF PMSI") (Class 3).**

The Holder of the Class 3 SDF PMSI Claim is Electric Boat which shall continue to retain its lien on the Debtors' SDF Equipment and shall continue to retain its rights under the Orders of the Court authorizing the Debtors to obtain post-petition purchase money financing pursuant to 11 U.S.C. § 364 for purchase of certain SDF equipment and approving related SDF Agreements by and among the Debtors and Electric Boat entered on the following dates with the following docket numbers:

> 1. December 2, 2022 [Dkt. No. 178];
> 2. December 29, 2022 [Dkt. No. 228]; and
> 3. May 19, 2023 [Dkt. No. 488].

The Holder of the Class 3 Claim shall receive no distribution under the Plan and shall not be entitled to exercise any rights with regard to the SDF Equipment unless the Debtors default under the applicable SDF Agreements in which case the Holder of the Class 3 Claim shall be authorized to exercise all rights and remedies provided under the applicable SDF Agreements.

> **(d)**   **Treatment of Priority Non-Tax Claims (Class 4).**

Each Holder of an Allowed Priority Non-Tax Claim against the Debtors shall receive on the Effective Date, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Non-Tax Claim, either (A) Cash equal to the full unpaid amount of such Allowed Priority Non-Tax Claim, or (B) such other treatment as the Plan Proponents and the holder of such Allowed Priority Non-Tax Claim shall have agreed upon in writing. Such Claims are therefore unimpaired and not entitled to vote.

> **(e) Treatment of General Unsecured Claims (Class 5).**

After satisfaction in full of all Administrative Expense Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Secured Claims, Allowed PMSI Claims, and Allowed Priority Non-Tax Claims, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of any Distributable Cash or such other treatment as may be agreed upon by such Holder and the Liquidation Trustee. The Liquidation Trustee shall make one or more Distributions on account of such Allowed General Unsecured Claims to each Holder of such Allowed General Unsecured Claims on each Distribution Date (or the date on which such Claim becomes an Allowed General Unsecured Claim) on a Pro Rata basis, provided, however, that the Liquidation Trustee shall have no obligation to make a Distribution to Holders of Allowed General

Unsecured Claims where the Liquidation Trustee determines that to make such a Distribution would prevent the Liquidation Trustee from having sufficient funds to pay existing or projected Allowed Administrative Claims, and the actual and necessary costs and expenses of the Estates and the Liquidation Trust, including Liquidation Trust Expenses.

### (f)      Treatment of Purchaser Subordinated Unsecured Deficiency Claim (Class 6).

As set forth more fully in Sections 9.03 and 9.04 below, the Purchaser, as the holder of a claim in the amount of approximately $64 million that it acquired from Barings that has been reduced to approximately $34,000,000 as a result of the Purchaser's credit bid (the "Purchaser Acquired Claim"), shall receive the following treatment: (i) pursuant to an agreement to be reached between the Plan Proponents or the Liquidation Trustee and the Holder of such Claim to subordinate the Purchaser Acquired Claim to all other debt; or (ii) if such agreement cannot be reached, as determined by the Court, as a result of an adversary complaint seeking to subordinate the Purchaser Acquired Claim to all other debt, filed by the Plan Proponents or the Liquidation Trustee against the Holder of such Claim.  Such Class is impaired and entitled to vote on the Plan.

For the avoidance of doubt, the Plan Proponents do not expect there to be sufficient Distributable Cash to make any payment on account of the Purchaser Acquired Claim. Accordingly, the estimated recovery to the Holder of the Purchaser Acquired Claim is 0%.

### (g)      Treatment of Intercompany Claims (Class 7).

On the Effective Date, all Intercompany Claims in Class 7 shall be deemed canceled, extinguished, and of no further force or effect.  Holders of Intercompany Claims in Class 7 shall not be entitled to receive or retain any property on account of such Class 7 Claims.  Accordingly, Class 7 Claims are impaired, deemed to reject the Plan, and are not entitled to vote.

### (h) Treatment of Interests (Class 8).

On the Effective Date, all Interests shall be deemed canceled, extinguished, and of no further force or effect.  Holders of Interests shall not be entitled to receive or retain any property on account of such Class 8 Interests.  Accordingly, Class 8 Interests are impaired, deemed to reject the Plan, and are not entitled to vote.

### 4.04      Treatment of Classified Classes, Rights to Vote, and Estimated Distributions

The information in the table below is provided in summary form for illustrative purposes only and is subject to material change based on certain contingencies, including related to the amount of proofs of claims that are filed after the Bar Date, and the amount of Claims that exist after the claims reconciliation process, as well as the Liquidation Trust's recoveries from the preserved Causes of Action, if any. Actual recoveries may widely vary within these ranges, and any changes to any of the assumptions underlying these amounts could result in material adjustments  to recovery estimates provided herein and/or the actual Distributions received by Creditors. The projected recoveries are based on information available to the Plan Proponents as of the date hereof and reflect the Plan Proponents' best estimates as of the date hereof only. In

24

addition to the cautionary notes and risk factors contained elsewhere in the Combined Disclosure Statement and Plan, it is underscored that the Plan Proponents make no representation as to the accuracy of these recovery estimates. The Plan Proponents expressly disclaim any obligation to update any estimates or assumptions after the date hereof on any basis (including new or different information received and/or errors discovered). A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Combined Disclosure Statement and Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described herein, have not been classified, and the respective treatment of such unclassified Claims is as otherwise set forth herein. The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation and Distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

| Class/Designation | Plan Treatment | Status | Estimated Claim Pool/Projected Recovery |
|---|---|---|---|
| Class 1: Senior Secured Claim | Each Holder of an Allowed Class 1 Claim has, out of the proceeds of Sale of the Collateral, received an amount in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 1 Claim. | Unimpaired; **Not entitled to vote;** Deemed to accept Plan | Approx. Amount: $36,493,000  Est. Recovery: 100% |

| Class 2: Purchase Money Security Interest ("PMSI") Claims | Each Holder of an Allowed Purchase Money Security Interest Claim, shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 2 Claim: (A) return of the collateral securing such Allowed PMSI Claim; or (B) Cash equal to the amount of such Allowed PMSI Claim; or (C) such other treatment which the Plan Proponents and the Holder of such PMSI Claim have agreed upon in writing. | Unimpaired: **Not entitled to vote**; Deemed to accept Plan | Approx. Amount: Not to exceed $1,039,000 Est. Recovery: 100% |
|---|---|---|---|
| Class 3: Secured Claim of Electric Boat | The Holder of Class 3 Secured Claim shall retain its lien on the SDF Equipment and the other rights granted it under the Court's Orders dated December 2, 2022, December 29, 2022 and May 19, 2023, authorizing purchase money financing from Electric Boat secured by certain SDF Equipment. | Unimpaired: **Not entitled to vote**; Deemed to accept Plan | Approx. Amount: $10,176,376.92 Est. Recovery: No monetary distribution |
| Class 4: Priority Non-Tax Claims | Each Holder of an Allowed Priority Non-Tax Claim at the option of the Plan Proponents, shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 4 Claim: (A) Cash equal to the amount of such Allowed Priority Non-Tax Claim; (B) payment under 11 U.S.C. § 1129(a)(9)(C); or (C) such other treatment which the Plan Proponents and the Holder of such Allowed Priority Non-Tax Claim have agreed upon in writing. | Unimpaired; **Not entitled to vote**; Deemed to accept Plan | Approx. Amount: Est. 0%[4] Est. Recovery: 100% |

---

[4] The Plan Proponents believe that Class 4 consists of priority wage claims whose priority claims were paid in full pursuant to the terms of certain interim cash collateral orders.

| Class 5: General Unsecured Claims | After satisfaction in full of all Administrative Expense Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Secured Claims, and Allowed Priority Non-Tax Claims and allowed PMSI Claims, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Distributable Cash or such other treatment as may be agreed upon by such Holder and the Liquidation Trustee. | Impaired; **Entitled to vote** | Approx. Amount: $4,000,000<br><br>Estimated Recovery: Unknown |
|---|---|---|---|
| Class 6: Purchaser Acquired Claim | After satisfaction in full of all debt other than the Purchaser Acquired Claim including, without limitation, Administrative Expense Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Secured Claims, Allowed PSMI Claims, Allowed Priority Non-Tax Claims, and Allowed General Unsecured Claims, the Holder of the Purchaser Acquired Claim shall receive all remaining Distributable Cash available in an amount not to exceed the allowed amount of such claim or such other treatment as may be agreed upon by such Holder and the Liquidation Trustee. | Impaired: **Entitled to Vote** | Approx. Amt: $34 million<br><br>Estimated Recovery: 0% |
| Class 7: Intercompany Claims | On the Effective Date, all Intercompany Claims in Class 7 shall be deemed canceled, extinguished and of no further force or effect. Holders of Intercompany Claims in Class 7 shall not be entitled to receive or retain any property on account of such Class 7 Claims. | Impaired; **Not Entitled to vote** | Approx. Amount: $Unknown<br><br>Est. Recovery: 0% |
| Class 8: Interests | On the Effective Date, all Interests shall be deemed canceled, extinguished and of no further force or effect, and the Holders of Interests shall not be entitled to receive or retain any property on account of such Interests. | Impaired; Deemed to reject Plan and **Not entitled to vote** | Est. Recovery: 0% |

**4.05   Controversy Concerning Classification, Impairment or Voting Rights**

In the event a controversy or dispute should arise related to the classification, impairment

27

or voting rights of any Creditor or Interest Holder under the Plan, whether before or after the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy. Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes (i) the amount of any contingent or unliquidated Claim the fixing or liquidation of, as the case may be, would unduly delay the administration of these Chapter 11 Cases and (ii) any right to payment arising from an equitable remedy for breach of performance.

### 4.06    Insurance Recourse

Notwithstanding anything to the contrary herein, unless elected otherwise by the Plan Proponents or Liquidation Trustee, as the case may be, if any Allowed Claim is covered by an Insurance Policy, such Claim shall first be paid from proceeds of such Insurance Policy to the extent such proceeds are available, with the balance, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

### ARTICLE V
### CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING

THE PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE PLAN AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

### 5.01    The Plan May Not Be Accepted.

The Plan Proponents can make no assurances that the requisite acceptances to the Plan will be received, and the Plan Proponents may need to obtain acceptances to an alternative plan of liquidation for the Debtors, or otherwise, that may not have the support of the Creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to Creditors as those proposed in the Plan.

### 5.02    The Plan May Not Be Confirmed.

Even if the Plan Proponents receive the requisite acceptances, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan.  Even if the Bankruptcy Court determined that the Combined Disclosure Statement and Plan and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for confirmation have not been met.  Moreover, there can be no assurance that modifications to the Combined Disclosure

Statement and Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes. If the Plan is not confirmed, it is unclear what distributions Holders of Claims or Interests ultimately would receive with respect to their Claims or Interests in a subsequent plan of liquidation.

### 5.03    Distributions to Holders of Allowed Claims under the Plan May Be Inconsistent with Projections.

Projected Distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for Distribution. There can be no assurance that the estimated Claim amounts set forth in the Plan are correct. These estimated amounts are based on certain assumptions with respect to a variety of factors. Both the actual amount of Allowed Claims in a particular Class and the funds available for Distribution to such Class may differ from the Plan Proponents' estimates. If the total amount of Allowed Claims in a Class is higher than the Plan Proponents' estimates, or the funds available for Distribution to such Class are lower than the Plan Proponents' estimates, the percentage recovery to Holders of Allowed Claims in such Class will be less than projected.

### 5.04    Objections to Classification of Claims.

Section 1122 of the Bankruptcy Code requires that the Plan classify Claims and Interests. The Bankruptcy Code also provides that the Plan may place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests of such Class. The Plan Proponents believe that all Claims and Interests have been appropriately classified in the Plan. To the extent that the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, the Plan Proponents will seek to (i) modify the Plan to provide for whatever classification might be required for confirmation and (ii) use the acceptances received from any Holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such Holder ultimately is deemed to be a member. Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such Holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required for approval of the Plan. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Plan based upon such reclassification. Except to the extent that modification of classification in the Plan requires re-solicitation, the Plan Proponents will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Plan by any Holder of Claims pursuant to this solicitation will constitute a consent to the Plan's treatment of such Holder, regardless of the Class as to which such Holder is ultimately deemed to be a member. The Plan Proponents believe that under the Bankruptcy Rules, it would be required to re-solicit votes for or against the Plan only when a modification adversely affects the treatment of the Claim or Interest of any Holder. The Bankruptcy Code also requires that the Plan provide the same treatment for each Claim or Interest of a particular Class unless the Holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest. The Plan Proponents believe that the Plan complies with the requirement of equal treatment. To the extent that the Bankruptcy Court

finds that the Plan does not satisfy such requirement, the Bankruptcy Court could deny confirmation of the Plan. Issues or disputes relating to classification and/or treatment could result in a delay in the confirmation and Consummation of the Plan and could increase the risk that the Plan will not be consummated.

### 5.05    Failure to Consummate the Plan.

The Plan provides for certain conditions that must be satisfied (or waived) prior to confirmation and for certain other conditions that must be satisfied (or waived) prior to the Effective Date. As of the date of the Plan, there can be no assurance that any or all of the conditions in the Plan will be satisfied (or waived). Accordingly, there can be no assurance that the Plan will be confirmed by the Bankruptcy Court. Further, if the Plan is confirmed, there can be no assurance that the Plan will be consummated.

### 5.06    Allowance of Claims May Substantially Dilute the Recovery to Holders of Claims under the Plan.

There can be no assurance that the estimated Claim amounts set forth in the Plan are correct, and the actual Allowed amounts of Claims may differ from the estimates. The estimated amounts are based on certain assumptions with respect to a variety of factors, including with respect to any Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed PSMI Claims, and Disputed Priority Non-Tax Claims. Should these underlying assumptions prove incorrect, the actual Allowed amounts of Claims may vary from those estimated herein, thereby materially reducing the recovery to the Holders of Allowed General Unsecured Claims under the Plan.

### 5.07    Certain Tax Considerations.

There are a number of material income tax considerations, risks and uncertainties associated with the plan of liquidation of the Debtors described in this Combined Disclosure Statement and Plan.

THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

## ARTICLE VI
## THE LIQUIDATION TRUST

### 6.01    Liquidation Trust

The Liquidation Trust Agreement, attached hereto as Exhibit C, is incorporated into and made a part of this Combined Disclosure Statement and Plan.

### 6.02    Establishment and Purpose of the Liquidation Trust

On or before the Effective Date, the Debtors and the Liquidation Trustee shall execute the Liquidation Trust Agreement and shall have established the Liquidation Trust pursuant to the Plan. The Liquidation Trust shall be established for the primary purpose of liquidation and distributing the assets transferred to it, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Liquidation Trust.

### 6.03    Authority and Role of the Liquidation Trustee

The authority and role of the Liquidation Trustee shall be in accordance with the provisions of the Liquidation Trust Agreement and the Plan.  In furtherance of and consistent with the purpose of the Liquidation Trust Agreement and the Plan, solely for the purpose of carrying out the Plan and discharging the duties in the Liquidation Trust Agreement, the Liquidation Trustee shall be, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable State corporate law, appointed as the representative of the Estates for the retention, enforcement, settlement, or adjustment of all claims and rights, known and unknown, and all interests belonging to the Debtors or their Estates, which arose prior to the Effective Date.

### 6.04    Appointment of the Liquidation Trustee

The appointment of KCP Advisory Group, LLC as Liquidation Trustee shall be approved in the Confirmation Order, and such appointment shall be effective as of the Effective Date.  In accordance with the Liquidation Trust Agreement, the Liquidation Trustee shall serve in such capacity through the earlier of (i) the date that the Liquidation Trust is dissolved in accordance with the Liquidation Trust Agreement or (ii) the date such Liquidation Trustee resigns, is terminated, or is otherwise unable to serve; provided, however, that, in the event that the Liquidation Trustee resigns, is terminated, or is unable to serve, then the Court, upon the motion of any party-in-interest, including, but not limited to, counsel to the Liquidation Trust, shall approve a successor to serve as the Liquidation Trustee, and such successor Liquidation Trustee shall serve in such capacity until the Liquidation Trust is dissolved.

### 6.05    Liquidation Trust Assets

On the Effective Date, the Debtors shall transfer the Liquidation Trust Assets to the Liquidation Trust.  In connection therewith, KCP Advisory Group, LLC, shall release from escrow the Liquidation Trust Cure Proceeds to the Liquidation Trust.  Notwithstanding any prohibition on

assignability under applicable non- bankruptcy law, on the Effective Date, the Debtors shall be deemed to have automatically transferred to the Liquidation Trust all of their right, title, and interest in and to all of the Liquidation Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Liquidation Trust free and clear of all Claims and Liens. Subsequent to the Effective Date, the Debtors shall have no interest in or with respect to the Liquidation Trust Assets or the Liquidation Trust.

### 6.06    Treatment of Liquidation Trust for Federal Income Tax Purposes; No Successor-in- Interest

In accordance with Treas. Reg. § 301.7701-4(d), the Liquidation Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidation Trust Assets, make timely Distributions pursuant to the Plan, and not unduly prolong its duration. The Liquidation Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidation Trust Agreement.

#### (a)    Liquidation Trust as a "Grantor Trust."

The Liquidation Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidation Trust Beneficiaries treated as grantors and owners of the Liquidation Trust. For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidation Trustee, and the Liquidation Trust Beneficiaries) shall treat the transfer of the Liquidation Trust Assets by the Debtors to the Liquidation Trust, as set forth in the Liquidation Trust Agreement, as a transfer of such assets by the Debtors to the Holders of Allowed Claims of the Liquidation Trust Beneficiaries entitled to Distributions from the Liquidation Trust Assets, followed by a transfer by such Holders to the Liquidation Trust. Thus, the Liquidation Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

#### (b)    Valuation of Liquidation Trust Assets.

As soon as reasonably practicable after the Effective Date, the Liquidation Trustee (to the extent that the Liquidation Trustee deems it necessary or appropriate in its absolute sole discretion) shall value the Liquidation Trust Assets based on the good faith determination of the value of such Liquidation Trust Assets. The valuation shall be used consistently by the Liquidation Trustee and the Liquidation Trust Beneficiaries for all federal income tax purposes.   The Bankruptcy Court shall resolve any dispute regarding the valuation of the Liquidation Trust Assets.

#### (c)    Liquidation Trustee's Right and Power to Invest.

The right and power of the Liquidation Trustee to invest the Liquidation Trust Assets transferred to the Liquidation Trust, the proceeds thereof, or any income earned by the Liquidation Trust, shall be limited to the right and power to invest such Liquidation Trust Assets (pending distributions in accordance with the Plan) in accordance with the Liquidation Trust Agreement; *provided*, *however*, that the scope of any such Permissible Investments shall be limited to include

only those investments that a "liquidation trust," within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise.

### 6.07    Responsibilities of the Liquidation Trustee

The responsibilities of the Liquidation Trustee shall include, but shall not be limited to:

    (1)    the making of Distributions as contemplated herein;

    (2)    establishing and maintaining the Reserves in accordance with the terms of the Plan;

    (3)    conducting an analysis of Administrative Claims, Priority Non-Tax Claims, Secured Claims, PSMI Secured Claims, Priority Tax Claims, General Unsecured Claims, and prosecuting objections thereto or settling or otherwise compromising such Claims if necessary and appropriate;

    (4)    preparing and filing post-Effective Date operating reports for the Debtors;

    (5)    filing appropriate tax returns with respect to the Liquidation Trust and Debtors and paying taxes properly payable by the Liquidation Trust and Debtors, if any, in the exercise of its fiduciary obligations;

    (6)    taking such actions as are necessary to wind down and dissolve the Debtors under applicable law;

    (7)    retaining such professionals as are necessary and appropriate in furtherance of its fiduciary obligations;

    (8)    taking such actions as are necessary and reasonable to carry out the purposes of the Liquidation Trust;

    (9)    pursuing Causes of Action transferred to the Liquidating Trust;

    (10)    protecting and enforcing the rights to the Liquidation Trust Assets vested in the Liquidation Trustee by any method reasonably determined to be appropriate, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity; and

    (11)    terminating the Liquidation Trust and seeking to close the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code.

### 6.08    Establishment of the Post-Confirmation Committee

33

On the Effective Date, the Post-Confirmation Committee, which shall consist of three (3) members, shall be formed to serve as an advisory board to the Liquidation Trustee. The initial members of the Post-Confirmation Committee shall be: (i) A&M Industrial, Inc., (ii) Trepanning Specialties, Inc. and (iii) the Honorable Kevin Gross (Ret.) provided that if Judge Gross is unwilling to serve on the Post-Confirmation Committee on terms acceptable to the Debtors and the Committee, Adam M. Ambielli shall serve as a member of the Post-Confirmation Committee provided that he shall recuse himself from voting on matters related to Insiders. The Post-Confirmation Committee shall have the rights and obligations set forth in the Plan and in the Liquidation Trust Agreement. The Committee's decisions shall be made by an affirmative vote of a majority of its members with each member having one vote. The Post-Confirmation Committee shall have the responsibility to oversee and advise the Liquidation Trustee with respect to the liquidation and distribution of the Debtor's assets in accordance with the Plan, as specified below. A member of the Post-Confirmation Committee shall recuse him/herself from considering any matter in which he/she is not disinterested; provided, however, such member shall not be considered not disinterested solely as a result of such member's affiliation with or employment by the (i) Holder of a Claim or (ii) Debtors. The proposed members of the Post-Confirmation Committee are identified herein or will otherwise be identified in a Plan Supplement. Vacancies on the Post-Confirmation Committee shall be filled by a Person designated by the remaining member or members of the Post-Confirmation Committee from among the holders of General Unsecured Claims and from candidates designated by the Debtors' Board of Directors. A majority of the Post-Confirmation Committee may remove or replace members of the Post-Confirmation Committee for cause, and any party-in-interest shall have the authority to seek an order from the Bankruptcy Court removing or replacing members of the Post-Confirmation Committee for cause. Any successor appointed pursuant to this Section shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor. For the avoidance of doubt, no member of the Post-Confirmation Committee shall be compensated for serving as a member of the Post-Confirmation Committee except as provided in the Liquidation Trust Agreement; provided, however, that such members may be reimbursed by the Liquidation Trust, from funds in the Post-Effective Date Liquidation Trust Expense Reserve for documented reasonable out-of-pocket costs and expenses up to a cap of $2,500 per member. Beginning after the Effective Date, the Post-Confirmation Committee shall receive a quarterly report from the Liquidation Trustee showing receipts and disbursements, together with a narrative explanation regarding the activities of the Liquidation Trustee and any retained professionals.

The rights, powers and duties of the Post-Confirmation Committee shall be as follows:

(i) To terminate by majority vote in accordance with the Liquidating Trust Agreement, the Liquidation Trustee for cause, and upon such termination (or upon the resignation, death or incapacity of the Liquidation Trustee), appoint a successor Liquidation Trustee in accordance with the terms of the Plan;

(ii) Prior to the commencement of any litigation by the Liquidation Trustee against any of the Insiders, the Liquidation Trustee shall present to the Post-Confirmation Committee a written description of the theory of liability and quantum of damages of the claims proposed to be asserted against the Insiders. An affirmative vote of the Post-Confirmation Committee shall be required to authorize the commencement of litigation provided that, if authorization is obtained, prior to commencement of litigation against the Insiders, the Liquidation Trustee and the Insiders shall mediate before a mutually agreeable mediator or in the absence of such agreement, as designated by the Court (the "Mediation Action"). If the matter is not successfully resolved by mediation, the Liquidation Trustee shall be authorized to commence litigation against those Insiders. If the potential expiration of an applicable statute

34

of limitation prevents the completion of the Mediation Obligation, the Mediation Obligation shall be suspended and, provided that the Post-Confirmation Committee has authorized an action against any of the Insiders, the Liquidation Trustee shall be authorized to commence such action provided further that the Liquidation Trustee has made an unsuccessful good faith effort to obtain a tolling of such statute of limitation.

       (iii)    To approve the settlement of any Cause of Action or dispute, for which the amount in controversy exceeds $250,000;

       (iv)    To approve the allowance of any Disputed Claim if the proposed Allowed amount of such Claim exceeds $250,000;

       (v)    To approve the sale of any assets by the Liquidation Trustee;

       (vi)    To approve any budget in connection with the administration of the Plan and the winding down of the Debtors' affairs prepared by the Liquidation Trustee at the request of the Post-Confirmation Committee;

       (vii)    To review and object to fees and expenses of professionals retained by the Liquidation Trustee on a quarterly basis and in accordance with the terms of the Plan and the Liquidating Trust Agreement; and

       (viii)    To consider and, if appropriate, approve any action proposed by the Liquidation Trustee that is not specifically authorized by the Plan that would have a material effect upon the administration of the Estates and/or the Post-Effective Date Debtors or the Liquidation Trust, provided, however, nothing contained herein shall be deemed to authorize the Liquidation Trustee to take any action that is inconsistent with the terms of the Plan or the Liquidation Trust.

### 6.09    Bankruptcy Court Approval of Liquidation Trustee Actions Not Required.

Unless otherwise specified herein or in the Liquidation Trust Agreement, the Liquidation Trustee need not obtain an order or approval of the Bankruptcy Court in the exercise of any power, right, or discretion conferred hereunder or in the Liquidation Trust Agreement, or account to the Bankruptcy Court, including, but not limited to, with respect settling, compromising, or otherwise resolving any Causes of Action or objections to Claims.  The Liquidation Trustee shall exercise his business judgment for the benefit of the Estates' beneficiaries in order to maximize the value of the Assets and distributions, giving due regarding to the cost, risk, and delay of any course of action.

### 6.10    Expenses of the Liquidation Trust

Fees and expenses incurred by the Liquidation Trustee shall be paid from the Liquidation Trust Expense Reserve.

### 6.11    Compensation of the Liquidation Trustee

The Liquidation Trustee shall be entitled to receive compensation for services rendered on behalf of the Liquidation Trust in the amount of $2,500 per month, payable on the first Business Day of each month, plus reimbursement of all reasonable, out-of-pocket expenses, until the date the Liquidation Trust is dissolved and terminated or by an order of the Bankruptcy Court. For the avoidance of doubt, all compensation of the Liquidation Trustee shall be a Liquidation Trust Expense.

### 6.12    Fiduciary Duties of the Liquidation Trustee

Pursuant to the Plan and the Liquidation Trust Agreement, the Liquidation Trustee shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims against the Debtors that will receive Distributions pursuant to the terms of the Plan.

### 6.13    Transfer of Books and Records

On the Effective Date, subject to any applicable privilege, the Debtors will transfer and assign, or cause to be transferred and assigned, to the Liquidation Trust, all of the books and records of the Debtors, including but not limited to a copy of the information on all the Debtors' servers and a copy of the Debtors' servers.

### 6.14    Dissolution of the Liquidation Trust

The Liquidation Trust shall be dissolved no later than five (5) years from the Effective Date unless the Bankruptcy Court, upon a motion Filed prior to the fourth anniversary of the Effective Date or the end of any extension period approved by the Bankruptcy Court (the filing of which shall automatically extend the term of the Liquidation Trust pending the entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period extension is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets. After (a) the final Distribution of the balance of the assets or proceeds of the Liquidation Trust pursuant to the Plan, (b) the filing by or on behalf of the Liquidation Trust of a certification of dissolution with the Bankruptcy Court in accordance with the Plan, and (c) any other action deemed appropriate by the Liquidation Trustee, the Liquidation Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

### 6.15    Full and Final Satisfaction against Liquidation Trust

On and after the Effective Date, the Liquidation Trust shall have no liability on account of any Claims or Interests except as set forth in the Plan and in the Liquidation Trust Agreement. All payments and all Distributions made by the Liquidation Trustee under the Plan shall be in full and final satisfaction, settlement, and release of and in exchange for all Claims or Interests against the Released Parties, as applicable.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 7.01    Interests in the Debtors

Except as otherwise may be provided in the Plan, on or after the later of 120 days from the Effective Date or dissolution of the Debtors, the Interests in the Debtors shall be cancelled and of no force and effect.

### 7.02    Causes of Action

On the Effective Date, all Causes of Action shall be vested in and retained by the Liquidation Trust. Following the Effective Date, except as otherwise expressly provided herein, the Liquidation Trustee may assert, compromise or dispose of the preserved Causes of Action without further notice to Creditors or Interest Holders or authorization of the Bankruptcy Court.

### 7.03    Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan, all Liens against the property of any Estates will be fully released, and all of the right, title and interest of any holder of such Liens, including any rights to any collateral thereunder, shall attach to and be enforceable solely against any net proceeds of sales of such assets. For the avoidance of doubt, except as otherwise provided in the Plan, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

### 7.04    Vesting and Sale or Other Disposition of Assets; Representative of the Estates

Except as otherwise provided in this Combined Disclosure Statement and Plan, on the Effective Date, all property of the Debtors' Estates, shall be vested in the Liquidation Trust, free and clear of all Claims, liens, charges, other encumbrances, Interests or other interests. On and after the Effective Date, the Liquidation Trustee may use, acquire and dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions imposed by the Plan or the Confirmation Order. The Liquidation Trustee, on and after the Effective Date, may conduct any sales or liquidations of assets on any terms it deems appropriate, without further order of the Bankruptcy Court, except as otherwise provided in the Plan, the Confirmation Order or the Liquidation Trust Agreement.

### 7.05    Effectuating Documents; Further Transactions

On and after the Effective Date, the Liquidation Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other

agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and the transactions contemplated thereby, in each case, in the name of and on behalf of the Debtors and the Liquidation Trust, without the need for any approvals, authorization or consents except those expressly required pursuant to the Plan.

**7.06    Deemed Substantive Consolidation**

The Plan contemplates and is predicated upon the deemed substantive consolidation of the Estates for voting, confirmation, and Distribution purposes. Accordingly, on the Effective Date, each Claim Filed or to be Filed against any Debtor shall be deemed Filed only against Custom Alloy Corporation and shall be deemed a single Claim against and a single obligation of Custom Alloy Corporation, for Distribution purposes, which shall be paid from the Liquidation Trust. This deemed substantive consolidation of the Estates for Distribution purposes means that the specific Debtor against which a creditor Holds or asserts a Claim will have no effect on the Distribution (if any) provided to such creditor under the Plan.

Absent the consent of affected creditors, the Debtors will bear the burden at the Confirmation Hearing of establishing a *prima facie* case for the deemed substantive consolidation of the Debtors' respective Estates.  Accordingly, the Debtors will, to the extent necessary, adduce evidence at the Confirmation Hearing to justify the deemed substantive consolidation in accordance with the standards established by applicable case law. Such evidence may include, without limitation, evidence indicating that creditors have dealt with the Debtors as a single, consolidated enterprise, both before and after the Petition Date, the sale of all of the Debtors' assets without allocation, the Debtors' centralized management, and the Debtors' prepetition use of an integrated cash management system of bank accounts. Further, efforts to deconsolidate the Debtors' respective assets and liabilities would be burdensome and divert professional resources that are more profitably directed elsewhere, all without meaningfully affecting the Distributions to be received under the Plan.

**7.07    Records**

On and after the Effective Date, subject to any applicable privilege which shall not be waived and shall be preserved (including for the benefit of the Liquidating Trust as set forth in section 7.10), all documents and records of the Debtors, including a copy of the information contained on the Debtors' server, shall be transferred to the Liquidation Trust, which shall preserve and maintain all of the Debtors' documents and records according to practices and terms that it deems reasonable and appropriate in its sole and independent discretion.  After such transfer, the Debtors shall be granted access to such documents and records at reasonable dates, times and places.  At any time following the Effective Date, the Liquidation Trustee shall be entitled to destroy any documents and records of the Debtors (a) following the filing of an appropriate notice with the Bankruptcy Court setting forth the Liquidation Trustee's intent to destroy some or all of the Debtors' documents or records, without further order of the Bankruptcy Court, *provided that*, no objections are Filed to such notice on or before the fourteenth (14th) day following the filing of such notice, (b) upon entry of an order by the Bankruptcy Court authorizing the destruction of some

or all of the Debtors' documents and records, or (c) upon dissolution of the Liquidation Trust without the need for further approval of the Bankruptcy Court.

**7.08**    **Insurance Policies**

        **(a)**    **Insurance Policies Remain In Force.**

At the sole cost and expense of the Liquidating Trust, up to and including their policy expiration date(s), any and all Insurance Policies in effect as of the Effective Date shall remain in full force and effect according to their terms and the coverage obligations of the insurers and third-party administrators under such Insurance Policies shall continue following the Effective Date (including any obligations to pay, defend and process insured claims).

        **(b)**    **Insurance Policies; Employment Practice Liability Policies; Similar Policies.**

Nothing contained in this Combined Disclosure Statement and Plan shall affect or impair the rights of any Debtor and non-Debtor insured persons covered under any Insurance Policy, which expressly includes any director and officer, employment practices, or similar liability Insurance Policies (including, without limitation, policies for the benefit of the Debtors' directors, officers, employees, members, managers, or similar persons who served in such capacity either before or after the Petition Date).

**7.09**    **Dissolution of Committee**

On the Effective Date, the Committee shall be dissolved, and the members of the Committee shall be released and discharged from any further authority, duties, responsibilities, and obligations related to, or arising from, these Chapter 11 Cases, except with respect to the limited purpose of preparing and prosecuting applications for the payment of fees and reimbursement of expenses incurred by the Committee or its respective Professionals that accrued prior to dissolution of the Committee.

**7.10**    **Transfer of Privilege/No Waiver**

On the Effective Date, all the Debtors' evidentiary privileges, including the attorney/client privilege, shall be deemed transferred to the Liquidation Trust. The Plan shall be considered a motion pursuant to sections 105, 363, and 365 of the Bankruptcy Code for such relief. Upon such transfer, except as otherwise provided by applicable law, the Debtors and the Estates shall have no other further rights or obligations with respect thereto.  Nothing herein shall be deemed a waiver of the Debtors' or the Estates' rights of privilege.

**7.11**    **Final Decree**

At any time following the Effective Date, but in no event earlier than 120 days after the Effective Date, the Liquidation Trustee shall be authorized to File a motion for entry of a final

decree closing the Chapter 11 Case of CAC.

### 7.12  Winddown of Custom Alloy Corporation

Within 120 days after the Effective Date, the Liquidation Trustee shall take such actions as are necessary or appropriate to winddown the Debtors as expeditiously and efficiently as reasonably practicable, including the establishment of any winddown accounts or the retention of appropriate professionals. The fees and expenses (including attorneys' and advisors' fees and expenses) incurred by the Liquidation Trustee for the winding-down of the Debtors shall be paid by the Liquidation Trust, in the ordinary course of business and shall not be subject to Bankruptcy Court approval; *provided, however*, any disputes related to such fees and expenses should be brought before the Bankruptcy Court. After the Debtors are wound-down, any remaining Cash or Assets of CAC shall be transferred to the Liquidation Trust.

### ARTICLE VIII
### EXECUTORY CONTRACTS

### 8.01  Rejection of Executory Contracts

(a)  Except for any Executory Contracts of the Debtors: (i) that previously were assumed or rejected by an order of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code; (ii) as to which a motion for approval of the assumption or rejection of such contract or lease has been Filed and served prior to, and remains pending as of, the Confirmation Date; or (iii) that were previously assumed and assigned to the Purchaser, each Executory Contract and Unexpired Lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. Nothing herein is intended to affect the validity of contracts and leases entered into by the Debtors on or after the Petition Date, or the rights of the Debtors thereunder, which shall remain in full force and effect after the Effective Date in accordance with their terms.

(b)  The Insurance Policies shall not be considered Executory Contracts for purposes of subsection (a) above. As discussed in section 7.08, the Insurance Policies shall remain in full force and effect following the Effective Date.

### 8.02  Bar Date for Rejection Damages

If the rejection of an Executory Contract pursuant to the Plan or otherwise gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors, Estates, or Liquidation Trust, unless a Proof of Claim is Filed with the Bankruptcy Court by the Rejection Damages Bar Date.

### ARTICLE IX
### PROVISIONS GOVERNING RESOLUTION OF
### CLAIMS AND DISTRIBUTIONS OF PROPERTY UNDER THE PLAN

**9.01**    **Claim Objections**

(a)    **Right to Object to Claims.**

Subject to the terms of the Plan and the Liquidation Trust Agreement, notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, except insofar as a Claim is Allowed under the Plan on and after the Effective Date, the Liquidation Trustee will have the authority, but not the obligation, to do any of the following with respect to any Claims or Interests: (1) File, withdraw or litigate to judgment objections to and requests for estimation of Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (3) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court. The Liquidation Trustee shall succeed to any pending objections to Claims Filed by the Debtors prior to the Effective Date and shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim.

(b)    **Claims Objection Deadline.**

Objections to Claims must be Filed with the Bankruptcy Court and a copy of the objection must be served on the subject Creditor before the expiration of the Claims Objection Deadline; otherwise, such Claims shall be deemed Allowed in accordance with section 502 of the Bankruptcy Code. The objection shall notify the Creditor of the deadline for responding to such objection.  The Bankruptcy Court may extend the Claim Objection Deadline from time to time upon a motion Filed by the Liquidation Trustee on notice and an opportunity for a hearing.

(c)    **Claim Estimation.**

Pursuant to section 502(c) of the Bankruptcy Code, the Liquidation Trustee may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated or any Disputed Claim arising from a right to an equitable remedy or breach of performance.

**9.02**    **Distribution Provisions**

(a)    **Distributions to be Made.**

Except to the extent that distributions have been made prior to the Effective Date, the Liquidation Trustee shall be responsible for making Distributions required or permitted to be made under the Plan.

### (b) Establishment of Reserves.

On the Effective Date, the Liquidation Trustee shall establish and maintain a Reserve of Cash from the Liquidation Trust Assets as the Liquidation Trustee deems reasonably necessary to satisfy any Disputed Claims and any Ordinary Course Liabilities, as well as for the Liquidation Trust Expense Reserve. Further, upon the Professional Fee Bar Date, the Liquidation Trustee shall establish a Reserve of Cash from the Liquidation Trust Assets in an amount that the Liquidation Trustee deems reasonably necessary to satisfy all Professional Fee Claims.

### (c) Distribution Record Date.

As of 5:00 p.m. (Eastern Time) on the Distribution Record Date, the transfer registers for Claims shall be closed. The Liquidation Trustee shall have no obligation to recognize the transfer or sale of any Claim that occurs after such time on the Distribution Record Date and shall be entitled for all purposes herein to recognize and make Distributions only to those Holders who are Holders of Claims as of 5:00 p.m. (Eastern Time) on the Distribution Record Date. Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to 5:00 p.m. (Eastern Time) on the Distribution Record Date shall be treated as the Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

### (d) No Liability.

The Liquidation Trustee shall only be required to make Distributions in accordance with the terms of the Plan. Except on account of gross negligence, fraud, illegality or willful misconduct, the Liquidation Trustee shall have no (i) liability to any party for actions taken in accordance with the Plan or in reasonable reliance upon information provided to it in accordance with the Plan, or (ii) obligation or liability for Distributions under the Plan to any party who does not hold a Claim against the Debtors as of the Distribution Record Date or any other date on which a Distribution is made or who does not otherwise comply with the terms of the Plan.

### (e) Distributions on Account of Disputed Claims.

Except as otherwise provided in a Final Order or as agreed by the relevant parties, Distributions on account of Disputed Claims, if any, that become Allowed, shall be made by the Liquidation Trustee at such periodic intervals as the Liquidation Trustee determines to be reasonably prudent.

### (f) No Distributions Pending Allowance.

Notwithstanding anything herein to the contrary: (a) no Distribution shall be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim (as applicable), and (b) unless agreed otherwise by the Liquidation Trustee, no Distribution shall be made to any Person that holds both an Allowed Claim and a Disputed Claim until such Person's Disputed Claims have

been resolved by settlement or Final Order.

### (g)    Distributions in Cash.

Any required Cash payments to the Holders of Allowed Claims or Interests shall be made by the Liquidation Trustee: (a) in U.S. dollars by check drawn on a domestic bank, or by wire transfer from a domestic bank, and (b) by first-class mail (or by other equivalent or superior means as determined by the Liquidation Trustee).

### (h)    Timing of Distributions.

Except as specifically set forth in the Plan, the Liquidation Trustee may determine, in its discretion, the appropriate timing, amount, and cadence for Distributions.

### (i)    Unclaimed Distributions.

Any entity which fails to claim any Cash within 90 days from the date upon which a Distribution is first made to such entity shall forfeit all rights to any Distribution under the Plan, and the Liquidation Trustee shall be authorized to cancel any Distribution that is not timely claimed. Pursuant to section 347(b) of the Bankruptcy Code, upon forfeiture, such Cash (including interest thereon, if any) shall revert to the source of such Distribution (*i.e.,* the Liquidation Trust or the applicable Reserve) free of any restrictions under the Plan, the Bankruptcy Code or the Bankruptcy Rules.  Upon forfeiture, the claim of any Creditor or Interest Holder with respect to such funds shall be irrevocably waived and forever barred against all of the Debtors, the Estates, and the Liquidation Trustee, notwithstanding any federal or state escheat laws to the contrary, and such Creditor or Interest Holder shall have no claim whatsoever against the any of the foregoing or to any Holder of a Claim to whom Distributions are made.

### (j)    Delivery of Distributions and Undeliverable Distributions to Holders of Claims.

Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Liquidation Trustee, as set forth on the latest date of the following documents: (a) at the address of payment set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed); (b) at the addresses set forth in any written notices of address changes delivered to the Debtors after the date of any related Proof of Claim and prior to the Effective Date; and (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Debtors have not received a written notice of a change of address prior to the Effective Date.

### (k)    Undeliverable Distributions.

The Liquidation Trustee shall make one attempt to make the Distributions contemplated hereunder in accordance with the procedures set forth herein. The Liquidation Trustee in its sole discretion may, but shall have no obligation to, attempt to locate Holders of undeliverable

Distributions. Any Distributions returned to the Liquidation Trustee as undeliverable or otherwise shall remain in the possession of the Liquidation Trust, until such time as a Distribution becomes deliverable, and no further Distributions shall be made to such Holder unless such Holder notifies the Liquidation Trustee of its then current address. Any Holder of an Allowed Claim or Interest entitled to a Distribution of property under this Plan that does not assert a claim pursuant to the Plan for an undeliverable Distribution, or notify the Liquidation Trustee of such Holder's then current address, within 60 days of such Distribution shall have its claim for such undeliverable Distribution irrevocably waived and shall be forever barred from asserting any such claim against the Debtors, the Estates, and/or the Liquidation Trustee or their respective property, and such Distribution shall be deemed an Unclaimed Distribution under Section 9.02(i).

**(l)      De Minimis Distributions.**

If any interim distribution under the Plan to the Holder of an Allowed Claim would be less than $100.00, the Liquidation Trustee may withhold such Distribution until a final Distribution is made to such Holder. If any final Distribution under the Plan to the Holder of an Allowed Claim would be less than $100.00, the Liquidation Trustee may cancel such Distribution.  Any potential Distributions pursuant to this Section shall be treated as an Unclaimed Distributions under Section 9.02(i) of the Plan.

**(m)      Remainder Amounts After Final Distribution.**

After final Distributions have been made in accordance with the terms of the Plan, if the aggregate amount of Unclaimed Distributions and Undeliverable Distributions is less than $5,000, the Liquidation Trustee may donate such amount to a New Jersey Bankruptcy Charity or such other charitable organization as may be determined by the Liquidating Trustee in its sole discretion.

**9.03      Preservation and Assignment of Subordination Rights**

On the Effective Date, upon the Agreement of the Purchaser or by order of the Court, the rights, remedies, and benefits of the Purchaser Acquired Claim shall be deemed assigned to the Liquidation Trust without any further action by or on behalf of the Purchaser or Debtors, and nothing in this Combined Disclosure Statement and Plan shall reduce, waive, or diminish or otherwise affect the rights of the Holder of the Purchaser Acquired Claim or any assignee thereof (including the Liquidation Trust).  Except as may be provided for herein, all subordination rights and claims relating to the subordination by the Debtors or the Liquidation Trustee of any Allowed Claims including the Purchaser Acquired Claim shall remain valid, enforceable, and unimpaired in accordance with section 510 of the Bankruptcy Code or otherwise.

**9.04      Prepetition Purchaser Unsecured Deficiency Claim and Waiver of Other or Further Claims**

On the Effective Date, upon the Agreement of the Purchaser or by order of the Court, the Purchaser Acquired Claim shall be deemed an Allowed General Unsecured Claim with no lien rights of any kind or nature pursuant to section 502 of the Bankruptcy Code and shall not be subject to reconsideration, objection, reduction, increase, counterclaim, offset, or recoupment; *provided,*

*however*, the Purchaser shall not have, nor be entitled to, any distribution on account of its Allowed Purchaser Acquired Claim unless and until all other Allowed Claims have been paid in full.

## ARTICLE X
## EXCULPATION AND INJUNCTION

### 10.01   EXCULPATION

**NEITHER (A) THE DEBTORS, NOR ANY OF THEIR OFFICERS, DIRECTORS, EMPLOYEES, MANAGERS, MEMBERS OR BANKRUPTCY COURT APPOINTED ADVISORS, ATTORNEYS, OR PROFESSIONALS OR AGENTS, OR (B) THE COMMITTEE, NOR ANY OF ITS BANKRUPTCY COURT APPOINTED MEMBERS, ATTORNEYS, OR PROFESSIONALS, SHALL HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATED TO, OR ARISING OUT OF, THE CHAPTER 11 CASES, THE PURSUIT OR CONSUMMATION OF THE SALES OF THE DEBTORS' ASSETS, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY OF THE DEBTORS TO BE REALIZED, LIQUIDATED, RETAINED OR DISTRIBUTED UNDER THE PLAN, EXCEPT FOR WILLFUL MISCONDUCT, GROSS NEGLIGENCE, OR A BREACH OF FIDUCIARY DUTY, AND, IN ALL RESPECTS, THE DEBTORS, AND THEIR RESPECTIVE MEMBERS, MANAGERS, OFFICERS, DIRECTORS, EMPLOYEES, AND BANKRUPTCY COURT APPOINTED ADVISORS, PROFESSIONALS AND AGENTS AND THE COMMITTEE AND ITS BANKRUPTCY COURT APPOINTED MEMBERS, ATTORNEYS AND PROFESSIONALS SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN.**

### 10.02   INJUNCTION

**ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTIONS 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, WILL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE. EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, OR TO THE EXTENT NECESSARY TO ENFORCE THE TERMS AND CONDITIONS OF THE PLAN, THE CONFIRMATION ORDER, OR A SEPARATE ORDER OF THE BANKRUPTCY COURT. ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTORS, WILL BE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE DEBTORS, THEIR ESTATES, OR ANY OF THEIR PROPERTY ON ACCOUNT OF ANY SUCH CLAIM OR EQUITY INTEREST: (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR**

**ORDER; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE TO THE DEBTORS, EXCEPT AS OTHERWISE SET FORTH IN THE PLAN; AND (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN, <u>PROVIDED, HOWEVER</u>, THAT SUCH ENTITIES WILL NOT BE PRECLUDED FROM EXERCISING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS OF THE PLAN, THE CONFIRMATION ORDER, OR THE LIQUIDATING TRUST AGREEMENT**.

**ARTICLE XI**
**<u>CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE</u>**

**11.01    <u>Conditions Precedent to Confirmation</u>**

It shall be a condition to confirmation hereof that the following provisions, terms and conditions shall have been satisfied or waived pursuant to Section 11.03:

(a)    The Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the Plan Proponents, approving the Disclosure Statement with respect to the Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

(b)    The Plan, the exhibits thereto, and the Confirmation Order shall be in a form and substance reasonably acceptable to the Plan Proponents.

**11.02    <u>Conditions Precedent to the Effective Date</u>**

It shall be a condition to the Effective Date that the following provisions, terms and conditions shall have been satisfied or waived pursuant to Section 11.03.

(a)    The Bankruptcy Court shall have entered the Confirmation Order, in form and substance reasonably acceptable to the Plan Proponents confirming the Plan pursuant to section 1129 of the Bankruptcy Code and such order shall have become final and non-appealable.

(b)    No stay of the Confirmation Order shall then be in effect.

(c)    The Liquidating Trust Agreement shall be executed, the Liquidating Trust shall be created, and the Liquidating Trustee shall have been appointed and accepted such appointment.

(d)    The Post-Confirmation Committee shall have been organized.

**11.03    <u>Waiver of Conditions</u>**

The conditions to confirmation of the Plan and to the occurrence of the Effective Date set

46

forth in this Article XI may be waived at any time by each of the Plan Proponents without an order of the Bankruptcy Court.

### 11.04   Effect of Failure of Conditions

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of any claims by or Claims against the Debtors; (ii) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest or any other entity; or (iii) constitute an admission, acknowledgment, offer or undertaking by the Debtors, the Committee, any Creditors or Interest Holders or any other entity in any respect.

### 11.05   Filing of Notice of the Effective Date.

On the Effective Date or as shortly thereafter as reasonably practicable, the Plan Proponents shall File a notice of the Effective Date with the Bankruptcy Court.

## ARTICLE XII
## MODIFICATION, REVOCATION OR WITHDRAWAL OF PLAN

### 12.01   Modification and Amendments

Except as otherwise specifically provided herein, each of the Plan Proponents reserves the right to modify the Plan as to material terms and seek confirmation consistent with the Bankruptcy Code and Bankruptcy Rules and, as appropriate, not re-solicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponents expressly reserve their rights to alter, amend or modify materially the Plan with respect to any or all Debtors, one or more times, after confirmation and before the Effective Date, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article and with the consent of both of the Plan Proponents. In addition, prior to the Effective Date, the Plan Proponents may make appropriate technical adjustments and modifications to the Plan, without further order or approval of the Bankruptcy Court; provided, however, that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Allowed Claims or Interests.

### 12.02   Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the commencement of the solicitation of votes on the Plan are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### 12.03    Revocation or Withdrawal of the Plan

Each of the Plan Proponents reserves the right to revoke or withdraw the Plan before the Effective Date. If the Plan Proponents revoke or withdraw the Plan, or if the Confirmation Date or the Effective Date does not occur on or before 60 days after the entry of the Confirmation Order, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of any Executory Contracts effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests or Claims by any Debtor against any other entity; (b) prejudice in any manner the rights of such Debtor, the Committee, the Holder of any Claim or Interest or any other entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor, the Committee or any other entity.

### ARTICLE XIII
### JURISDICTION

### 13.01    Bankruptcy Court Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over these Chapter 11 Cases to the maximum extent as is legally permissible, including, without limitation, for the following purposes:

(a)    To allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

(b)    To ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(c)    To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any Executory Contract;

(d)    To consider and approve any modification of the Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

(e)    To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or any Plan Documents including the Liquidation Trust Agreement or any entity's obligations in connection with the Plan or any Plan Documents, or to defend any of the rights, benefits, Estate property

transferred, created, or otherwise provided or confirmed by the Plan or the Confirmation Order or to recover damages or other relief for violations thereof;

(f)     To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtors, the Estates, or the Liquidation Trustee;

(g)     To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtors, or the Estates that may be pending on the Effective Date or that may be brought by the Debtors or the Liquidation Trustee, or any other related proceedings by the Liquidation Trustee, and to enter and enforce any default judgment on any of the foregoing;

(h)     To decide or resolve any and all applications for compensation with respect to Professional Fee Claims;

(i)     To issue orders in aid of execution and implementation of the Plan or any Plan Documents including the Liquidation Trust Agreement to the extent authorized by section 1142 of the Bankruptcy Code or provided by the terms of the Plan;

(j)     To decide issues concerning the federal or state tax liability of the Debtors which may arise in connection with the confirmation or Consummation of the Plan or any Plan Documents including the Liquidation Trust Agreement;

(k)     To interpret and enforce any orders entered by the Bankruptcy Court in these Chapter 11 Cases;

(l)     To address issues and disputes related to the actions by the Liquidation Trustee or to the enforcement and interpretation of the Liquidation Trust Agreement; and

(m)     To enter an order closing these Chapter 11 Cases when all matters contemplating the use of such retained jurisdiction have been resolved and satisfied.

### 13.02   Limitation on Jurisdiction

In no event shall the provisions of the Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334, as well as the applicable circumstances that continue jurisdiction for defense and enforcement of the Plan and Plan Documents. For the avoidance of doubt, however, such jurisdiction shall be deemed, by the entry of the Confirmation Order, to:

(a)     Permit entry of a final judgment by the Bankruptcy Court in any core proceeding referenced in 28 U.S.C. § 157(b) and to hear and resolve such proceedings in accordance with 28 U.S.C. § 157(c) and any and all related proceedings, including, without limitation, (i) all proceedings concerning disputes with, or Causes of Action or Claims against, any Person that the Debtors, the Estates, or the Liquidation Trust or any of their successors or assigns, may have, and (ii) any and all Causes of Action or other Claims against any Person for harm to or

with respect to (x) any Estate Property, including conversion of Estate Property, or (y) any Estate Property liened or transferred by the Debtors to any other Person;

(b)   Include jurisdiction over the recovery of any Estate Property (or property transferred by the Debtors with Bankruptcy Court approval) from any Person wrongly asserting ownership, possession or control of the same, whether pursuant to sections 542, 543, 549, and/or 550 of the Bankruptcy Code or otherwise, as well as to punish any violation of the automatic stay under section 362 of the Bankruptcy Code or any other legal rights of the Debtors or the Estates under or related to the Bankruptcy Code; and

(c)   Permit the taking of any default judgment against any Person who has submitted himself or herself to the jurisdiction of the Bankruptcy Court.

## ARTICLE XIV
## MISCELLANEOUS

### 14.01   Exemption from Taxes

The Plan and the Confirmation Order provide for (a) the issuance, transfer or exchange of notes, debt instruments and equity securities under or in connection with the Plan; and (b) the creation, execution and delivery of agreements or other documents creating or evidencing the formation of the Liquidation Trust and any right or interest in the Liquidation Trust. Pursuant to section 1146 of the Bankruptcy Code and the Plan, any such act described or contemplated herein will not be subject to any stamp tax, transfer tax, filing or recording tax, or other similar tax.

### 14.02   Compliance with Tax Requirements

Notwithstanding anything to the contrary in this Combined Disclosure Statement and Plan, the Liquidation Trust shall be entitled to deduct any federal, state or local withholding taxes from any Distributions made with respect to Allowed Claims, as appropriate. The Liquidation Trust shall be authorized to take all actions necessary to comply with applicable withholding and reporting requirements, including, without limitation, applying a portion of any Distribution of Cash to be made under the Plan to pay applicable withholding Taxes. Any amounts withheld pursuant to the immediately preceding sentence will be deemed to have been Distributed and received by the applicable recipient for all purposes of the Plan. Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim that has received a Distribution under the Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any Governmental Unit, including income, withholding and other tax obligation, on account of such Distribution. The Liquidation Trustee shall have the right, but not the obligation, to not make a Distribution until the applicable recipient has made arrangements satisfactory to the Liquidation Trustee for the payment of any Tax obligations. For tax purposes, Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims until such principal amount is paid in full and then to any interest accrued on such Claim prior to the Petition Date, and the remaining portion of such Distributions, if any, will apply to any interest on such Claim after the Petition Date. The Liquidation Trustee shall be authorized

to require each Holder of a Claim to provide it with an executed Form W-9, Form W-8, or any other tax form, documentation or certification as may be requested by the Liquidation Trustee as a condition precedent to being sent a Distribution. If a Holder of an Allowed Claim does not provide the Liquidation Trustee with an executed Form W-9, Form W-8 or other requested tax form within 90 days after the date of the Liquidation Trustee's initial request, the Liquidation Trustee may, in its sole discretion (a) make such Distribution net of applicable withholding or (b) reserve such Distribution, in which case (i) such Holder shall be deemed to have forfeited the right to receive any Distribution under the Plan, (ii) any such Distribution shall revert to the source of such Distribution (*i.e.,* the Liquidation Trust or the applicable Reserve), for Distribution on account of other Allowed Claims and (iii) the Claim of the Holder originally entitled to such Distribution shall be irrevocably waived and forever barred without further order of the Bankruptcy Court. The Liquidation Trustee reserves the right to allocate and Distribute all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, Liens and similar encumbrances.

### 14.03   Defenses and Setoff

Nothing contained in this Combined Disclosure Statement and Plan shall constitute a waiver or release by the Debtors, their estates, or the Liquidation Trustee of any right rights in respect of legal and equitable objections, defenses, setoffs, or recoupment. To the extent permitted by applicable law, the Liquidation Trustee may, but shall not be required to, set off or recoup against any Claim and the payments or other Distributions to be made under the Plan in respect of such Claim, claims of any nature whatsoever that arose before the Petition Date that the Debtors, the Estates, or the Liquidation Trustee may have against the Holder of such Claim or Interest.

### 14.04   Governing Law

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New Jersey, without giving effect to the principles of conflicts of law thereof.

### 14.05   Successors and Assigns

The rights, benefits and obligations of any entity named or referred to in the Plan or any Plan Document shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

### 14.06   Transfer of Claims

Prior to the Effective Date, any transfer of a Claim shall be in accordance with Bankruptcy Rule 3001(e) and the terms of this Section. Notice of any such transfer shall be forwarded to counsel for the Debtors.  Both the transferee and transferor shall execute any notice, and the signatures of the parties shall be acknowledged before a notary public. The notice must clearly describe the interest in the Claim to be transferred. No transfer of a partial interest shall be allowed. All transfers must be of one hundred percent (100%) of the transferor's interest in the Claim.

The beneficial interests owned by the Liquidation Trust Beneficiaries, which shall be reflected only on the records of the Liquidation Trust maintained by the Liquidation Trustee, shall be uncertificated, non-negotiable, and neither assignable nor transferable voluntarily.  In the case of a deceased individual Liquidation Trust Beneficiary, its executor or administrator shall succeed to such decedent's beneficial interest upon notice to the Liquidation Trustee.

### 14.07   Post-Effective Date Service List

Pursuant to Bankruptcy Rule 2002 and any applicable Local Rule, notice of all post-confirmation matters for which notice is required to be given shall be deemed sufficient if served upon counsel for the U.S. Trustee, counsel to the Plan Proponents, counsel for the Liquidation Trustee, all persons on the Bankruptcy Rule 2002 service list, and all persons (and their counsel, if known) whose rights are affected by such post-confirmation matters.  With the exception of the Plan Proponents and the U.S. Trustee, any Person desiring to remain on the Debtors' Bankruptcy Rule 2002 service list shall be required to File a request for continued service and to serve such request upon counsel to the Liquidation Trustee within thirty (30) days subsequent to the Effective Date. Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order. **Persons who do not File a request for continued service within thirty (30) days subsequent to the Effective Date shall be removed from the Debtors' Bankruptcy Rule 2002 service list.**

### 14.08   Notices

To be effective, any pleading, notice or other document required by the Plan or the Confirmation Order to be served on or delivered to counsel to the Debtors, the Committee, and the U.S. Trustee must be sent by electronic mail, overnight delivery service, courier service, or messenger to:

Debtors' Counsel:
Jonathan I. Rabinowitz (jrabinowitz@rltlawfirm.com)
Henry Karwowski (hkarwowski@rltlawfirm.com)

 RABINOWITZ, LUBETKIN & TULLY, LLC
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039

Committee Counsel:
Martha B. Chovanes (mchovanes@foxrothschild.com)
Joseph J. DiPasquale (jdipasquale@foxrothschild.com)
Michael R. Herz (mherz@foxrothschild.com)
FOX ROTHSCHILD LLP
49 Market Street
Morristown, NJ  07960

### 14.09   Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h) and 7062 and/or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidation Trust, any and all Holders of Claims and Interests (irrespective of whether such Claims or Interests are Allowed or Disallowed or were voted to accept or reject the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts with one or more of the Debtors.

### 14.10   Severability of Plan Provisions

If, before the Effective Date of the Plan, any term or provision of the Plan is held by the Bankruptcy Court or any other court exercising jurisdiction to be invalid, void or unenforceable, the Bankruptcy Court or other court exercising jurisdiction shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted so long as such term or provision is acceptable to the Plan Proponents.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Plan Proponents' consent; and (iii) non-severable and mutually dependent.

### 14.11   Exhibits

All exhibits and documents attached hereto are incorporated into and are a part of the Plan as if set forth in full in the Plan, to the extent not inconsistent with the Plan.  The Plan Proponents reserve the right to amend the Exhibits and schedules (if any) to the Plan any time prior to the Confirmation Date.

### 14.12   Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Plan Proponents will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and any applicable non- bankruptcy law, and pursuant to section 1125(e), the Plan Proponents and their respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, including, if applicable, in the offer, issuance, sale and purchase of any Plan securities (if any) provided under the Plan, and, therefore, will have no liability for the violation of any applicable law, rule or regulation governing the solicitation of

votes on the Plan.

### 14.13  Conflicts

If there is a conflict between this Combined Disclosure Statement and Plan and an exhibits hereto, including the Liquidation Trust Agreement, the Combined Disclosure Statement and Plan shall govern and control, except for inconsistencies or clarifications in furtherance of the Liquidation Trust as a liquidating trust for federal income tax purposes, in which case the terms and/or provisions of the Liquidation Trust Agreement shall govern. If any provision of this Combined Disclosure Statement and Plan conflicts with or is in any way inconsistent with any provision of the Confirmation Order, the Confirmation Order shall govern and control.

### 14.14  U.S. Trustee Fees

The Debtors will pay pre-confirmation fees owed to the U.S. Trustee on or before the Effective Date of the Plan. After the Effective Date, the Liquidation Trustee will File with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports in a format prescribed by the U.S. Trustee, and the Liquidation Trustee will pay post-Effective Date quarterly fees to the U.S. Trustee until a final decree is entered or the case is converted or dismissed as provided in 28 U.S.C. § 1930(a)(6).

### 14.15  Implementation

The Plan Proponents and the Liquidation Trustee shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan and the Plan Documents, without further order from the Bankruptcy Court.

### 14.16  No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtors, the Estates, or the Committee with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of the classification of any Claim or Interest.

*[Signature page follows]*

November 3, 2023

/s/ Adam M. Ambielli
Name:  Adam M. Ambielli
Title:
Solely in his capacity as President of Custom Alloy Corporation

November 3, 2023

/s/ Adam F. Ambielli
Name:  Adam F. Ambielli
Title:
Solely in his capacity as Managing Member of CAC
Michigan, LLC

November 3, 2023

/s/ Tim LeFevre
Name:  Tim LeFevre
Chairperson of the
Official Committee of Unsecured Creditors

Submitted by:

*Debtors' Counsel*

/s/ Jonathan I. Rabinowitz
Jonathan I. Rabinowitz
Rabinowitz, Lubetkin & Tully, L.L.C.
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
 (973) 597-9100 x109 (telephone)
(973) 597-9119 (Facsimile)
 jrabinowitz@rltlawfirm.com

          -and-

*Committee Counsel*

/s/ Joseph J. DiPasquale
Joseph J. DiPasquale
Martha B. Chovanes
Michael R. Herz
Fox Rothschild LLP
49 Market Street
Morristown, NJ  07960
(973) 992-4800 (Telephone)
(973) 992-9125 (Facsimile)
jdipasquale@foxrothschild.com
mchovanes@foxrothschild.com
mherz@foxrothschild.com

# **Exhibit A**

*Definitions*

146448562.1

As used in the Plan, the following terms have the following meanings:

1. **"503(b)(9) Claims"** shall mean Claims arising under section 503(b)(9) of the Bankruptcy Code against one or more of the Debtors that were Filed against one or more of the Debtors on or before the General Bar Date.

2. **"Administrative Claim"** shall mean any right to payment constituting a cost or expense of administration of these Chapter 11 Cases as it relates to one of the Debtors under section 503(b) and 507(a)(2) of the Bankruptcy Code including, any actual and necessary costs and expenses of preserving the Debtors' Estates, any actual and necessary costs and expenses of operating the Debtors' business, any indebtedness or obligations incurred by the Debtors after the Petition Date in connection with the conduct of its business, all compensation and reimbursement of expenses awarded or otherwise approved for payment by Final Order of the Bankruptcy Court under section 330, 503(b) or 1129(a)(4) of the Bankruptcy Code, any fees or charges assessed against the Debtors' Estates under section 1930 of chapter 123 of title 28 of the United States Code, all wages, salaries and health and other benefits on account of services rendered after the Petition Date, all post-Petition Date taxes, and all other claims entitled to administrative expense status pursuant to a Final Order of the Bankruptcy Court, in each case relating to the period from the Petition Date to the Effective Date but not beyond.

3. **"Allowed"** shall mean all or a portion of a Claim against one of the Debtors or an Interest in the Debtors (a) that has been listed by one of the Debtors in its Schedules as liquidated in amount and not "disputed" or "contingent," and with respect to which no contrary Claim or proof of Interest has been Filed, (b) for which a proof of claim has been Filed and as to which no Objection or request for estimation has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court, (c) as to which any Objection has been settled, waived, withdrawn or denied by a Final Order, or (d) that is allowed (i) by a Final Order, (ii) by an agreement between the Holder of such Claim or Interest and one or more of the Debtors prior to the Effective Date, or the Liquidation Trustee on behalf of the Debtors Estates after the Effective Date or (iii) pursuant to the terms of this Combined Disclosure Statement and Plan. For purposes of computing Distributions under this Combined Disclosure Statement and Plan, a Claim or Interest that has been deemed "Allowed" shall not include interest, costs, fees or charges on such Claim or Interest from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code or as otherwise expressly set forth in this Combined Disclosure Statement and Plan. For the avoidance of doubt, any Claim that relates to obligations that were assumed by the Purchaser pursuant to the Asset Purchase Agreement shall not be an Allowed Claim for purposes of this Combined Disclosure Statement and Plan.

4. **"Asset Purchase Agreement"** shall mean that certain *Amended and Restated Asset Purchase Agreement* by and between the Debtors and the Purchaser dated as of May 20, 2023, including all schedules and exhibits thereto.

5. **"Assets"** means all tangible and intangible assets of every kind and nature of the Debtors and their Estates within the meaning of section 541 of the Bankruptcy Code.

6. **"Avoidance Actions"** shall mean any and all claims or causes of action to avoid or recover a transfer of property, or avoid an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553, and 724(a) of the Bankruptcy Code and any other applicable non-bankruptcy law, whether or not litigation has been commenced with respect to such claims or causes of action as of the Effective Date.

7.      **"Bankruptcy Code"** shall mean Title 11 of the United States Code and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to these Chapter 11 Cases.

8.      **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of New Jersey.

9.      **"Bankruptcy Rules"** shall mean, when referenced generally, (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of Title 28 of the United States Code, (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of Title 28 of the United States Code, (iii) the applicable Local Rules of Bankruptcy Practice and Procedures for the United States Bankruptcy Court for the District of New Jersey, and (iv) any standing orders governing practice and procedure issues by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to these Chapter 11 Cases or proceedings therein, as the case may be; provided, however, when a specific Bankruptcy Rule is referenced (*e.g.*, Bankruptcy Rule 9019), such reference shall be to such Rule under the Federal Rules of Bankruptcy Procedure.

10.      **"Bar Date"** shall mean, with respect to any particular Claim, the specific date set by the Bankruptcy Court as the last day for Filing proofs of Claim or proofs of Interest against one or more of the Debtors in these Chapter 11 Cases for that specific Claim or Interest, as set forth in the Bar Date Order.

11.      **"Bar Date Order"** shall mean the Stipulation and Consent Order Extending the Bar Dates by Sixty Days dated December 22, 2022 at D.I. 211.

12.      **"Bid Procedures Order"** means the *Order Pursuant to 11 U.S.C. §§ 363 and 365 and Bankruptcy Rules 2002, 6004, and 6006 (1) Approving Bidding Procedures for Sale of Substantially All Assets of the Debtors; (2) Scheduling (A) An Auction Sale and (B) A Hearing To Consider Approval of Highest and Best Offer; (3) Approving Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (4) Approving Form, Manner, and Sufficiency of Notices; and (5) Granting Related Relief* entered on February 27, 2023 at D.I. 319.

13.      **"Business Day"** shall mean any day, other than a Saturday, Sunday or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

14.      **"CAC Michigan, LLC"** shall mean the Debtor, CAC Michigan LLC.

15.      **"Carve Out Reserve"** shall mean the reserves created as of the Closing Date from the proceeds of the Sale carved out of the Collateral of the Pre-Petition Lender pursuant to the Final DIP Order to satisfy certain administrative expenses.

16.      **"Cash"** or **"$"** shall mean legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

17.      **"Cause of Action"** or **"Causes of Action"** shall mean, individually or collectively and without limitation, any and all actions, liabilities, obligations, rights to legal or equitable remedies, suits, debts, sums of money, damages, judgments, claims and demands whatsoever, whether known or unknown, matured or unmatured, disputed or undisputed and whether asserted

or assertable directly or derivatively in law, equity or otherwise held by the Debtors, the Committee, or the Estates as of the Effective Date, including, without limitation, Avoidance Actions, commercial tort claims as defined in Article 9 of the UCC, the D&O Claims and any and all claims and causes of action against the Debtors' current or former directors, officers, managers, members, employees, and any and all proceeds of the foregoing Causes of Action.

18.      **"Chapter 11 Cases"** shall mean the Debtors' chapter 11 cases, which are jointly administered under Case No. 22-18143 (MBK) in the Bankruptcy Court.

19.      **"Claim"** or **"Claims"** shall mean a claim or claims against one or more of the Debtors, as such term is defined in section 101(5) of the Bankruptcy Code.

20.      **"Claims Objection(s)"** shall mean any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim).

21.      **"Claims Objection Deadline"** shall mean one hundred eighty (180) days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court, provided however, that the Liquidation Trustee may File one or more motions with the Bankruptcy Court on notice and an opportunity for a hearing to extend such deadline from time to time.

22.      **"Class"** shall mean each category or group of Holders of Claims or Interests that has been designated as a class in Article IV of this Combined Disclosure Statement and Plan.

23.      **"Closing Date"** shall have the meaning ascribed to it in Section 2.7 of the Asset Purchase Agreement which occurred on June 16, 2023.

24.      **"Closing Effective Date"** shall mean 11:59 p.m. Eastern Time on June 15, 2023.

25.      **"Collateral"** shall mean property of the Debtors that is subject to the liens of CIBC Bank USA and Barings BDC Inc.

26.      **"Combined Disclosure Statement and Plan"** shall mean this entire document and all exhibits, schedules and related documents, whether annexed hereto or Filed in connection herewith, including the Disclosure Statement portions and the Plan portions.

27.      **"Confirmation Date"** shall mean the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of these Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

28.      **"Confirmation Hearing"** shall mean the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

29.      **"Confirmation Order"** shall mean the order of the Bankruptcy Court (a) approving the adequacy of the information in the Combined Disclosure Statement and Plan pursuant to section 1125 of the Bankruptcy Code, and (b) confirming the Plan pursuant to, among others, section 1129 of the Bankruptcy Code.

30.    **"Consummation"** shall mean the occurrence of the Effective Date and fulfillment of substantially all the steps necessary to implement the terms and provisions of the Plan.

31.    **"Contingent"** shall mean, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

32.    **"Committee"** shall mean the official committee of unsecured creditors appointed by the U.S. Trustee, the composition of which has changed as a result of the resignation prior to the Effective Date of a member of the Committee.

33.    **"Creditor"** shall have the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.

34.    **"Custom Alloy Corporation"** shall mean the Debtor, Custom Alloy Corporation (also referred to in the Plan as "CAC").

35.    **"D&O Claims"** shall mean potential causes of action, excluding Avoidance Actions, against the Debtor's Insiders who are or were at relevant points in time, directors, officers, managers or members of the Debtors.

36.    **"D&O Liability Insurance Policy"** shall mean the insurance policy issued by the Princeton Excess and Surplus Lines Insurance Company, Policy No. 9DA3CM0000036-00, including any other insurance policy, including tail insurance policies, providing for coverage for Insiders at any time, and all agreements, documents or instruments relating thereto.

37.    **"Debtors"** shall mean Custom Alloy Corporation and CAC Michigan, LLC.

38.    **"DIP"** shall mean debtor-in-possession.

39.    **"DIP Facility"** shall mean that certain debtor-in-possession financing facility as evidenced by the DIP Financing Documents.

40.    **"DIP Financing Documents"** shall mean the underlying secured credit agreement together with any other related agreements, amendments, supplements, documents, security agreements, pledge agreements, and intercreditor agreements between the Debtors and the DIP Lender approved by the Bankruptcy Court on a final basis through the Final DIP Order dated May 19, 2023 [D.I. 489].

41.    **"DIP Lender"** shall mean CIBC Bank USA.

42.    **"DIP Motion"** shall mean the *Debtors' Motion for Interim Order Pursuant to 11* U.S.C. §§ 105, 361, 362, 363, 364 AND 507: (A) *Authorizing and Approving Debtors' Post-Petition Financing; (B) Granting Liens and Security Interests and Providing Superpriority Administrative Expense Status; (C) Authorizing Use of Cash Collateral and Affording Adequate Protection; (D) Modifying the Automatic Stay; (E) Scheduling Final Hearing and (F) Granting Related Relief* filed on October 19, 2022 [D.I. 20] as amended by *Motion of Custom Alloy Corporation, Chapter 11 Debtor-in-Possession, Amending its Prior Motion for Order Authorizing Debtor to Obtain Post-Petition Financing Pursuant to § 364 and granting Other Relief* filed on December 22, 2022 at D.I. 218.

43.    **"Disallowed"** shall mean with respect to any Claim or Interest or portion thereof, any Claim against or Interest in one or more of the Debtors which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the Debtors or the Liquidation Trustee, whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) is listed in the Schedules as zero or as Disputed, Contingent or unliquidated and in respect of which a proof of Claim or a proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any proof of Claim or proof of Interest; (vi) is evidenced by a proof of Claim or a proof of Interest which has been Filed, or which has been deemed to be Filed under applicable law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such proof of Claim or proof of Interest was not timely or properly Filed; (vii) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; and (viii) where the Holder of a Claim is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such Property, for which such Person, Entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code. In each case a Disallowed Claim or a Disallowed Interest is Disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

44.    **"Disallowed Claim"** shall mean a Claim, or any portion thereof, that is Disallowed.

45.    **"Disallowed Interest"** shall mean an Interest, or any portion thereof, that is Disallowed.

46.    **"Disbursing Agent"** shall mean the Liquidation Trustee or any third party designated by the Liquidation Trustee to act as Disbursing Agent.

47.    **"Disclosure Statement"** shall mean the disclosure statement, as amended, supplemented or modified from time to time, that is embodied within this Combined Disclosure Statement and Plan and distributed in accordance with, among others, sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and other applicable law.

48.    **"Disputed"** shall mean any Claim or Interest which has not yet been Allowed or Disallowed in accordance with the terms of this Combined Disclosure Statement and Plan.

49.    **"Disputed Claims"** shall mean any Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, Disputed Secured Claims, Disputed PMSI Claims and Disputed General Unsecured Claims.

50.    **"Distributable Cash"** shall mean the Cash remaining in the Liquidation Trust following the payment of Professional Fee Claims, Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, and Liquidation Trust Expenses.

51.    **"Distribution"** shall mean any distribution made pursuant to the Plan by the Liquidation Trustee or another Entity acting as the Disbursing Agent, to the Holders of Allowed Claims.

52.     **"Distribution Date"** shall mean the date on which a Distribution is made pursuant to this Combined Disclosure Statement and Plan.

53.     **"Distribution Record Date"** shall mean the date established for determining the Holders of Allows Claims or Allowed Interests entitled to Distributions pursuant to the Plan, which shall be the Confirmation Date.

54.     **"Effective Date"** shall mean the first Business Day after the date on which (a) the Confirmation Order becomes a Final Order; and (b) all conditions in Article XI of this Combined Disclosure Statement and Plan have been satisfied or waived in accordance with that Article.

55.     **"Electric Boat"** shall mean Electric Boat Corporation.

56.     **"Entity"** shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

57.     **"Estate"** or **"Estates"** shall mean one or more estates of the Debtors created pursuant to section 541 of the Bankruptcy Code.

58.     **"Exculpated Parties"** shall mean as of the Petition Date through the date of the closing of these Chapter 11 Cases (and in the event that these Chapter 11 Cases are closed and subsequently reopened, during such time as these Chapter 11 Cases are reopened): (i) the Debtors, (ii) the Debtors' directors and officers, (iii) the Committee, and (iv) in the case of (i) – (iii), each of their respective Representatives, and in the case of the Committee, each of its members (each solely in such capacity); *provided, however,* that with respect to any Person identified herein, such Person shall be considered an Exculpated Party solely to the extent that such Person participated in actions to which section 1125(e) of the Bankruptcy Code applies.

59.     **"Executory Contract"** shall mean a contract or lease to which one of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

60.     **"File," "Filed,"** or **"Filing"** shall mean, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases; provided, however, that with respect to proofs of Claim and proofs of Interest only, "Filed" shall mean delivered and received in the manner provided by the Bar Date Order or as otherwise established by order of the Bankruptcy Court.

61.     **"Final Administrative Claims Bar Date"** means the date that is 30 days after the Effective Date, which shall be the deadline for Filing requests for payment of Administrative Claims that arose after the Closing Date.

62.     **"Final Order"** shall mean an unstayed order, ruling or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or request for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors or the Liquidation Trustee on behalf of the Estates (on or after the Effective Date), or, in the event that an appeal, writ of certiorari, or

reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or petitioned for certiorari, reargued or reheard, and shall have been denied affirmed and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under rule 59 or rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

63.     **"Final DIP Order"** shall mean the *Final Order (I) Authorizing the Debtor to Obtain Secured Postpetition Financing; (II) Authorizing the Use of Cash Collateral; (III) Granting (A) Liens and Superpriority Administrative Expense Claims, and (B) Adequate Protection to Prepetition Lender; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* entered on May 19, 2023 [D.I. 489].

64.     **"Final SDF Financing Orders"** shall mean orders entered on December 2, 2022 [D.I. 178], December 29, 2022 [D.I. 228] and May 19, 2023 [D.I. 488].

65.     **"General Bar Date"** shall mean February 20, 2023 on or before 5:00 p.m. (Prevailing Eastern Time) for certain Claims arising before the Petition Date, including 503(b)(9) Claims, Secured Claims, General Unsecured Claims, or Priority Non-Tax Claims as established by the Bar Date Order.

66.     **"General Unsecured Claim"** shall mean any unsecured Claim against the Debtors that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen before the Petition Date and that is not: (i) an Administrative Claim, (ii) a Priority Tax Claim, (iii) a Secured Claim, (iv) a Priority Non-Tax Claim, (v) a PMSI Claim, or (v) an Intercompany Claim.

67.     **"Governmental Unit"** shall have the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

68.     **"Governmental Unit Bar Date"** shall mean June 10, 2023 on or before 5:00 p.m. (Prevailing Eastern Time) as established by the Bar Date Order.

69.     **"Holder"** or **"Holders"** shall mean the legal or beneficial Holder of a Claim or Interest (and, when used in conjunction with a Class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type).

70.     **"Impaired"** shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

71.     **"Impaired Class"** shall mean a Class of Claims or Interests that is Impaired under Section 1124 of the Bankruptcy Code.

72.     **"Insider"** shall have the meaning ascribed to such term in section 101(31) of the Bankruptcy Code and any Person which is or at any relevant time was an officer, director, manager, or member of the Debtors.

73.    **"Insurance Policies"** shall mean all insurance policies that have been issued to, or provide coverage to, any of the Debtors and all agreements, instruments, or documents relating thereto.

74.    **"Intercompany Claim"** shall mean any account reflecting intercompany book entries by one Debtor with respect to another Debtor.

75.    **"Interests"** shall mean the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person in the Debtors including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtor, partnership interests in the Debtor's stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtors or obligating the Debtors to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated "stock" or a similar security.

76.    **"IRS"** shall mean the Internal Revenue Service of the United States of America.

77.    **"KCP Advisory Group, LLC"** shall mean the entity who employs Jacen Dinoff, who shall be the Liquidating Trustee.

78.    **"Liquidation Analysis"** shall mean that certain liquidation analysis, as may be amended, modified or supplemented, attached to this Combined Disclosure Statement and Plan as Exhibit B.

79.    **"Liquidation Trust"** shall mean the trust established under the Plan and the Liquidation Trust Agreement.

80.    "**Liquidation Trust Agreement**" means the trust agreement that establishes the Liquidation Trust and governs the powers, duties, and responsibilities of the Liquidation Trustee. The Liquidation Trust Agreement is attached to the Plan as Exhibit C.

81.    **"Liquidation Trust Assets"** shall mean all Assets, including Causes of Action, of the Estates as of the Effective Date transferred to the Liquidation Trust under the Plan.

82.    **"Liquidation Trust Beneficiaries"** shall mean the Holders of all Allowed General Unsecured Claims.

83.    **"Liquidation Trust Cure Proceeds"** shall mean the proceeds in the amount of approximately $126,316, designated for the Liquidation Trust pursuant to an agreement between the Committee and 1742 Square Associates, Ltd. and Trimmer Road Company, LLC resolving the cure amounts in connection with the Debtors' assumption and assignment of certain leases of real property located at 3 Washington Avenue, High Bridge, New Jersey and 412 Trimmer Road, Califon, New Jersey.

84.    **"Liquidation Trust Expenses"** shall mean the reasonable fees, costs and expenses of the Liquidation Trust's retained professionals, as determined in the reasonable discretion of the

Liquidation Trustee. For the avoidance of doubt, U.S. Trustee Fees shall be considered a Trust Expense.

85.    **"Liquidation Trust Expense Reserve"** shall mean the reserve established pursuant to Section 9.02 of this Combined Disclosure Statement and Plan for payment of the actual and projected costs and expenses of the Liquidation Trust, which may be replenished or adjusted from time to time with Cash held by the Liquidation Trust, other than funds in the other Reserves.

86.    **"Liquidation Trustee"** shall mean KCP Advisory Services, LLC, solely in its capacity as Liquidation Trustee of the Liquidation Trust pursuant to the terms and conditions of this Combined Disclosure Statement and Plan and the Liquidation Trust Agreement.  Jacen Dinoff shall be the employee of the Liquidation Trustee who shall be primarily responsible for administering the Liquidation Trust on behalf of the Liquidation Trustee.

87.    **"Local Rules"** shall mean the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of New Jersey.

88.    **"Non-Subordinated General Unsecured Claims"** means General Unsecured Claims other than on account of the Purchaser Acquired Claim.

89.    **"Ordinary Course Liabilities"** shall mean those obligations incurred in the ordinary course of business by one or more of the Debtors following the Petition Date.

90.    **"Person"** shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

91.    **"Petition Date"** shall mean October 13, 2022, the date on which the Debtors commenced these Chapter 11 Cases in the Bankruptcy Court.

92.    **"Plan"** shall mean that portion of this Combined Disclosure Statement and Plan that specifies the classification, treatment, and means for implantation of the distribution to certain Creditors under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified or supplemented from time to time including in accordance with any documents submitted in support hereof and the Bankruptcy Code or the Bankruptcy Rules.

93.    **"Plan Proponents"** shall mean the Debtors and the Committee.

94.    **"PMSI Claim(s)"** shall mean claims that satisfy the definition of "purchase money collateral" and "purchase money obligation" set forth in Section 9-103(a) of the Uniform Commercial Code, except for SDF PMSI Claims.

95.    **"Post-Confirmation Committee"** shall mean the Liquidation Trust advisory board established on the Effective Date, pursuant to Section 6.08 of the Plan and the Liquidation Trust Agreement.

96.    **"Prepetition Lender"** shall mean CIBC Bank USA.

97.    **"Prepetition Loan"** shall mean the prepetition secured loan of the Prepetition Lender as evidenced by the Prepetition Loan Documents.

98.    **"Prepetition Loan Documents"** shall mean that certain *Loan and Security Agreement*, dated as of March 4, 2010, collectively, with any amendments, supplements, and related agreements and documents evidencing the Prepetition Loan.

99.    **"Priority Non-Tax Claim"** shall mean any and all Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

100.    **"Priority Tax Claim"** shall mean a Claim or a portion of a Claim for which priority is asserted under section 507(a)(8) of the Bankruptcy Code.

101.    **"Pro Rata"** shall mean the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan, as applicable.

102.    **"Professional"** shall mean any professional employed in these Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328 or 1103, or for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

103.    **"Professional Fee Bar Date"** shall mean the deadline for Filing all applications for Professional Fee Claims, which shall be thirty (30) days after the Effective Date.

104.    **"Professional Fee Claims"** shall mean a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and on or before the Effective Date.

105.    **"Purchaser"** shall mean CAC Acquisitions, LLC.

106.    **"Purchaser Acquired Claim"** shall mean the Purchaser's Deficiency claim as a result of the purchase of the Barings Debt that was not used as a credit bid and which Purchaser agreed to subordinate or the Court has ordered subordinated to full payment of all Allowed Unsecured Claims.

107.    **"Rejection Claim"** shall mean any Claim for amounts due as a result of the rejection by one of the Debtors of any Executory Contract under section 365 of the Bankruptcy Code.

108.    **"Rejection Damages Bar Date"** shall mean the deadline by which a counterparty to an Executory Contract of the Debtor rejected by order of the Court or under this Combined Disclosure Statement and Plan must File Rejection Claim and shall be 5:00 p.m. (Eastern Time) on the date that is 30 days following service of an order approving rejection of any Executory Contract of one of the Debtors or 30 days following service of the Confirmation Order.

109.    **"Representatives"** shall mean with respect to an Entity, all of that Entity's current officers, directors, managers, managing members, principals, shareholders, members, partners, employees, agents, advisors, attorneys, professionals, accountants, investment bankers, consultants and other representatives and such Person's respective heirs, executors, estates,

servants and nominees, in each case in their capacity as such.

110.    **"Reserves"** shall mean, collectively, the Reserves established by the Liquidation Trustee pursuant to Section 9.02 of the Plan.

111.    **"Sale"** shall mean the sale of substantially all of the Debtors' Assets to the Purchaser pursuant to the Asset Purchase Agreement and the Sale Order.

112.    **"Sale Documents"** shall mean the Asset Purchase Agreement, the Sale Order, and all documents, instruments, and agreements executed and delivered in connection with the consummation of the transactions contemplated by the Purchase Agreement.

113.    **"Sale Motion"** shall mean the *Motion Pursuant to 11 U.S.C. §§ 363 and 365 and Bankruptcy Rules 2002, 6004, and 6006 (1) Approving Bidding Procedures for Sale of Substantially All Assets of the Debtors; (2) Scheduling (A) An Auction Sale and (B) A Hearing To Consider Approval of Highest and Best Offer; (3) Approving Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (4) Approving Form, Manner, and Sufficiency of Notices; and (5) Granting Related Relief* entered on February 27, 2023 at D.I. 319.

114.    **"Sale Order"** shall mean the *Order (A) Approving the Sale of the Debtors' Assets Free and Clear of All Claims, Liens, and Encumbrances; and (B) Approving the Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases* Filed on May 26, 2023, at Docket No. 500.

115.    **"Schedules"** shall mean the schedules of Assets and Liabilities, schedules of Executory Contracts and Statements of Financial Affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time, which were filed on November 11, 2022 at D.I. 132.

116.    **"SDF Agreements"** shall mean agreements by and between the Debtors and Electric Boat regarding the financing of the SDF Equipment approved by the Final SDF Financing Orders.

117.    **"SDF Equipment"** shall mean equipment purchased by the Debtors pursuant to the SDF Agreements to enable the Debtors to fulfill orders issued and financed by Electric Boat pursuant to the Final SDF Financing Orders.

118.    **"SDF PMSI Claims"** shall mean claims of Electric Boat secured by the SDF Equipment pursuant to the Final SDF Financing Orders.

119.    **"Secured Claim"** shall mean, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage, or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of one or more of the Debtors in and to property of the Estates, to the extent of the value of the Holder's interest in such property as of the Petition date, or (b) Allowed as such pursuant to the terms of this Combined Disclosure Statement and Plan (subject to the Confirmation Order becoming a Final Order). The defined term Secured Claim includes any Claim that is (i) subject to an offset right under applicable law as of the Petition

Date, and (ii) a secured claim against one or more of the Debtors pursuant to sections 506(a) and 553 of the Bankruptcy Code.

120.    **"Solicitation Procedures Order"** shall mean the Court's *Order (I) Approving on an Interim Basis the Adequacy of Disclosures in the Combined Plan and Disclosure Statement, (II) Fixing Voting Record Date, (III) Scheduling the Confirmation Hearing and Approving Form and Manner of Related Notice and Objection procedures Deadline for Filing Objections, (IV) Approving Solicitation Packages and Procedures and Deadlines for Soliciting, Receiving, and Tabulating Votes to Accept or Reject the Combined Plan and Disclosure Statement, and (V) Approving Form of Ballot and Notice to Non-Voting Classes*, including all exhibits thereto, entered on [                    ] at Docket No.____.

121.    **"Subordinated General Unsecured Claim"** means General Unsecured Claim on account of the Purchaser Acquired Claim.

122.    **"Tax"** or **"Taxes"** shall mean all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise, or other similar taxes, estimated import duties, fees, stamp taxes, and duties, value added taxes, assessments, or charges of any kind whatsoever (whether payable directly or by withholding), together with any interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto.

123.    **"Unclaimed Distributions"** shall mean any undeliverable or unclaimed Distributions.

124.    **"Unimpaired"** shall mean, when used in reference to a Claim or Interest, any Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

125.    **"Unimpaired Class"** shall mean a Class of Claims that are not impaired within the meaning of section 1124 of the Bankruptcy Code.

126.    **"U.S. Trustee"** shall mean the office of the United States Trustee for the District of New Jersey.

127.    **"U.S. Trustee Fees"** shall mean all fees payable pursuant to 28 U.S.C. § 1930 and any interest thereon pursuant to 31 U.S.C. § 3717.

128.    **"Voting Agent"** shall mean Rabinowitz, Lubetkin & Tully, LLC, counsel to the Debtors.

129.    **"Voting Deadline"** shall mean [                    ], at 5:00 p.m. (Eastern Time), the date and time by which ballots to accept or reject the Plan must be received by the Voting Agent in order to be counted, as set forth by the Solicitation Procedures Order.

# Exhibit B

*Liquidation Analysis*

<u>**LIQUIDATION ANALYSIS**</u>

*Projected as of October 31, 2023*

---

NOTHING CONTAINED IN THE FOLLOWING LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE PLAN PROPONENTS. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THESE CHAPTER 11 CASES COULD DIFFER MATERIALLY FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.

---

<u>**Introduction**</u>

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that the Bankruptcy Court find, as a condition to confirmation of the Plan, that each Holder of a Claim or Interest in each Impaired Class: (i) has accepted the Plan; or (ii) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such Person would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  To make these findings, the Bankruptcy Court must: (1) estimate the Cash proceeds that a chapter 7 trustee would generate if each Chapter 11 Case was converted to a chapter 7 case on the Effective Date and the Assets of such estate were liquidated; (2) determine the distribution that each non-accepting Holder of a Claim or Interest would receive from the net estimated liquidation proceeds under the priority scheme dictated in chapter 7; and (3) compare each Holder's estimated recovery under liquidation to the distribution under the Plan that such Holder would receive if the Plan were confirmed and consummated.

Based on the following hypothetical Liquidation Analysis, the Plan Proponents believe that the Plan satisfies the best interests test and that each Holder of an Impaired Claim or Interest will receive value under the Plan on the Effective Date that is not less than the value such Holder would receive if the Debtors liquidated under chapter 7 of the Bankruptcy Code.  The Debtors believe that this Liquidation Analysis and the conclusions set forth herein are fair and represent management's best judgment regarding the results of a liquidation of the Debtors under chapter 7 of the Bankruptcy Code taking into account various factors, including the additional costs of a chapter 7 trustee and its counsel.  This Liquidation Analysis was prepared for the sole purpose of assisting the Bankruptcy Court and Holders of Impaired Claims or Interests in making this determination and should not be used for any other purpose.  Nothing contained in this Liquidation Analysis is intended as or constitutes a concession or admission for any purpose other than the presentation of a hypothetical Liquidation Analysis for purposes of the best interests test.  Accordingly, asset values discussed herein may be different than amounts referred to in the Plan.  This Liquidation Analysis is based upon certain assumptions discussed herein and in the Combined Disclosure Statement and Plan.

<u>**Significant Assumptions**</u>

This Liquidation Analysis was prepared by KCP Advisory Group, LLC, the financial advisor to the Committee, in consultation with the Debtors, for use in this Combined Disclosure Statement and Plan.  This Liquidation Analysis assumes that the liquidation of the Debtors would commence on or about [October 31, 2023] (the "<u>Conversion Date</u>") under the direction of a chapter 7 trustee and would continue for a period of approximately six months, during which time the chapter 7 trustee would reconcile claim amounts with historical records, oversee the collection of outstanding accounts receivable, and oversee the final reconciliation and payment of any outstanding Administrative Claims.  Upon completion of these tasks, any

remaining Cash would then be distributed to creditors in accordance with the priority scheme established under the Bankruptcy Code. The Plan Proponents expect any chapter 7 trustee to retain professionals to assist in the liquidation of the Estates.

For the avoidance of doubt, the vast majority of the value of the Estates is derived from Cash on the Debtors' balance sheet and proceeds from Causes of Actions. Accordingly, there would be minimal "liquidation of assets" activities prior to moving on directly to claims analysis and distribution of value to creditors in accordance with the priorities established under the Bankruptcy Code.

The Plan is based in part on the Purchaser Acquired Claim Settlement whereby the Purchaser agreed or the Court ordered to subordination of the Allowed Purchaser Acquired Claim in the amount of approximately $34 million until all other Allowed Claims are paid in full. For purposes of this Liquidation Analysis, the Debtors assume the terms of the Purchaser Acquired Claim Settlement are not enforceable upon conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

This Liquidation Analysis was prepared on a consolidated basis for all Debtors. The liquidation of the Debtors' Assets is based on projected book values as of the Conversion Date, unless noted otherwise.

The statements in this Liquidation Analysis, including estimates of Allowed Claims, were prepared solely to assist the Bankruptcy Court in making the findings required under section 1129(a)(7) of the Bankruptcy Code and they may not be used or relied upon for any other purpose.

THE PLAN PROPONENTS BELIEVE THAT ANY ANALYSIS OF A HYPOTHETICAL LIQUIDATION IS NECESSARILY SPECULATIVE. THERE ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS UNDERLYING THE LIQUIDATION ANALYSIS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE DEBTORS OR A CHAPTER 7 TRUSTEE. NEITHER THE LIQUIDATION ANALYSIS, NOR THE FINANCIAL INFORMATION ON WHICH IT IS BASED, HAS BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS. THERE CAN BE NO ASSURANCE THAT ACTUAL RESULTS WILL NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS PRESENTED IN THE LIQUIDATION ANALYSIS.

ADDITIONALLY, THE VALUE RANGE ASCRIBED IN THIS DISCLOSURE STATEMENT TO THE PLAN CONSIDERATION TO BE DISTRIBUTED TO CREDITORS DOES NOT PURPORT TO REFLECT OR CONSTITUTE AN APPRAISAL, NOR IS IT INTENDED TO BE AN ESTIMATE OF THE VALUE OF THE DEBTORS' BUSINESS AND ASSETS.

**Summary Notes to Liquidation Analysis**

1. *Dependence on assumptions*. This Liquidation Analysis is based on a number of estimates and assumptions that are inherently subject to significant economic, business, regulatory, and competitive uncertainties and contingencies beyond the control of the Plan Proponents. Accordingly, there can be no assurance that the values reflected in this Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such liquidation and actual results could vary materially and adversely from those contained herein.

2. *Additional claims in a liquidation*. The liquidation itself may trigger certain obligations and priority payments that otherwise would not be due in the ordinary course of business or would otherwise not exist under the Plan. These priority payments would be made in full before any distribution of proceeds to Holders of General Unsecured Claims or Interests. As discussed above, this Liquidation Analysis assumes the terms of the Purchaser Acquired Claim Settlement are not available in a chapter 7 liquidation. Accordingly, a conversion to chapter 7 may subject the chapter 7 estates to additional claims.

3. *Litigation claims.* This Liquidation Analysis does not attribute any value to potential litigation claims that may belong to the Estates, including any claims to recover potentially avoidable preferential and/or fraudulent transfers (if any).

4. *Dependence on a forecasted Cash balance.* This Liquidation Analysis is dependent on a forecasted Cash balance after payment of Administrative Claims and the Debtors' current best estimates with respect to such forecasted balance based on the Debtors' current legal and financial review. Forecasted balances could vary materially from the Debtors' estimates.

5. *Chapter 7 liquidation costs*. It is assumed that a period of six months would be required to complete the liquidation or wind-down of the Debtors' Estates. The fees and operating expenses incurred during the chapter 7 process are included in the estimate of Operating and Recovery Expense.

6. *Claim estimates*. Claims are estimated at the Conversion Date based on the Debtors' current projections. When Claims could not be projected, liabilities as of October 31, 2023 were used.

**Conclusion: The Plan Proponents have determined, as summarized in the following analysis, that confirmation of the Plan will provide all Impaired Holders of Claims or Interests with a recovery (if any) that is not less than what they would otherwise receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.**

**Estimated Recovery by Creditor Class:**

1) Proceeds of Realization: The Debtors estimated Cash after collection of outstanding receivables and payout of all pre-confirmation accrued and unpaid expenses (*e.g.*, professional fees, postpetition payables, etc.) as of October 31, 2023. A range is provided based on an estimate of outstanding receivables to be collected.

2) Trustee Fees: This Liquidation Analysis assumes that a chapter 7 trustee would be compensated in accordance with the guidelines of section 326 of the Bankruptcy Code. .

3) Operating Expenses and Professional Fees: Operating expenses incurred during the liquidation period were estimated for the six months following the Conversion Date. Operating expenses consist primarily of liquidation expenses including payroll and record retention. Legal and financial professionals are expected to assist the trustee throughout the liquidation period. Estimates also assume that a chapter 7 Trustee hires its own counsel and other professionals and will incur costs and time to get up to speed. There may be incremental costs to pursue litigation, which are not included in this analysis.

4) Administrative Claims: For purposes of this Liquidation Analysis, the Proceeds for Realization is net of any chapter 11 Administrative Claims. Accordingly, the balance of chapter 11 Administrative Claims is $0 under a chapter 11 or chapter 7 scenario.

5) Priority Tax Claims: For both the chapter 7 and chapter 11 scenarios, the Debtors estimate Priority Tax Claims based on scheduled claims in High recovery scenarios. Incremental Priority Tax Claims yet to be reconciled are shown as incremental in Low recovery scenarios.

6) Class 1 – Secured Claims: For both the chapter 7 and chapter 11 scenarios, Secured Claims are assumed to have been partially or completely satisfied through sale proceeds, letters of credit, or collection of physical collateral.

7) Class 2 – Secured PMSI Claims: For both the Chapter 7 and 11 scenarios, Secured PMSI Claims are assumed to be paid in full.

8) Class 3 – Secured Claim of Electric Boat: For both Chapter 7 and 11 scenarios, the Secured Claim of Electric Boat is assumed to be resolved by the SDF Agreements with no monetary distributions.

9) Class 4 Priority Non-Tax Claims: Priority Non-Tax Claims related to employee paid time off were either assumed by the Purchaser or paid as part of final payroll for terminated employees or paid under certain interim cash collateral orders. Accordingly, Debtors estimate there are no Priority Non-Tax Claims.

10) Class 5 – Total Estimated General Unsecured Claims: The chapter 11 scenario assumes the Purchaser Acquired Claim Settlement, in which the Purchaser's Unsecured Deficiency Claim is effectively waived unless all other Allowed Claims are paid in full, is not available in a chapter 7 case.

11) Total Estimated Claims: Estimated claims are based on scheduled and filed Claims as of the General Bar Date, plus estimates for additional claims. Estimated claim amounts may change as Rejection Claims or PMSI Deficiency Claims may be filed.

## Conclusion

Based on the assumptions outlined above, the Plan Proponents project the recovery to Holders of General Unsecured Claims is an estimated recovery rate of 1.4% under chapter 11 or 0% under chapter 7.

**Custom Alloy Corporation et al**
**Chapter 11 Liquidation Plan**
*Analysis as of October 31, 2023*

| | Chapter 11 Liquidation Plan | | | Chapter 7 Liquidation | | | Note: Process Assumes Effective Immediately |
|---|---|---|---|---|---|---|---|
| | Value | Recovery % | Recovery $ | Value | Recovery % | Recovery $ | |
| **Cash** | | | | | | | |
| Cash Held by KCP from Landlord Settlement | 129,329 | 100.00% | 129,329 | 129,329 | 100.00% | 129,329 | - Cash Balance, includes last month end interest |
| Debtor Controlled Disbursement Account | 1,500 | 100.00% | 1,500 | 1,500 | 100.00% | 1,500 | - Cash on Hand in account |
| Funds Held by Debtor: | | | | | | | |
| Professional Fee Carveout pre 6/24 | 262,088 | 100.00% | 262,088 | 262,088 | 100.00% | 262,088 | - Agreed upon professional fee carveout balance net of fees through 6/24 |
| Professional Fee Carveout from Sale | 233,441 | 100.00% | 233,441 | 233,441 | 100.00% | 233,441 | - Funds provided from sale proceeds earmarked for professional fees |
| Winddown Account | 183,366 | 100.00% | 183,366 | 183,366 | 100.00% | 183,366 | - Winddown account balance as of 10/19/23 |
| Excess Cash from PMSI | 328,961 | 100.00% | 328,961 | 328,961 | 100.00% | 328,961 | - Excess cash in escrow after PMSI payment |
| Less: Amount Returnable to Trident | (328,961) | 100.00% | (328,961) | (328,961) | 100.00% | (328,961) | - Assumes proceeds are returned to Trident, not funds of debtor |
| **TOTAL CASH** | $ 809,725 | | $ 809,725 | 809,725 | | $ 809,725 | |
| Funds held by Great American for Worker's Comp | 300,000 | 10.00% | 30,000 | 300,000 | 10.00% | 30,000 | - Cash amounts supporting L/C, drawn Sep 2023 needing research |
| **Recoveries** | | | | | | | |
| Payments made within 90 days of Filing | | TBD | | | TBD | | - Excludes any recovery from preference payments |
| Potential Insider / Causes of Action | | TBD | | | TBD | | - Excludes any recovery from any causes of action |
| D&O Claims | | TBD | | | TBD | | - Excludes any recovery from D&O claims |
| **TOTAL** | $ 1,109,725 | | $ 839,725 | 1,109,725 | | $ 839,725 | |
| **Costs for Liquidation** | | | | | | | |
| Winddown Costs | | | 176,000 | | | 176,000 | - Winddown costs for tax filings and support activities |
| Chapter 11 Professionals | | | 490,890 | | | 490,890 | - Remaining estimate for professional charges |
| Liquidating Trustee & Professionals | | | 112,500 | | | | - Legal, accounting and Trustee costs estimated post confirmation |
| Chapter 7 Trustee & Professionals | | | | | | 500,000 | - Ch7 Trustee estimate |
| Total Costs for Liquidation | | | 779,390 | | | 1,166,890 | |
| **Net Proceeds Available for Unsecured Creditors** | | | $ 60,335 | | | N/A | - Under Chaper 7, administratively insolvent |
| (2)   General Unsecured Claims | | | 4,383,203 | | | 4,383,203 | - General Unsecured Claims, net of duplicates, insider claims, disputed and paid / Subject to change based on further review and reconciliation |
| Recovery For GUC | | | 1.4% | | | N/A | |

*(1) Counsel for the Liquidating Trustee will pursue recoveries on preferences, causes of actions and D&O claims on a contingency basis*
*(2) Nothing herein shall be deemed an admission for any purposes against the Plan Proponents*

# **Exhibit C**

*Liquidation Trust Agreement*

## LIQUIDATION TRUST AGREEMENT

### PREAMBLE

This Liquidation Trust Agreement, dated as of November __, 2023 (the "**Agreement**"), which pertains to the administration of this Custom Alloy Liquidation Trust (the "**Liquidation Trust**"), is made effective as of the Effective Date[1] of the Plan, by and among Custom Alloy Corporation and CAC Michigan LLC, debtors and debtors-in-possession (together, the "**Debtors**") and KCP Advisory Group, LLC solely in its capacity as trustee (the "**Liquidation Trustee**" and together with the Debtors, the "**Parties**") in accordance with the *Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* dated November 3, 2023 (including all exhibits thereto, as the same may be further amended, modified, or supplemented from time to time, the "**Plan**") jointly filed by the Debtors and the Official Committee of Unsecured Creditors (the "**Committee**"), and such Plan having been confirmed pursuant to the entry of the Confirmation Order.

### RECITALS

A.      On October 13, 2022 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**"), thereby commencing their chapter 11 cases (together, the "**Chapter 11 Cases**").

B.      On November 3, 2023, the Plan Proponents filed the Plan.

C.      Among other things, the Plan provides for the creation of a post-confirmation Liquidation Trust to hold and administer certain Liquidation Trust Assets and distribute the proceeds therefrom to the Holders of certain Allowed Claims, in accordance with the terms of this Agreement and the Plan.  This Agreement is executed to establish the Liquidation Trust and to facilitate the implementation of the Plan.

D.      The Liquidation Trust is created on behalf of, and for the benefit of, the Liquidation Trust Beneficiaries.

E.      The respective powers, authority, responsibilities, and duties of the Liquidation Trustee shall be governed by this Agreement, the Plan, the Confirmation Order, other applicable orders issued by the Bankruptcy Court and, with respect to the Liquidation Trustee only, any obligations under New Jersey law.

F.      This Agreement is intended to supplement, complement, and implement the Plan. If any of the terms and/or provisions of this Agreement are inconsistent with the terms and/or provisions of the Plan, then the Plan shall govern except for inconsistencies or clarifications in furtherance of the Liquidation Trust as a liquidating trust for federal income tax purposes, in which case the terms and/or provisions of this Liquidation Trust shall govern.

---

[1]     A capitalized term used but not defined herein shall have the meaning ascribed to it in the Plan.

G.    The Liquidation Trust is intended to qualify as a "liquidating trust" under the United States Internal Revenue Code of 1986 and the Treasury Regulations promulgated thereunder, specifically Treasury Regulation section 301.7701-4(d), and as such is a "grantor trust" for federal income tax purposes with the Liquidation Trust Beneficiaries treated as the grantors and owners of the Liquidation Trust.  In particular, as specified in Revenue Procedure 94-95, 1994-2 C.B. 684 (July 11, 1994):

(a)    The Liquidation Trust is organized for the primary purpose of liquidating the Liquidation Trust Assets, with no objective to conduct a trade or business except to the extent reasonably necessary to, and consistent with, the purpose of the Liquidation Trust.  The Liquidation Trust shall not be deemed a successor of the Debtors or their Estates;

(b)    This Agreement provides that the Liquidation Trust Beneficiaries will be treated as the grantors of the Liquidation Trust and deemed owners of the Liquidation Trust Assets, and further, requires the Liquidation Trustee to file returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a);

(c)    This Agreement provides for consistent valuations of the transferred property by the Liquidation Trustee and the Liquidation Trust Beneficiaries, and those valuations shall be used for all federal income tax purposes;

(d)    All of the Liquidation Trust's income is to be and will be treated as subject to tax on a current basis to the Liquidation Trust Beneficiaries who will be responsible for payment of any tax due;

(e)    This Liquidation Trust contains a fixed or determinable termination date in that it will terminate as soon as practicable at such time as (i) all Disputed Claims have been resolved, (ii) all of the Liquidation Trust Assets have been liquidated, (iii) all duties and obligations of the Liquidation Trustee under the Liquidation Trust Agreement have been fulfilled, (iv) all Distributions required to be made by the Liquidation Trust under the Plan and the Liquidation Trust Agreement have been made, and (v) the Chapter 11 Cases have been closed; *provided*, *however*, that, notwithstanding the foregoing, the Liquidation Trust shall be dissolved no later than five (5) years from the Effective Date unless the Bankruptcy Court, upon a motion filed prior to the fourth anniversary of the Effective Date or the end of any extension period approved by the Bankruptcy Court (the filing of which shall automatically extend the term of the Liquidation Trust pending the entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period extension (not to exceed one (1) year, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidation Trust as a Liquidation trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets;

(f)    The investment powers of the Liquidation Trustee, other than those reasonably necessary to maintain the value of the Liquidation Trust Assets

77

and to further the liquidating purpose of the Liquidation Trust, are limited to powers to invest in Permissible Investments (as defined herein); and

(g)     The Liquidation Trustee is required to distribute, within thirty (30) days after the end of each calendar year, to the Liquidation Trust Beneficiaries the Liquidation Trust's net income plus all net proceeds from the sale, realization, settlement or liquidation of the Liquidation Trust Assets, except that the Liquidation Trustee may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the Liquidation Trust Assets, to satisfy current and projected expenses of the Liquidation Trust, and to satisfy Claims and contingent liabilities (including Disputed Claims).

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, the Parties agree as follows:

## <u>DEFINITIONS</u>

"<u>Affiliates</u>" means parents, subsidiaries, members, managers, limited partners, and general partners as defined in Section 101(2) of the Bankruptcy Code.

"<u>Agreement</u>" has the meaning specified in the Preamble to this Agreement.

"<u>Bankruptcy Court</u>" has the meaning specified in the Preamble to this Agreement.

"<u>Causes of Action</u>" means all Causes of Action (as defined in the Plan) that are Liquidation Trust Assets.

"<u>Confidential Party</u>" has the meaning specified in Article 16.4.

"<u>Debtors</u>" has the meaning specified in the Preamble to this Agreement.

"<u>IRS</u>" means the Internal Revenue Service of the United States of America.

"<u>Liquidation Trust</u>" has the meaning specified in the Preamble to this Agreement.

"<u>Liquidation Trust Asset Proceeds</u>" means any and all proceeds from the Liquidation Trust Assets, including, without limitation, any cash or other property received from or in connection with the Liquidation Trust Assets or the prosecution, settlement, or adjudication of any related Causes of Action that are Liquidation Trust Assets.

"<u>Liquidation Trust Beneficiaries</u>" means the Holders of Allowed Unsecured Claims.

"<u>Liquidation Trustee</u>" has the meaning specified in the Preamble to this Agreement and includes any successor Liquidation Trustee appointed pursuant to Article 10.1.

"<u>Liquidation Trustee Non-Professionals</u>" has the meaning specified in Article 13.1(b).

"<u>Liquidation Trustee Professionals</u>" has the meaning specified in Article 13.1(a).

"Parties" has the meaning specified in the Preamble to this Agreement.

"Person" means any individual, corporation, partnership, joint venture, association, trust, unincorporated organization, or other legal entity, or any governmental authority, entity, or political subdivision thereof.

"Petition Date" has the meaning specified in the Preamble to this Agreement.

"Plan" has the meaning specified in the Preamble to this Agreement.

"Post-Confirmation Committee" means the entity formed as of the Effective Date, pursuant to Article 2.10.

"Undeliverable Distributions" has the meaning specified in Article 4.3.

## ARTICLE 1
## NAME OF TRUST AND LIQUIDATION TRUSTEE

The name of the Liquidation Trust is the "Custom Alloy Liquidation Trust."

KCP Advisory Group, LLC is hereby appointed to serve as the initial Liquidation Trustee under the Plan, and hereby accepts this appointment and agrees to serve in such capacity effective upon the Effective Date of the Plan and pursuant to the terms of the Plan and this Agreement. Jacen Dinoff shall be the employee of the Liquidation Trustee who shall be primarily responsible for administering the Liquidating Trust on behalf of the Liquidating Trustee. A successor Liquidation Trustee shall be appointed as set forth in Article 10.1 in the event the Liquidation Trustee is removed or resigns pursuant to this Agreement, or if the Liquidation Trustee otherwise vacates the position.

## ARTICLE 2
## DUTIES AND POWERS OF THE LIQUIDATION TRUSTEE

2.1     Generally

The Liquidation Trustee shall be responsible for liquidating and administering (or abandoning, as the case may be) the Liquidation Trust Assets, including the Causes of Action, and taking actions on behalf of, and representing, the Liquidation Trust. The Liquidation Trustee shall have the authority to bind the Liquidation Trust within the limitations set forth herein but shall for all purposes hereunder be acting in the capacity of Liquidation Trustee and not individually.

2.2     Scope of Authority of Liquidation Trustee

Within the limitations set forth herein, and subject to the oversight provisions of the Post-Confirmation Committee set forth in this Agreement, the responsibilities and authority of the Liquidation Trustee shall include, without limitation: (i) holding and administering the Liquidation Trust Assets, (ii) evaluating and determining strategy with respect to the Causes of Action and litigating Causes of Action, or settling, transferring, releasing, or abandoning any and all Causes of Action on behalf of the Liquidation Trust, (iii) facilitating the prosecution or settlement of objections to, or estimations of, Claims asserted against the Liquidation Trust or the Liquidation

Trust Assets, (iv) calculating and implementing distributions to the Liquidation Trust Beneficiaries in accordance with the Plan and this Agreement, (v) filing all required tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), (vi) retaining Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals as provided in the Plan or this Agreement, (vii) receiving reasonable compensation for performing services as Liquidation Trustee in accordance with this Agreement and paying the reasonable fees, costs, and expenses of any Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals in accordance with the applicable provisions of this Agreement, (viii) filing all required reports with the Bankruptcy Court regarding the status of the administration of the Liquidation Trust Assets and the assets, liabilities, and transfers of the Liquidation Trust, and (ix) carrying out such other responsibilities not specifically set forth herein as may be vested in the Liquidation Trustee pursuant to the Plan, this Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or this Agreement.

2.3     Obligations to Liquidation Trust and Beneficiaries

The Liquidation Trustee's actions as Liquidation Trustee will be held to standards required under New Jersey law.

2.4     Additional Powers of Liquidation Trustee

In connection with the administration of the Liquidation Trust, subject to and except as otherwise set forth in this Agreement or the Plan, the Liquidation Trustee is hereby authorized to perform those acts necessary to accomplish the purposes of the Liquidation Trust, subject to the advice of the Post-Confirmation Committee. Without limiting, but subject to, the foregoing, the Liquidation Trustee shall, unless otherwise provided in this Agreement and subject to the limitations contained herein and in the Plan:

(a)     be expressly authorized and required to hold legal title (on behalf of the Liquidation Trust as Liquidation Trustee, but not individually) to the Liquidation Trust Assets, including, but not limited to, the Causes of Action, and be expressly authorized to vote any Claim held by the Liquidation Trust in any case or proceeding under the Bankruptcy Code or otherwise and to receive any distribution therein;

(b)     be expressly authorized and required to protect and enforce the rights to the Liquidation Trust Assets vested in the Liquidation Trust by the Plan by any method deemed appropriate in its discretion, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(c)     be expressly authorized to invest funds (in the manner set forth in Article 2.8), make distributions, and pay any other obligations owed by the Liquidation Trust from the Liquidation Trust Assets as provided herein and in the Plan;

(d)     be expressly authorized and required to prosecute, defend, compromise, adjust, analyze, arbitrate, abandon, estimate, or otherwise deal with and settle, in accordance with the terms set forth in Article 5 hereof, Claims against the Liquidation Trust or the Liquidation Trust Assets;

(e)     be expressly authorized and required to pay expenses and make

disbursements necessary to preserve and liquidate the Liquidation Trust Assets;

(f)    be expressly authorized and required to make the Distributions as contemplated in the Plan and this Agreement;

(g)    be expressly authorized and required to file appropriate tax returns with respect to the Liquidation Trust and the Debtors, and pay taxes properly payable by the Liquidation Trust, if any, in the exercise of its fiduciary obligations;

(h)    be expressly authorized and required to take such actions as are necessary and reasonable to carry out the purposes of the Liquidation Trust;

(i)    be expressly authorized to purchase insurance coverage as the Liquidation Trustee, in its sole discretion, deems necessary and appropriate with respect to the assets, liabilities, and obligations of the Liquidation Trust;

(j)    be expressly authorized to consult with the Post-Confirmation Committee on a regular basis and keep the Post-Confirmation Committee fully advised as to the status of the Liquidation Trust and the Liquidation Trustee's activities;

(k)    be expressly authorized to retain and pay, as applicable, the Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals as provided in, and subject to the terms of, this Agreement;

(l)    be expressly authorized to incur any reasonable and necessary expenses in liquidating and converting the Liquidation Trust Assets to Cash, or otherwise administering the Liquidation Trust, as set forth in the Plan or this Agreement;

(m)    be expressly authorized to terminate the Liquidation Trust and, subject to the terms of the Plan, seek to close the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code; and

(n)    be expressly authorized and required to assume such other powers as may be vested in or assumed by the Liquidation Trust pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or this Agreement.

2.5    General Authority of the Liquidation Trustee

Unless specifically stated otherwise herein, the Liquidation Trustee shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction: (a) authorized in this Agreement, or (b) specifically contemplated in the Plan.

2.6    Limitation of Liquidation Trustee's Authority; No On-Going Business

(a)    The Liquidation Trustee shall have no power or authority except as set forth in this Agreement or in the Plan.

(b)    For federal income tax purposes, the Liquidation Trustee shall not be authorized to engage in any trade or business with respect to the Liquidation Trust Assets or any proceeds therefrom except to the extent reasonably necessary to, and consistent with, the

81

liquidation purpose of the Liquidation Trust. The Liquidation Trustee shall take such actions consistent with the prompt orderly liquidation of the Liquidation Trust Assets as required by applicable law and consistent with the treatment of the Liquidation Trust as a liquidation trust under Treasury Regulation section 301.7701-4(d), to the extent such actions are permitted by this Agreement.

2.7    Other Activities

The Liquidation Trustee shall be entitled to retain Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals in accordance with the terms of this Agreement and to assist with the administration of the Liquidation Trust. The Liquidation Trustee, the Liquidation Trustee Professionals, and the Liquidation Trustee Non-Professionals may be retained in matters that are unrelated to the Liquidation Trust by banks, bank groups or other institutional lenders or debt holders who are, or whose Affiliates are, Beneficiaries of the Liquidation Trust or its Affiliates, so long as such other retention does not involve holding or representing any interest adverse to the interests of the Liquidation Trust, or otherwise preclude or impair the Liquidation Trustee from performing its duties under this Agreement.

2.8    Investment and Safekeeping of Liquidation Trust Assets

All monies and other assets received by the Liquidation Trustee shall, until distributed or paid over as herein provided, be segregated from all other monies and assets of the Liquidation Trustee, and further, shall be held in trust for the benefit of the Liquidation Trust Beneficiaries, but need not be segregated from other Liquidation Trust Assets, unless and to the extent required by the Plan and this Agreement. The Liquidation Trustee shall promptly invest any such monies in the manner set forth in this Article 2.8 but shall otherwise be under no liability for interest or income on any monies received by the Liquidation Trust hereunder and held for distribution or payment to the Liquidation Trust Beneficiaries, except as such interest shall actually be received. Investment of any monies held by the Liquidation Trust shall be administered in accordance with the general duties and obligations hereunder. The right and power of the Liquidation Trustee to invest the Liquidation Trust Assets, the proceeds thereof, or any income earned by the Liquidation Trust, shall be limited to the right and power to (i) invest such Liquidation Trust Assets (pending distributions in accordance with the Plan or this Agreement) in (a) short-term direct obligations of, or obligations guaranteed by, the United States of America or (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; or (ii) deposit such assets in demand deposits at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000 (collectively, the "**Permissible Investments**") *provided*, *however*, that the scope of any such Permissible Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulation section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

2.9    Establishment of Reserves

On the Effective Date, the Liquidation Trustee shall establish and maintain a Reserve of Cash from the Liquidation Trust Assets as the Liquidation Trustee deems reasonably necessary to

satisfy Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, Disputed Secured Claims, Disputed PMSI Claims and for the Liquidation Trust Expense Reserve. Further, upon the Professional Fee Bar Date, the Liquidation Trustee shall establish a Reserve of Cash from the Liquidation Trust Assets in an amount that the Liquidation Trustee deems reasonably necessary to satisfy all Professional Fee Claims.

2.10   Post-Confirmation Committee

(a)   Formation. On the Effective Date, the Post-Confirmation Committee, which shall consist of three (3) members, shall be formed to serve as an advisory board to the Liquidation Trustee. The initial members of the Post-Confirmation Committee shall be: (i) A&M Industrial, Inc., (ii) Trepanning Specialties, Inc. and (iii) the Honorable Kevin Gross (Ret.) provided that if Judge Gross is unwilling to serve on the Post-Confirmation Committee on terms acceptable to the Debtors and the Committee, Adam M. Ambielli shall serve as a member of the Post-Confirmation Committee provided that he shall recuse himself from voting on matters related to Insiders. The Post-Confirmation Committee shall have the rights and obligations set forth in the Plan and in this Agreement. The Committee's decisions shall be made by an affirmative vote of a majority of its members with each member having one vote. The Post-Confirmation Committee shall have the responsibility to oversee and advise the Liquidation Trustee with respect to the liquidation and distribution of the Debtor's assets in accordance with the Plan, as specified below. A member of the Post-Confirmation Committee shall recuse him/herself from considering any matter in which he/she is not disinterested; provided, however, such member shall not be considered not disinterested solely as a result of such member's affiliation with or employment by the (i) Holder of a Claim or (ii) Debtors. The proposed members of the Post-Confirmation Committee will be identified in a Plan Supplement or Confirmation Order. Vacancies on the Post-Confirmation Committee shall be filled by a Person designated by the remaining member or members of the Post-Confirmation Committee from among the holders of General Unsecured Claims and from candidates designated by the Debtors' Board of Directors. A majority of the Post-Confirmation Committee may remove or replace members of the Post-Confirmation Committee for cause, and any party-in-interest shall have the authority to seek an order from the Bankruptcy Court removing or replacing members of the Post-Confirmation Committee for cause. Any successor appointed pursuant to this Section shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor. For the avoidance of doubt, no member of the Post-Confirmation Committee shall be compensated for serving as a member of the Post-Confirmation Committee except as provided in the Plan or this Agreement; provided, however, that such members may be reimbursed by the Liquidation Trust, from funds in the Post-Effective Date Liquidation Trust Expense Reserve for documented reasonable out-of-pocket costs and expenses up to a cap of $2,500 per member. Beginning after the Effective Date, the Post-Confirmation Committee shall receive a quarterly report from the Liquidation Trustee showing receipts and disbursements, together with a narrative explanation regarding the activities of the Liquidation Trustee and any retained professionals.

(b)   Procedures for Oversight. The rights, powers and duties of the Post-Confirmation Committee shall be as follows:

(i) To terminate by majority vote in accordance with the Liquidating Trust Agreement, the Liquidation Trustee for cause, and upon such termination (or upon the resignation, death or incapacity of the Liquidation Trustee), appoint a successor Liquidation

Trustee in accordance with the terms of the Plan;

(ii) Prior to the commencement of any litigation by the Liquidation Trustee against any of the Insiders, the Liquidating Liquidation Trustee shall present to the Post-Confirmation Committee a written description of the theory of liability and quantum of damages of the claims proposed to be asserted against the Insiders. An affirmative vote of the Post-Confirmation Committee shall be required to authorize the commencement of litigation provided that, if authorization is obtained, prior to commencement of litigation against the Insiders, the Liquidation Trustee and the Insiders prior to the commencement of an action shall mediate before a mutually agreeable mediator or in the absence of such agreement, as designated by the Court (the "Mediation Action"). If the matter is not successfully resolved by mediation, the Liquidation Trustee shall be authorized to commence litigation against those Insiders. If the potential expiration of an applicable statute of limitation prevents the completion of the Mediation Obligation, the Mediation Obligation shall be suspended and, provided that the Post-Confirmation Committee has authorized an action against any of the Insiders, the Liquidation Trustee shall be authorized to commence such action provided further that the Liquidation Trustee has made an unsuccessful good faith effort to obtain a tolling of such statute of limitation.

(iii)      To approve the settlement of any Cause of Action or dispute, for which the amount in controversy exceeds $250,000;

(iv)      To approve the allowance of any Disputed Claim if the proposed Allowed amount of such Claim exceeds $250,000;

(v) To approve the sale of any assets by the Liquidation Trustee;

(vi)      To approve any budget in connection with the administration of the Plan and the winding down of the Debtors' affairs prepared by the Liquidation Trustee at the request of the Post-Confirmation Committee;

(vii)      To review and object to fees and expenses of professionals retained by the Liquidation Trustee on a quarterly basis and in accordance with the terms of the Plan and the Liquidating Trust Agreement; and

(viii)      To consider and, if appropriate, approve any action proposed by the Liquidation Trustee that is not specifically authorized by the Plan that would have a material effect upon the administration of the Estates and/or the Post-Effective Date Debtors or the Liquidation Trust, provided, however, nothing contained herein shall be deemed to authorize the Liquidation Trustee to take any action that is inconsistent with the terms of the Plan or the Liquidation Trust.

## ARTICLE 3
## TERM AND COMPENSATION FOR LIQUIDATION TRUSTEE

3.1      Compensation

(a)      The Liquidation Trustee shall be entitled to receive compensation for services rendered on behalf of the Liquidation Trust in the amount of $2,500 per month, payable on the first Business Day of each month, plus reimbursement of all reasonable, out-of-pocket expenses, until the date the Liquidation Trust is dissolved and terminated pursuant to Article 14.1, or by an order of the Bankruptcy Court.

(b)      All compensation and other amounts payable to the Liquidation Trustee shall be paid out of the Liquidation Trust Expense Reserve.

3.2      Termination

The duties, responsibilities, and powers of the Liquidation Trustee will terminate on the date the Liquidation Trust is dissolved and terminated pursuant to Article 14.1, or by an order of the Bankruptcy Court.

3.3      No Bond

The Liquidation Trustee shall serve without bond.

3.4      Removal

The Liquidation Trustee may be removed only for (i) cause by a Final Order of the Bankruptcy Court, after notice and a hearing; *provided*, *however*, that the Liquidation Trustee may not be removed until a successor Liquidation Trustee has been named or is capable of being named immediately upon such removal, or (ii) the Post-Confirmation Committee may remove the Liquidation Trustee at its discretion upon a majority vote of all members without approval of the Bankruptcy Court, provided, however, that the Post-Confirmation Committee shall provide the Liquidation Trustee with thirty (30) days written notice of its intent to remove the Liquidation Trustee.  For purposes of removing the Liquidation Trustee, "cause" shall mean gross negligence, breach of fiduciary duty, breach of trust, and reckless or willful mishandling of the Liquidation Trust Assets.  Any fees and unreimbursed expenses that have been properly incurred by the Liquidation Trustee or the Post-Confirmation Committee in accordance with the terms of this Agreement that are owing to the Liquidation Trustee or Post-Confirmation Committee as of the date of the Liquidation Trustee's removal shall be paid to the Liquidation Trustee or Post-Confirmation Committee, as applicable, within seven (7) calendar days of the removal date.

3.5      Resignation

The Liquidation Trustee may resign by giving not less than sixty (60) calendar days' prior written notice thereof to the Bankruptcy Court, the Liquidation Trust Beneficiaries and the Post Confirmation Committee.

## ARTICLE 4
## PROVISIONS REGARDING DISTRIBUTIONS

4.1      Priority and Method of Distributions

(a)      Generally.  The Liquidation Trustee, on behalf of the Liquidation Trust, or such other Person as may be designated in accordance with this Agreement, will make distributions

to the Liquidation Trust Beneficiaries in accordance with this Agreement and in accordance with the priorities set forth in, and the other provisions of, the Plan. Whenever any distribution to be made under the Plan or this Agreement is due on a day other than a Business Day, such distribution shall be made, without interest, on the immediately succeeding Business Day, but any such distribution will have been deemed to have been made on the date due.

(b)      Distribution of Liquidation Trust Assets and Proceeds Thereof. All Liquidation Trust Assets and all Liquidation Trust Asset Proceeds shall be distributed in accordance with the terms of this Agreement, the Plan, and Confirmation Order.

(c)      Timing of Distributions. Except as specifically set forth in the Plan, the Liquidation Trustee may determine, in its discretion, the appropriate timing, amount, and cadence for distributions.

(d)      Periodic Distribution Requirement. Subject to the provisions of this Article 4 and to the extent required to maintain grantor trust tax status, the Liquidation Trustee is required to distribute within thirty (30) days after the end of each calendar year following the Effective Date, or upon such other interval as the Bankruptcy Court may order, but in no event less frequently than annually, to the Liquidation Trust Beneficiaries the Liquidation Trust's net income plus all net proceeds from the sale, realization, settlement, or liquidation of the Liquidation Trust Assets, except that the Liquidation Trustee may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the Liquidation Trust Assets, to satisfy current and projected expenses of the Liquidation Trust, and to satisfy Claims and contingent liabilities (including Disputed Claims).

(e)      Withholding. When making a Distribution, the Liquidation Trustee may retain an amount of Liquidation Trustee Assets reasonably necessary to satisfy current and projected expenses of the Liquidation Trust, and to satisfy Claims and contingent liabilities (including Disputed Claims). The Liquidation Trustee may also withhold from amounts distributable to any Person any and all amounts, to be determined in the Liquidation Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive or other government equivalent of the United States or of any political subdivision thereof. To the extent that amounts are so withheld and paid over to the appropriate governmental entity, such amounts shall be treated for all purposes of this Agreement as having been paid to the Person in respect of whom such deduction and withholding was made.

(f)      Tax Identification Numbers. The Liquidation Trustee is authorized to request and obtain from the Liquidation Trust Beneficiaries or any other Person Forms W-8 and/or W-9 or such other forms or information relating to the Liquidation Trustee's obligations to withhold as the Liquidation Trustee may reasonably request, and the Liquidation Trustee may condition any distribution to any Liquidation Trust Beneficiary or other distributee upon receipt of such forms or information.

4.2      Delivery of Distributions.

Subject to the provisions of Federal Rule of Bankruptcy Procedure 2002(g), and except as otherwise provided herein, Distributions to the Liquidation Trust Beneficiaries shall be made: (i) at the addresses set forth on the respective proofs of Claim Filed by such Holders; (ii) at the

addresses set forth in any written notices of address changes delivered to the Liquidation Trustee after the date of any related proof of Claim; or (iii) at the address reflected in the Schedules if no proof of Claim is Filed and the Liquidation Trustee has not received a written notice of a change of address.

4.3     Undeliverable Distributions.

If the Distribution to a Liquidation Trust Beneficiary is returned to the Liquidation Trustee as undeliverable ("**Undeliverable Distributions**"), no further Distribution shall be made to such Liquidation Trust Beneficiary unless and until the Liquidation Trustee is notified in writing of such Liquidation Trust Beneficiary's then current address.  Undeliverable Distributions shall remain in the possession of the Liquidation Trustee until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such Undeliverable Distribution becomes an Unclaimed Distribution under this Agreement and the Plan.

The Liquidation Trustee shall make reasonable efforts to update or correct contact information for recipients of undeliverable Distributions, *provided*, *however*, nothing contained in the Plan or this Agreement shall require the Liquidation Trustee to locate any Liquidation Trust Beneficiary.

4.4     Unclaimed Distributions

Any entity which fails to claim any Cash within 90 days from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan, and the Liquidation Trustee shall be authorized to cancel any distribution that is not timely claimed. Pursuant to section 347(b) of the Bankruptcy Code, upon forfeiture, such Cash (including interest thereon, if any) shall revert to the source of such distribution (*i.e.,* the Liquidation Trustee or the Distribution Reserve) free of any restrictions under the Plan, the Bankruptcy Code or the Bankruptcy Rules.  Upon forfeiture, the claim of any Creditor or Interest Holder with respect to such funds shall be irrevocably waived and forever barred against all of the Debtors, the Estates, and the Liquidation Trustee, notwithstanding any federal or state escheat laws to the contrary, and such Creditor or Interest Holder shall have no claim whatsoever against the any of the foregoing or to any Holder of a Claim to whom distributions are made.

4.5     Remainder Amounts After Final Distribution

After final Distributions have been made in accordance with the terms of the Plan, if the aggregate amount of Unclaimed Distributions and Undeliverable Distributions is less than $5,000, the Liquidation Trustee may donate such amount to a New Jersey Bankruptcy Charity or such other charitable organization as determined by the Liquidation Trustee in its sole discretion.

4.6     De Minimis Distributions

If any interim distribution under the Plan to the Holder of an Allowed Claim would be less than $100.00, the Liquidation Trustee may withhold such distribution until a final distribution is made to such Holder. If any final distribution under the Plan to the Holder of an Allowed Claim would be less than $100.00, the Liquidation Trustee may cancel such distribution. Any potential distributions pursuant to this Section shall be treated as an Unclaimed Distribution under Section

9.02(i) of the Plan.

## ARTICLE 5
## PROCEDURES FOR RESOLUTION OF DISPUTED,
## CONTINGENT, AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS

### 5.1    Objections to Claims; Prosecution of Disputed Claims

Except insofar as a Claim is Allowed under the Plan on and after the Effective Date, the Liquidation Trustee will have the authority, but not the obligation, subject to Section 6.08 of the Plan, to do any of the following with respect to any Claims or Interests: (1) file, withdraw, or litigate to judgment objections to and requests for estimation of Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by, the Bankruptcy Court. The Liquidation Trustee shall succeed to any pending objections to Claims filed by the Debtors prior to the Effective Date and shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim. The Liquidation Trustee shall not be obligated to object to any Claim but may consult with the Post-Confirmation Committee in deciding whether to object to any particular Claim.

### 5.2    Estimation of Claims

The Liquidation Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidation Trustee previously have objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute the maximum allowed amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidation Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### 5.3    Payments and Distributions on Disputed Claims

(a)    Notwithstanding anything herein to the contrary: (a) no distribution shall be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim (as applicable), and (b) unless agreed otherwise by the Liquidation Trustee no distribution shall be made to any Person that holds both an Allowed Claim and a Disputed Claim until such Person's Disputed Claims have been resolved by settlement or Final Order.

(b)    Except as otherwise provided in a Final Order or as agreed by the relevant parties, distributions on account of Disputed Claims, if any, that become Allowed, shall be made

by the Liquidation Trustee at such periodic intervals as the Liquidation Trustee determines to be reasonably prudent. No interest will be paid on Disputed Claims that later become Allowed or with respect to any distribution in satisfaction thereof to a Holder.

## ARTICLE 6
## LIABILITY AND EXCULPATION PROVISIONS

6.1     Standard of Liability

In no event shall the Liquidation Trustee or the Liquidation Trustee Professionals, Liquidation Trustee Non-Professionals, Post-Confirmation Committee, Affiliates, representatives, employees, directors, officers or principals be held personally liable for any claim, expense, liability or other obligation asserted against the Liquidation Trust. The Post-Confirmation Committee, the Liquidation Trustee, the Liquidation Trustee Professionals, the Liquidation Trustee Non-Professionals, and each of their Affiliates, representatives, employees, directors, officers or principals shall not be liable for any negligence or any error of judgment made in good faith with respect to any action taken or omitted to be taken in good faith, except to the extent that the action taken or omitted to be taken by each of the same or their respective Liquidation Trustee Professionals, Liquidation Trustee Non-Professionals, Affiliates, representatives, employees, directors, officers or principals is determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct, fraud or, solely in the case of the Liquidation Trustee or Post-Confirmation Committee, breach of fiduciary duty. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence or willful misconduct.

6.2     Reliance by Liquidation Trustee

Except as otherwise provided herein:

(a)     the Liquidation Trustee and Post-Confirmation Committee may rely, and shall be protected in acting upon, any resolution, certificate, statement, installment, opinion, report, notice, request, consent, order, or other paper or document reasonably believed to be genuine and to have been signed or presented by the proper party or parties;

(b)     the Liquidation Trustee and Post-Confirmation Committee shall not be liable for any action reasonably taken or not taken in accordance with the advice of a Liquidation Trustee Professional; and

(c)     persons dealing with the Liquidation Trustee or Post-Confirmation Committee shall look only to the Liquidation Trust Assets to satisfy any liability incurred by the Liquidation Trustee to such person in carrying out the terms of this Agreement, and the Liquidation Trustee shall not have any personal obligation to satisfy any such liability, except to the extent that actions taken or not taken after the Effective Date by the Liquidation Trustee are determined by a Final Order to be solely due to the Liquidation Trustee's own gross negligence, willful misconduct, fraud or breach of fiduciary duty.

6.3     Exculpation; Indemnification

(a)     Exculpation.  From and after the Effective Date, the Post-Confirmation

Committee, the Liquidation Trustee, the Liquidation Trustee Professionals, the Liquidation Trustee Non-Professionals, and each of their Affiliates, representatives, employees, directors, officers or principals, shall be and hereby are exculpated by all Persons and Entities, including, without limitation, Holders of Claims and other parties in interest, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon said parties pursuant to or in furtherance of this Agreement, the Plan, or any order of the Bankruptcy Court or applicable law or otherwise, except only for actions taken or not taken, from and after the Effective Date only to the extent determined by a Final Order  of the Bankruptcy Court be solely due to their own respective gross negligence, willful misconduct, fraud, or, solely in the case of the Liquidation Trustee or Post-Confirmation Committee, breach of fiduciary duty.

(b)    No Holder of a Claim or other party-in-interest will have or be permitted to pursue any claim or cause of action against the Post-Confirmation Committee, Liquidation Trustee, the Liquidation Trustee Professionals, the Liquidation Trustee Non-Professionals, or any of their representatives, employees, directors, officers or principals for making payments in accordance with the Plan or this Agreement or for implementing the provisions of the Plan or this Agreement.  Any act taken or not taken, in the case of the Liquidation Trustee and Post-Confirmation Committee, with the approval of the Bankruptcy Court, will be conclusively deemed not to constitute gross negligence, willful misconduct, or a breach of fiduciary duty.

(c)    <u>Indemnification</u>.  The Liquidation Trust shall indemnify, defend and hold harmless the Post-Confirmation Committee, Liquidation Trustee, the Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals, solely from Liquidation Trust Assets, from and against any and all claims, causes of action, liabilities, obligations, losses, damages or expenses (including attorneys' fees and expenses) occurring after the Effective Date, other than to the extent determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct, or, solely in the case of the Liquidation Trustee and Post-Confirmation Committee, breach of fiduciary duty, to the fullest extent permitted by applicable law.  Satisfaction of any obligation of the Liquidation Trust arising pursuant to the terms of this Article shall be payable only from the Liquidation Trust Assets, may be advanced (from insurance or Liquidation Trust Assets) prior to the conclusion of such matter, and such right to payment shall be prior and superior to any other rights to receive a distribution of the Liquidation Trust Assets.

**ARTICLE 7**
**ESTABLISHMENT OF THE LIQUIDATION TRUST**

7.1    <u>Transfer of Assets to Liquidation Trust; Assumption of Liabilities</u>

Pursuant to the Plan, the Debtors and the Liquidation Trustee hereby establish the Liquidation Trust on behalf of the Liquidation Trust Beneficiaries, to be treated as the grantors and deemed owners of the Liquidation Trust Assets and the Debtors hereby transfer, assign, and deliver to the Liquidation Trust, on behalf of the Liquidation Trust Beneficiaries, all of their right, title, and interest in the Liquidation Trust Assets, including the related claims and Causes of Action of the Debtors, other than Causes of Action released in accordance with the provisions of the Plan or assigned to the Purchaser under the provisions of the Asset Purchase Agreement or prior to the Effective Date, released by the Debtors which release was approved by the Bankruptcy Court on notice to parties-in-interest, notwithstanding any prohibition of assignability under applicable non-bankruptcy law.  Such transfer includes, but is not limited to, all rights to assert, waive or otherwise

exercise any attorney- client privilege, work product protection or other privilege, immunity, or confidentiality provision vested in, or controlled by, the Debtors.  The Liquidation Trustee agrees to accept and hold the Liquidation Trust Assets in the Liquidation Trust for the benefit of the Liquidation Trust Beneficiaries, subject to the terms of the Plan and this Agreement.

7.2    Title to Assets

On the Effective Date, the Debtors shall transfer the Liquidation Trust Assets to the Liquidation Trust for the benefit of the Liquidation Trust Beneficiaries. Notwithstanding any prohibition of assignability under applicable non-bankruptcy law and subject to the Plan, all assets and properties encompassed by the Plan shall vest in the Liquidation Trust in accordance with section 1141 of the Bankruptcy Code.  Upon the transfer of the Liquidation Trust Assets to the Liquidation Trust, the Debtors shall have no interest in or with respect to such Liquidation Trust Assets or the Liquidation Trust. For all federal income tax purposes, all Parties and Liquidation Trust Beneficiaries shall treat the transfer of the Liquidation Trust Assets by the Debtors to the Liquidation Trust, as set forth in this Article 7 and in the Plan, as a transfer of such assets by the Debtors to the Liquidation Trust Beneficiaries entitled to distributions under this Agreement followed by a transfer by such Liquidation Trust Beneficiaries to the Liquidation Trust. Thus, the Liquidation Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

7.3    Valuation of Assets

As soon as practicable after the Effective Date, the Liquidation Trustee (to the extent that the Liquidation Trustee deems it necessary or appropriate in its discretion), shall value the Liquidation Trust Assets based on the good faith determination of the Liquidation Trustee.  The valuation shall be used consistently by all Parties and the Liquidation Trust Beneficiaries for all federal income tax purposes.  The Bankruptcy Court shall resolve any dispute regarding the valuation of the Liquidation Trust Assets.

## ARTICLE 8
## LIQUIDATION TRUST BENEFICIARIES

8.1    Identification of Liquidation Trust Beneficiaries

In order to determine the actual names and addresses of the Liquidation Trust Beneficiaries, the Liquidation Trustee shall be entitled to conclusively rely on the names and addresses set forth in the Debtors' Schedules or filed proofs of claim, unless the Liquidation Trustee receives timely notice of a Liquidation Trust Beneficiary's change of address.  Each Liquidation Trust Beneficiary's right to distribution from the Liquidation Trust, which is dependent upon such Liquidation Trust Beneficiary's classification under the Plan, shall be that accorded to such Liquidation Trust Beneficiary under the Plan.

## ARTICLE 9
## ADMINISTRATION

9.1    Purpose of the Liquidation Trust

The Liquidation Trust shall be established for the primary purpose of liquidating its assets,

in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Liquidation Trust.  Accordingly, the Liquidation Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidation Trust Assets, make timely distributions to the Liquidation Trust Beneficiaries and not unduly prolong its duration, and shall take or refrain from taking such other actions as may be necessary, in the Liquidation Trustee's reasonable judgment, to preserve and maintain the status of the Liquidation Trust as a "liquidation trust" and as a "grantor trust" within the meaning of Treasury Regulation sections 301.7701-4(d) and 1.671-4(a).  The Liquidation Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth in the Plan or this Agreement.

9.2    Books and Records

The Liquidation Trustee shall maintain books and records relating to the administration of the Liquidation Trust Assets and the distribution by the Liquidation Trustee of the proceeds therefrom in such detail and for such period of time as may be necessary to make full and proper accounting in respect thereof and to comply with applicable provisions of law.  The Liquidation Trustee shall also maintain books and records relating to the administration of the Liquidation Trust Assets (including the Causes of Action), the income and expenses of the Liquidation Trust, and the payment of expenses of and liabilities of, claims against or assumed by, the Liquidation Trust in such detail and for such period of time as may be necessary to make full and proper accounting in respect thereof and to comply with applicable provisions of law.  Except as otherwise provided herein or in the Plan, nothing in this Agreement requires the Liquidation Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidation Trust, or as a condition for making any payment or distribution out of the Liquidation Trust Assets. Subject to Section 6.08 of the Plan, the Post-Confirmation Committee may obtain information relating to the management of the Liquidation Trust Assets upon reasonable written notice to the Liquidation Trustee, subject to applicable privileges, confidentiality requirements and applicable law.

9.3    Compliance with Laws

Any and all distributions of Liquidation Trust Assets shall comply with all applicable laws and regulations, including, but not limited to, applicable federal and state tax and securities laws.

**ARTICLE 10**
**SUCCESSOR LIQUIDATION TRUSTEE**

10.1    Successor Liquidation Trustee

In the event the Liquidation Trustee is removed pursuant to this Agreement, resigns pursuant to this Agreement, or otherwise vacates its position, subject to Section 6.08 of the Plan, the Post-Confirmation Committee shall appoint a successor Liquidation Trustee by majority vote of all members.  If a successor Liquidation Trustee is not so appointed, then the Bankruptcy Court shall appoint a successor in accordance with the best interests of the Liquidation Trust Beneficiaries.  Any successor Liquidation Trustee appointed hereunder shall execute an instrument accepting such appointment. Thereupon, such successor Liquidation Trustee shall, without any

further act, become vested with all the estates, properties, rights, powers, trusts and duties of its predecessor in the Liquidation Trust with like effect as if originally named herein; *provided, however*, that a removed or resigning Liquidation Trustee shall, nevertheless, when requested in writing by the successor Liquidation Trustee, execute and deliver any reasonable instrument or instruments conveying and transferring to such successor Liquidation Trustee all the estates, properties, rights, powers, and trusts of such removed or resigning Liquidation Trustee.

## ARTICLE 11
## REPORTING

### 11.1    Quarterly and Final Reports

As soon as practicable but in no event later than thirty (30) calendar days after the end of the first full quarter following the Effective Date and on a quarterly basis thereafter until all Cash in the Liquidation Trust has been distributed or otherwise paid out in accordance with the Plan and this Agreement, the Liquidation Trustee shall File a report with the Bankruptcy Court setting forth the amounts, recipients, and dates of all Distributions made by the Liquidation Trustee through each applicable reporting period.

### 11.2    Federal Income Tax

(a)    Grantor Trust Status.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Liquidation Trustee of a private letter ruling if the Liquidation Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidation Trustee), the Liquidation Trustee shall file tax returns for the Liquidation Trustee as a grantor trust pursuant to Treasury Regulation section 1.671-4(a).

(b)    Allocations of Liquidation Trust Taxable Income.  Subject to the provisions of Article 11.2(a) hereof, allocations of Liquidation Trust taxable income shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restriction on distributions described herein) if, immediately prior to such deemed distribution, the Liquidation Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the Liquidation Trust Beneficiaries (treating any Holder of a Disputed Claim, for this purpose, as a current Liquidation Trust Beneficiary entitled to distributions), taking into account all prior and concurrent distributions from the Liquidation Trust (including any distributions held in reserve pending the resolution of Disputed Claims).  Similarly, taxable losses of the Liquidation Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidation Trust Assets.  The tax book value of the Liquidation Trust Assets for this purpose shall equal their fair market value on the Effective Date or, if later, the date such assets were acquired by the Liquidation Trust, adjusted in either case in accordance with tax accounting principles prescribed by the United States Internal Revenue Code, the Treasury Regulations and any other applicable administrative and judicial authorities and pronouncements.

(c)    Tax Reporting Duties of Liquidation Trustee.  Within sixty (60) calendar days following the end of each calendar year, the Liquidation Trustee shall prepare and distribute a statement setting forth the information necessary for each Liquidation Trust Beneficiary to

determine its share of items of income, gain, loss, deduction or credit for United States federal income tax purposes.

### 11.3    Other

The Liquidation Trustee shall file (or cause to be filed) any other statement, returns or disclosures relating to the Liquidation Trust or the Liquidation Trust Assets, that are required by the IRS or any other Governmental Unit.

## ARTICLE 12
## TRANSFERABILITY OF LIQUIDATION TRUST BENEFICIARIES' INTERESTS

### 12.1    Transferability of Liquidation Trust Beneficiaries' Interests

The beneficial interests that are owned by the Liquidation Trust Beneficiaries, which shall be reflected only on the records of the Liquidation Trust maintained by the Liquidation Trustee, shall be uncertificated, are not negotiable, and shall not be assignable or transferable voluntarily. In the case of a deceased individual Liquidation Trust Beneficiary, its executor or administrator shall succeed to such decedent's beneficial interest upon notice to the Liquidation Trustee.

## ARTICLE 13
## LIQUIDATION TRUSTEE PROFESSIONALS
## AND NON-PROFESSIONALS

### 13.1    Retention of Liquidation Trustee Professionals and Non-Professionals

(a)    The Liquidation Trustee shall have the right to retain its own professionals including, without limitation, claims, disbursing and transfer agents, legal counsel, accountants, experts and other agents or advisors, as the Liquidation Trustee deems appropriate (the "**Liquidation Trustee Professionals**") and on such terms as the Liquidation Trustee deems appropriate. The Liquidation Trustee Professionals shall be compensated in accordance with Article 13.2 hereof. The Liquidation Trustee Professionals so retained need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of the Committee and the Debtors.

(b)    The Liquidation Trustee shall have the right to retain non-professionals including, without limitation, employees, independent contractors or other agents as the Liquidation Trustee deems appropriate (the "**Liquidation Trustee Non-Professionals**") and on such terms as the Liquidation Trustee deems appropriate. Such Liquidation Trustee Non-Professionals shall be compensated in accordance with Article 13.2 hereof. The Liquidation Trustee Non-Professionals so retained need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, employees, independent contractors or agents of the Committee or the Debtors.

### 13.2    Payment to Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals

(a)    After the Effective Date, Liquidation Trustee Professionals shall be required to submit reasonably detailed invoices on a monthly basis to the Liquidation Trustee and the Post-

Confirmation Committee, including in such invoices a description of the work performed, who performed such work, and if billing on an hourly basis, the hourly rate of each such person, plus an itemized statement of expenses. The Liquidation Trustee shall pay those invoices fourteen (14) calendar days after a copy of such invoices is provided to the Liquidation Trustee and the Post-Confirmation Committee, without Bankruptcy Court approval, unless the Liquidation Trustee or the Post-Confirmation Committee objects. If there is a dispute as to a part of an invoice, the Liquidation Trustee shall pay the undisputed portion and the Bankruptcy Court shall resolve any disputed amount.

(b)    After the Effective Date, Liquidation Trustee Non-Professionals shall be required to submit to the Liquidation Trustee periodic invoices containing information with sufficient detail to assess the reasonableness of the fees and charges. The Liquidation Trustee shall pay those invoices fourteen (14) calendar days after a copy of such invoices is provided to the Liquidation Trustee and the Post-Confirmation Committee, without Bankruptcy Court approval, unless the Liquidation Trustee or the Post-Confirmation Committee objects. If there is a dispute as to a part of an invoice, the Liquidation Trustee shall pay the undisputed portion and the Bankruptcy Court shall resolve any disputed amount.

(c)    All payments to Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals shall be paid out of the Liquidation Trust Assets.

## ARTICLE 14
## TERMINATION OF LIQUIDATION TRUST

14.1    Duration and Extension

Notwithstanding any provision of the Plan to the contrary, the Liquidation Trust shall be dissolved no later than five (5) years from the Effective Date unless the Bankruptcy Court, upon a motion filed prior to the fourth anniversary of the Effective Date or the end of any extension period approved by the Bankruptcy Court (the filing of which shall automatically extend the term of the Liquidation Trust pending the entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period extension (not to exceed one (1) year, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidation Trust as a Liquidation trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets; *provided*, *however*, that adequate funding exists for such extension period as determined by the Bankruptcy Court; provided, further, that each request for an extension shall be approved by the Bankruptcy Court within six months prior to the conclusion of the extended term. After (a) the final Distribution of the balance of the assets or proceeds of the Liquidation Trust pursuant to the Plan, (b) the filing by or on behalf of the Liquidation Trust of a certification of dissolution with the Bankruptcy Court in accordance with the Plan, and (c) any other action deemed appropriate by the Liquidation Trustee, the Liquidation Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

14.2    Diligent Administration

The Liquidation Trustee shall, as applicable, (i) not unduly prolong the duration of the Liquidation Trust; (ii) at all times endeavor to resolve, settle or otherwise dispose of all claims that

constitute Liquidation Trust Assets; (iii) effect the liquidation and distribution of the Liquidation Trust Assets to the Liquidation Trust Beneficiaries in accordance with the terms hereof; (iv) consult and confer with the Post-Confirmation Committee and keep it fully advised of its activities, and; (v) endeavor to terminate the Liquidation Trust as soon as reasonably practicable.

## ARTICLE 15
## AMENDMENT AND WAIVER

### 15.1   Amendment and Waiver

Any substantive provision of this Agreement may be materially amended or waived only with the written consent of the Liquidation Trustee or by order of the Bankruptcy Court if necessary to implement the Plan; *provided*, *however*, that no change may be made to this Agreement that would adversely affect the federal income tax status of the Liquidation Trust as a "grantor trust." Technical or non-material amendments to or waivers of portions of this Agreement may be made as necessary, to clarify this Agreement or to enable the Liquidation Trust to effectuate the terms of this Agreement, with the consent of the Liquidation Trustee.

## ARTICLE 16
## MISCELLANEOUS PROVISIONS

### 16.1   Intention of Parties to Establish Grantor Trust

This Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as a grantor trust.

### 16.2   Preservation of Privilege

In connection with the vesting and transfer of the Liquidation Trust Assets, including rights and Causes of Action, subject to applicable law, any attorney-client privilege, work-product protection, or other privilege or immunity attaching or relating to any documents or communications (of any kind, whether written or oral, electronic or otherwise) held by the Debtors shall be transferred to the Liquidation Trust and shall vest in the Liquidation Trust.  Accordingly, in connection with the prosecution and/or investigation of the Causes of Action by the Liquidation Trustee, any and all directors, officers, employees, counsel, agents, or attorneys-in-fact, of the Debtors, cannot assert any attorney-client privilege, work product protection, or other privilege or immunity attaching or relating to any documents or communications (of any kind, whether written or oral, electronic or otherwise) held by the Debtors or otherwise prevent, hinder, delay, or impede production or discussion of documents or communications requested by the Liquidation Trustee in discovery (whether formal or informal, and including without limitation, depositions, written discovery, and interviews).  The Debtors and the Liquidation Trustee shall take all reasonable and necessary actions to protect the transfer of such privileges, protections and immunities provided that the Debtors shall not incur any expense in so doing.

### 16.3   Prevailing Party

Subject to Article 6.3(c) hereof, if the Liquidation Trustee or the Liquidation Trust, as the

case may be, is the prevailing party in a dispute regarding the provisions of this Agreement or the enforcement thereof, then such prevailing party shall be entitled to collect any and all costs, expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action.

### 16.4    Confidentiality

The Liquidation Trustee, and each of its employees, members, agents, professionals and advisors, including the Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals and the members of the Post-Confirmation Committee, (each a "**Confidential Party**" and collectively the "**Confidential Parties**") shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to any Entity to which any of the Liquidation Trust Assets relates; *provided*, *however*, that such information may be disclosed if (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties, or (b) such disclosure is required of the Confidential Parties pursuant to legal process including but not limited to subpoena or other court order or other applicable laws or regulations.  In the event that any Confidential Party is requested to divulge confidential information pursuant to this subparagraph (b), such Confidential Party shall promptly, in advance of making such disclosure, provide reasonable notice of such required disclosure to the Liquidation Trustee to allow him sufficient time to object to or prevent such disclosure through judicial or other means and shall cooperate reasonably with the Liquidation Trustee in making any such objection, including but not limited to appearing in any judicial or administrative proceeding in support of any objection to such disclosure.

### 16.5    Laws as to Construction

This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey, without giving effect to rules governing the conflict of law.

### 16.6    Severability

Except with respect to provisions herein that are contained in the Plan, if any provision of this Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and shall be valid and enforceable to the fullest extent permitted by law.

### 16.7    Notices

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered by facsimile or e-mail (at the numbers or addresses set forth below) and deposited, postage prepaid, in a post office or letter box addressed to the person (or their successors or replacements) for whom such notice is intended at such address as set forth below, or such other addresses as may be filed with the Bankruptcy Court:

Liquidation Trustee:

KCP Advisory Group, LLC
700 Technology Park Drive
Suite 212
Billerica, MA  01821
Attn:  Jacen A. Dinoff
jdinoff@kcpadvisory.com


With a copy to:

Martha B. Chovanes, Esq.
Fox Rothschild LLP
2000 Market Street,
20th Fl.
Philadelphia, PA 19103
Email: mchovanes@foxrothschild.com

-and-

Joseph J. DiPasquale, Esq.
49 Market Street
Morristown, NJ  07960
Email: jdipasquale@foxrothschild.com

With a copy to:

[Post-Confirmation Committee Notice]

With a copy to:

Jonathan I. Rabinowitz, Esq.
Rabinowitz, Lubetkin & Tully, LLC
293 Eisenhower Parkway, Suite 100
Livingston, NJ  07039
Email: jrabinowitz@rltlawfirm.com

16.8    Notices if to a Liquidation Trust Beneficiary

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended to the name and address set forth on such Liquidation Trust Beneficiary's proof of claim or such other notice filed with the Bankruptcy Court, or if none of the above has been filed, to the address set forth in the Debtors' Schedules or provided to the Liquidation Trustee pursuant to Article 8.1.

16.9    Survivability

Notwithstanding any provision of the Plan to the contrary, the terms and provisions of this

Agreement shall remain fully binding and enforceable notwithstanding any vacancy in the position of the Liquidation Trustee.

### 16.10   Headings

The section headings contained in this Agreement are solely for the convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

### 16.11   Conflicts with Plan Provisions

Except as otherwise expressly stated herein, if any of the terms and/or provisions of this Agreement conflict with the terms and/or provisions of the Plan, then the Plan shall govern.

IN WITNESS WHEREOF, the Parties hereto have either executed and acknowledged this Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

KCP Advisory Group, LLC, solely as Liquidation Trustee

By: _____
Name:  Jacen A. Dinoff

Custom Alloy Corporation

By: _____
Name: Adam M. Ambielli
Title:  P r e s i d e n t

CAC Michigan, LLC

By: _____
Name: Adam F. Ambielli
Title:   Managing Member

10