# Exhibit A

*Definitions*

As used in the Plan, the following terms have the following meanings:

1.     **"503(b)(9) Claims"** shall mean Claims arising under section 503(b)(9) of the Bankruptcy Code against one or more of the Debtors that were Filed against one or more of the Debtors on or before the General Bar Date.

2.     **"Administrative Claim"** shall mean any right to payment constituting a cost or expense of administration of these Chapter 11 Cases as it relates to one of the Debtors under section 503(b) and 507(a)(2) of the Bankruptcy Code including, any actual and necessary costs and expenses of preserving the Debtors' Estates, any actual and necessary costs and expenses of operating the Debtors' business, any indebtedness or obligations incurred by the Debtors after the Petition Date in connection with the conduct of its business, all compensation and reimbursement of expenses awarded or otherwise approved for payment by Final Order of the Bankruptcy Court under section 330, 503(b) or 1129(a)(4) of the Bankruptcy Code, any fees or charges assessed against the Debtors' Estates under section 1930 of chapter 123 of title 28 of the United States Code, all wages, salaries and health and other benefits on account of services rendered after the Petition Date, all post-Petition Date taxes, and all other claims entitled to administrative expense status pursuant to a Final Order of the Bankruptcy Court, in each case relating to the period from the Petition Date to the Effective Date but not beyond.

3.     **"Affiliate Landlords"** means 1742 Square Associates, LLC and Trimmer Road Company, LLC.

4.     **"Allowed"** shall mean all or a portion of a Claim against one of the Debtors or an Interest in the Debtors (a) that has been listed by one of the Debtors in its Schedules as liquidated in amount and not "disputed" or "contingent," and with respect to which no contrary Claim or proof of Interest has been Filed, (b) for which a proof of claim has been Filed and as to which no Objection or request for estimation has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court, (c) as to which any Objection has been settled, waived, withdrawn or denied by a Final Order, or (d) that is allowed (i) by a Final Order, (ii) by an agreement between the Holder of such Claim or Interest and one or more of the Debtors prior to the Effective Date, or the Liquidation Trustee on behalf of the Debtors Estates after the Effective Date or (iii) pursuant to the terms of this Combined Disclosure Statement and Plan. For purposes of computing Distributions under this Combined Disclosure Statement and Plan, a Claim or Interest that has been deemed "Allowed" shall not include interest, costs, fees or charges on such Claim or Interest from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code or as otherwise expressly set forth in this Combined Disclosure Statement and Plan. For the avoidance of doubt, any Claim that relates to obligations that were assumed by the Purchaser pursuant to the Asset Purchase Agreement shall not be an Allowed Claim for purposes of this Combined Disclosure Statement and Plan.

5.     **"Asset Purchase Agreement"** shall mean that certain *Amended and Restated Asset Purchase Agreement* by and between the Debtors and the Purchaser dated as of May 20, 2023, including all schedules and exhibits thereto.

6.     **"Assets"** means all tangible and intangible assets of every kind and nature of the Debtors and their Estates within the meaning of section 541 of the Bankruptcy Code.

7.     **"Avoidance Actions"** shall mean any and all claims or causes of action to avoid or recover a transfer of property, or avoid an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553, and 724(a) of the Bankruptcy Code and any other applicable non-bankruptcy law, whether or not litigation has been commenced with respect to such claims or causes of action

as of the Effective Date.

8.    **"Bankruptcy Code"** shall mean Title 11 of the United States Code and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to these Chapter 11 Cases.

9.    **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of New Jersey.

10.    **"Bankruptcy Rules"** shall mean, when referenced generally, (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of Title 28 of the United States Code, (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of Title 28 of the United States Code, (iii) the applicable Local Rules of Bankruptcy Practice and Procedures for the United States Bankruptcy Court for the District of New Jersey, and (iv) any standing orders governing practice and procedure issues by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to these Chapter 11 Cases or proceedings therein, as the case may be; provided, however, when a specific Bankruptcy Rule is referenced (*e.g.*, Bankruptcy Rule 9019), such reference shall be to such Rule under the Federal Rules of Bankruptcy Procedure.

11.    **"Bar Date"** shall mean, with respect to any particular Claim, the specific date set by the Bankruptcy Court as the last day for Filing proofs of Claim or proofs of Interest against one or more of the Debtors in these Chapter 11 Cases for that specific Claim or Interest, as set forth in the Bar Date Order.

12.    **"Bar Date Order"** shall mean the Stipulation and Consent Order Extending the Bar Dates by Sixty Days dated December 22, 2022 at D.I. 211.

13.    **"Bid Procedures Order"** means the *Order Pursuant to 11 U.S.C. §§ 363 and 365 and Bankruptcy Rules 2002, 6004, and 6006 (1) Approving Bidding Procedures for Sale of Substantially All Assets of the Debtors; (2) Scheduling (A) An Auction Sale and (B) A Hearing To Consider Approval of Highest and Best Offer; (3) Approving Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (4) Approving Form, Manner, and Sufficiency of Notices; and (5) Granting Related Relief* entered on February 27, 2023 at D.I. 319.

14.    **"Business Day"** shall mean any day, other than a Saturday, Sunday or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

15.    **"CAC Michigan, LLC"** shall mean the Debtor, CAC Michigan LLC.

16.    **"Carve Out Reserve"** shall mean the reserves created as of the Closing Date from the proceeds of the Sale carved out of the Collateral of the Pre-Petition Lender pursuant to the Final DIP Order to satisfy certain administrative expenses.

17.    **"Cash"** or **"$"** shall mean legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

18.    **"Cause of Action" or "Causes of Action"** shall mean, individually or collectively and without limitation, any and all actions, liabilities, obligations, rights to legal or equitable remedies, suits, debts, sums of money, damages, judgments, claims and demands whatsoever,

whether known or unknown, matured or unmatured, disputed or undisputed and whether asserted or assertable directly or derivatively in law, equity or otherwise held by the Debtors, the Committee, or the Estates as of the Effective Date, including, without limitation, Avoidance Actions, commercial tort claims as defined in Article 9 of the UCC, the D&O Claims and any and all claims and causes of action against the Debtors' current or former directors, officers, managers, members, employees, and any and all proceeds of the foregoing Causes of Action.

19.    **"Chapter 11 Cases"** shall mean the Debtors' chapter 11 cases, which are jointly administered under Case No. 22-18143 (MBK) in the Bankruptcy Court.

20.    **"Claim"** or **"Claims"** shall mean a claim or claims against one or more of the Debtors, as such term is defined in section 101(5) of the Bankruptcy Code.

21.    **"Claims Objection(s)"** shall mean any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim).

22.    **"Claims Objection Deadline"** shall mean one hundred eighty (180) days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court, provided however, that the Liquidation Trustee may File one or more motions with the Bankruptcy Court on notice and an opportunity for a hearing to extend such deadline from time to time.

23.    **"Class"** shall mean each category or group of Holders of Claims or Interests that has been designated as a class in Article IV of this Combined Disclosure Statement and Plan.

24. **"Closing Date"** shall have the meaning ascribed to it in Section 2.7 of the Asset Purchase Agreement which occurred on June 16, 2023.

25.    **"Closing Effective Date"** shall mean 11:59 p.m. Eastern Time on June 15, 2023.

26.    **"Collateral"** shall mean property of the Debtors that is subject to the liens of CIBC Bank USA and Barings BDC Inc.

27.    **"Combined Disclosure Statement and Plan"** shall mean this entire document and all exhibits, schedules and related documents, whether annexed hereto or Filed in connection herewith, including the Disclosure Statement portions and the Plan portions.

28.    **"Confirmation Date"** shall mean the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of these Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

29.    **"Confirmation Hearing"** shall mean the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

30.    **"Confirmation Order"** shall mean the order of the Bankruptcy Court (a) approving the adequacy of the information in the Combined Disclosure Statement and Plan pursuant to section 1125 of the Bankruptcy Code, and (b) confirming the Plan pursuant to, among others, section 1129 of the Bankruptcy Code.

31.     **Consummation"** shall mean the occurrence of the Effective Date and fulfillment of substantially all the steps necessary to implement the terms and provisions of the Plan.

32.     **"Contingent"** shall mean, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

33.     **"Committee"** shall mean the official committee of unsecured creditors appointed by the U.S. Trustee, the composition of which has changed as a result of the resignation prior to the Effective Date of a member of the Committee.

34.     **"Creditor"** shall have the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.

35.     **"Custom Alloy Corporation"** shall mean the Debtor, Custom Alloy Corporation (also referred to in the Plan as "CAC").

36.     **"D&O Claims"** shall mean potential causes of action, excluding Avoidance Actions, against the Debtor's Insiders who are or were at relevant points in time, directors, officers, managers or members of the Debtors.

37.     **"D&O Liability Insurance Policy"** shall mean the insurance policy issued by the Princeton Excess and Surplus Lines Insurance Company, Policy No. 9DA3CM0000036-00, including any other insurance policy, including tail insurance policies, providing for coverage for Insiders at any time, and all agreements, documents or instruments relating thereto.

38.     **"Debtors"** shall mean Custom Alloy Corporation and CAC Michigan, LLC.

39.     **"DIP"** shall mean debtor-in-possession.

40.     **"DIP Facility"** shall mean that certain debtor-in-possession financing facility as evidenced by the DIP Financing Documents.

41.     **"DIP Financing Documents"** shall mean the underlying secured credit agreement together with any other related agreements, amendments, supplements, documents, security agreements, pledge agreements, and intercreditor agreements between the Debtors and the DIP Lender approved by the Bankruptcy Court on a final basis through the Final DIP Order dated May 19, 2023 [D.I. 489].

42.     **"DIP Lender"** shall mean CIBC Bank USA.

43.     **"DIP Motion"** shall mean the *Debtors' Motion for Interim Order Pursuant to 11* U.S.C. §§ 105, 361, 362, 363, 364 AND 507: (A) *Authorizing and Approving Debtors' Post-Petition Financing; (B) Granting Liens and Security Interests and Providing Superpriority Administrative Expense Status; (C) Authorizing Use of Cash Collateral and Affording Adequate Protection; (D) Modifying the Automatic Stay; (E) Scheduling Final Hearing and (F) Granting Related Relief* filed on October 19, 2022 [D.I. 20] as amended by *Motion of Custom Alloy Corporation, Chapter 11 Debtor-in-Possession, Amending its Prior Motion for Order Authorizing Debtor to Obtain Post-Petition Financing Pursuant to § 364 and granting Other Relief* filed on December 22, 2022 at D.I. 218.

44.     **"Disallowed"** shall mean with respect to any Claim or Interest or portion thereof, any Claim against or Interest in one or more of the Debtors which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the Debtors or the Liquidation Trustee, whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) is listed in the Schedules as zero or as Disputed, Contingent or unliquidated and in respect of which a proof of Claim or a proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any proof of Claim or proof of Interest; (vi) is evidenced by a proof of Claim or a proof of Interest which has been Filed, or which has been deemed to be Filed under applicable law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such proof of Claim or proof of Interest was not timely or properly Filed; (vii) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; and (viii) where the Holder of a Claim is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such Property, for which such Person, Entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code. In each case a Disallowed Claim or a Disallowed Interest is Disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

45.     **"Disallowed Claim"** shall mean a Claim, or any portion thereof, that is Disallowed.

46.     **"Disallowed Interest"** shall mean an Interest, or any portion thereof, that is Disallowed.

47.     **"Disbursing Agent"** shall mean the Liquidation Trustee or any third party designated by the Liquidation Trustee to act as Disbursing Agent.

48.     **"Disclosure Statement"** shall mean the disclosure statement, as amended, supplemented or modified from time to time, that is embodied within this Combined Disclosure Statement and Plan and distributed in accordance with, among others, sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and other applicable law.

49.     **"Disputed"** shall mean any Claim or Interest which has not yet been Allowed or Disallowed in accordance with the terms of this Combined Disclosure Statement and Plan.

50.     **"Disputed Claims"** shall mean any Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, Disputed Secured Claims, Disputed PMSI Claims and Disputed General Unsecured Claims.

51.     **"Distributable Cash"** shall mean the Cash remaining in the Liquidation Trust following the payment of Professional Fee Claims, Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, and Liquidation Trust Expenses.

52.     **"Distribution"** shall mean any distribution made pursuant to the Plan by the Liquidation Trustee or another Entity acting as the Disbursing Agent, to the Holders of Allowed Claims.

53.    **"Distribution Date"** shall mean the date on which a Distribution is made pursuant to this Combined Disclosure Statement and Plan.

54.    **"Distribution Record Date"** shall mean the date established for determining the Holders of Allows Claims or Allowed Interests entitled to Distributions pursuant to the Plan, which shall be the Confirmation Date.

55.    **"Effective Date"** shall mean the first Business Day after the date on which (a) the Confirmation Order becomes a Final Order; and (b) all conditions in Article XI of this Combined Disclosure Statement and Plan have been satisfied or waived in accordance with that Article.

56.    **"Electric Boat"** shall mean Electric Boat Corporation.

57.    **"Entity"** shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

58.    **"Environmental Letters of Credit"** shall mean (i) an irrevocable standby letter of credit number 7749-403191 issued on June 14, 2023, by CIBC Bank USA to the New Jersey Department of Environmental Protection, as beneficiary, (ii) an irrevocable standby letter of credit number 7749-403206 issued on June 14, 2023, by CIBC Bank USA to the New Jersey Department of Environmental Protection, as beneficiary, (iii) an irrevocable standby letter of credit number 21-02 issued on February 16, 2021 by Peapack-Gladstone Bank to the New Jersey Department of Environmental Protection, as beneficiary and (iv) an irrevocable standby letter of credit number 10-06 issued by Peapack-Gladstone Bank to the New Jersey Department of Environmental Protection, as beneficiary.

59.    **"Estate"** or **"Estates"** shall mean one or more estates of the Debtors created pursuant to section 541 of the Bankruptcy Code.

60.    **"Exculpated Parties"** shall mean as of the Petition Date through the date of the closing of these Chapter 11 Cases (and in the event that these Chapter 11 Cases are closed and subsequently reopened, during such time as these Chapter 11 Cases are reopened): (i) the Debtors, (ii) the Debtors' directors and officers, (iii) the Committee, and (iv) in the case of (i) – (iii), each of their respective Representatives, and in the case of the Committee, each of its members (each solely in such capacity); *provided*, *however*, that with respect to any Person identified herein, such Person shall be considered an Exculpated Party solely to the extent that such Person participated in actions to which section 1125(e) of the Bankruptcy Code applies.

61.    **"Executory Contract"** shall mean a contract or lease to which one of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

62.    **"File," "Filed,"** or **"Filing"** shall mean, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases; provided, however, that with respect to proofs of Claim and proofs of Interest only, "Filed" shall mean delivered and received in the manner provided by the Bar Date Order or as otherwise established by order of the Bankruptcy Court.

63.    **"Final Administrative Claims Bar Date"** means the date that is 30 days after the Effective Date, which shall be the deadline for Filing requests for payment of Administrative Claims that arose after the Closing Date.

64.    **"Final Order"** shall mean an unstayed order, ruling or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or request for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors or the Liquidation Trustee on behalf of the Estates (on or after the Effective Date), or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or petitioned for certiorari, reargued or reheard, and shall have been denied affirmed and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under rule 59 or rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

65.    **"Final DIP Order"** shall mean the *Final Order (I) Authorizing the Debtor to Obtain Secured Postpetition Financing; (II) Authorizing the Use of Cash Collateral; (III) Granting (A) Liens and Superpriority Administrative Expense Claims, and (B) Adequate Protection to Prepetition Lender; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* entered on May 19, 2023 [D.I. 489].

66.    **"Final SDF Financing Orders"** shall mean orders entered on December 2, 2022 [D.I. 178], December 29, 2022 [D.I. 228] and May 19, 2023 [D.I. 488].

67.    **"General Bar Date"** shall mean February 20, 2023 on or before 5:00 p.m. (Prevailing Eastern Time) for certain Claims arising before the Petition Date, including 503(b)(9) Claims, Secured Claims, General Unsecured Claims, or Priority Non-Tax Claims as established by the Bar Date Order.

68.    **"General Unsecured Claim"** shall mean any unsecured Claim against the Debtors that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen before the Petition Date and that is not: (i) an Administrative Claim, (ii) a Priority Tax Claim, (iii) a Secured Claim, (iv) a Priority Non-Tax Claim, (v) a PMSI Claim, or (v) an Intercompany Claim.

69.    **"Governmental Unit"** shall have the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

70.    **"Governmental Unit Bar Date"** shall mean June 10, 2023 on or before 5:00 p.m. (Prevailing Eastern Time) as established by the Bar Date Order.

71.    **"Holder"** or **"Holders"** shall mean the legal or beneficial Holder of a Claim or Interest (and, when used in conjunction with a Class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type).

72.    **"Impaired"** shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

73.    **"Impaired Class"** shall mean a Class of Claims or Interests that is Impaired under Section 1124 of the Bankruptcy Code.

74.    **"Insider"** shall have the meaning ascribed to such term in section 101(31) of the Bankruptcy Code and any Person which is or at any relevant time was an officer, director, manager, or member of the Debtors.

75.    **"Insurance Policies"** shall mean all insurance policies that have been issued to, or provide coverage to, any of the Debtors and all agreements, instruments, or documents relating thereto.

76.    **"Intercompany Claim"** shall mean any account reflecting intercompany book entries by one Debtor with respect to another Debtor.

77.    **"Interests"** shall mean the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person in the Debtors including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtor, partnership interests in the Debtor's stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtors or obligating the Debtors to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated "stock" or a similar security.

78.    **"IRS"** shall mean the Internal Revenue Service of the United States of America.

79.    **"KCP Advisory Group, LLC"** shall mean the entity who employs Jacen Dinoff, who shall be the Liquidation Trustee.

80.    **"Liquidation Analysis"** shall mean that certain liquidation analysis, as may be amended, modified or supplemented, attached to this Combined Disclosure Statement and Plan as Exhibit B.

81.    **"Liquidation Trust"** shall mean the trust established under the Plan and the Liquidation Trust Agreement.

82.    **"Liquidation Trust Agreement"** means the trust agreement that establishes the Liquidation Trust and governs the powers, duties, and responsibilities of the Liquidation Trustee. The Liquidation Trust Agreement is attached to the Plan as Exhibit C.

83.    **"Liquidation Trust Assets"** shall mean all Assets, including Causes of Action, of the Estates as of the Effective Date transferred to the Liquidation Trust under the Plan.

84.    **"Liquidation Trust Beneficiaries"** shall mean the Holders of all Allowed General Unsecured Claims.

85.    **"Liquidation Trust Cure Proceeds"** shall mean the proceeds in the amount of approximately $126,316, designated for the Liquidation Trust pursuant to an agreement between the Committee and 1742 Square Associates, Ltd. and Trimmer Road Company, LLC resolving the cure amounts in connection with the Debtors' assumption and assignment of certain leases of real

property located at 3 Washington Avenue, High Bridge, New Jersey and 412 Trimmer Road, Califon, New Jersey.

86.    **"Liquidation Trust Expenses"** shall mean the reasonable fees, costs and expenses of the Liquidation Trust's retained professionals, as determined in the reasonable discretion of the Liquidation Trustee. For the avoidance of doubt, U.S. Trustee Fees shall be considered a Trust Expense.

87.    **"Liquidation Trust Expense Reserve"** shall mean the reserve established pursuant to Section 9.02 of this Combined Disclosure Statement and Plan for payment of the actual and projected costs and expenses of the Liquidation Trust, which may be replenished or adjusted from time to time with Cash held by the Liquidation Trust, other than funds in the other Reserves.

88.    **"Liquidation Trustee"** shall mean KCP Advisory Services, LLC, solely in its capacity as Liquidation Trustee of the Liquidation Trust pursuant to the terms and conditions of this Combined Disclosure Statement and Plan and the Liquidation Trust Agreement. Jacen Dinoff shall be the employee of the Liquidation Trustee who shall be primarily responsible for administering the Liquidation Trust on behalf of the Liquidation Trustee.

89.    **"Local Rules"** shall mean the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of New Jersey.

90.    **"Non-Subordinated General Unsecured Claims"** means General Unsecured Claims other than on account of the Purchaser Acquired Claim.

91.    **"Ordinary Course Liabilities"** shall mean those obligations incurred in the ordinary course of business by one or more of the Debtors following the Petition Date.

92.    **"Person"** shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

93.    **"Petition Date"** shall mean October 13, 2022, the date on which the Debtors commenced these Chapter 11 Cases in the Bankruptcy Court.

94.    **"Plan"** shall mean that portion of this Combined Disclosure Statement and Plan that specifies the classification, treatment, and means for implantation of the distribution to certain Creditors under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified or supplemented from time to time including in accordance with any documents submitted in support hereof and the Bankruptcy Code or the Bankruptcy Rules.

95.    **"Plan Proponents"** shall mean the Debtors and the Committee.

96.    **"PMSI Claim(s)"** shall mean claims that satisfy the definition of "purchase money collateral" and "purchase money obligation" set forth in Section 9-103(a) of the Uniform Commercial Code, except for SDF PMSI Claims.

97.    **"Post-Confirmation Committee"** shall mean the Liquidation Trust advisory board established on the Effective Date, pursuant to Section 6.08 of the Plan and the Liquidation Trust Agreement.

98.    **"Prepetition Lender"** shall mean CIBC Bank USA.

99.    **"Prepetition Loan"** shall mean the prepetition secured loan of the Prepetition Lender as evidenced by the Prepetition Loan Documents.

100.    **"Prepetition Loan Documents"** shall mean that certain *Loan and Security Agreement*, dated as of March 4, 2010, collectively, with any amendments, supplements, and related agreements and documents evidencing the Prepetition Loan.

101.    **"Priority Non-Tax Claim"** shall mean any and all Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

102.    **"Priority Tax Claim"** shall mean a Claim or a portion of a Claim for which priority is asserted under section 507(a)(8) of the Bankruptcy Code.

103.    **"Pro Rata"** shall mean the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan, as applicable.

104.    **"Professional"** shall mean any professional employed in these Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328 or 1103, or for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

105.    **"Professional Fee Bar Date"** shall mean the deadline for Filing all applications for Professional Fee Claims, which shall be thirty (30) days after the Effective Date.

106.    **"Professional Fee Carveout"** shall mean that fund of money maintained by the Debtors to pay allowed professional fees in these cases funded by the Final DIP Order and authorized by the Waterfall.

107.    **"Professional Fee Claims"** shall mean a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and on or before the Effective Date.

108.    **"Purchase Price"** shall have the meaning set forth in Section 2.5(a) of the Asset Purchase Agreement.

109.    **"Purchase Price Allocation"** shall mean the allocation of the Purchase Price authorized by Section 2.9 of the Asset Purchaser Agreement.

110.    **"Purchaser"** shall mean CAC Acquisitions, LLC.

111.    **"Purchaser Acquired Claim"** shall mean the Purchaser's Deficiency claim as a result of the purchase of the Barings Debt that was not used as a credit bid and which Purchaser agreed to subordinate or the Court has ordered subordinated to full payment of all Allowed Unsecured Claims.

112. **"Rejection Claim"** shall mean any Claim for amounts due as a result of the rejection by one of the Debtors of any Executory Contract under section 365 of the Bankruptcy Code.

113. **"Rejection Damages Bar Date"** shall mean the deadline by which a counterparty to an Executory Contract of the Debtor rejected by order of the Court or under this Combined Disclosure Statement and Plan must File Rejection Claim and shall be 5:00 p.m. (Eastern Time) on the date that is 30 days following service of an order approving rejection of any Executory Contract of one of the Debtors or 30 days following service of the Confirmation Order.

114. **"Representatives"** shall mean with respect to an Entity, all of that Entity's current officers, directors, managers, managing members, principals, shareholders, members, partners, employees, agents, advisors, attorneys, professionals, accountants, investment bankers, consultants and other representatives and such Person's respective heirs, executors, estates, servants and nominees, in each case in their capacity as such.

115. **"Reserves"** shall mean, collectively, the Reserves established by the Liquidation Trustee pursuant to Section 9.02 of the Plan.

116. **"Sale"** shall mean the sale of substantially all of the Debtors' Assets to the Purchaser pursuant to the Asset Purchase Agreement and the Sale Order.

117. **"Sale Documents"** shall mean the Asset Purchase Agreement, the Sale Order, and all documents, instruments, and agreements executed and delivered in connection with the consummation of the transactions contemplated by the Purchase Agreement.

118. **"Sale Motion"** shall mean the *Motion Pursuant to 11 U.S.C. §§ 363 and 365 and Bankruptcy Rules 2002, 6004, and 6006 (1) Approving Bidding Procedures for Sale of Substantially All Assets of the Debtors; (2) Scheduling (A) An Auction Sale and (B) A Hearing To Consider Approval of Highest and Best Offer; (3) Approving Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (4) Approving Form, Manner, and Sufficiency of Notices; and (5) Granting Related Relief* entered on February 27, 2023 at D.I. 319.

119. **"Sale Order"** shall mean the *Order (A) Approving the Sale of the Debtors' Assets Free and Clear of All Claims, Liens, and Encumbrances; and (B) Approving the Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases* Filed on May 26, 2023, at Docket No. 500.

120. **"Schedules"** shall mean the schedules of Assets and Liabilities, schedules of Executory Contracts and Statements of Financial Affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time, which were filed on November 11, 2022 at D.I. 132.

121. **"SDF Agreements"** shall mean agreements by and between the Debtors and Electric Boat regarding the financing of the SDF Equipment approved by the Final SDF Financing Orders.

122. **"SDF Equipment"** shall mean equipment purchased by the Debtors pursuant to the SDF Agreements to enable the Debtors to fulfill orders issued and financed by Electric Boat pursuant to the Final SDF Financing Orders.

123.    **"SDF PMSI Claims"** shall mean claims of Electric Boat secured by the SDF Equipment pursuant to the Final SDF Financing Orders.

124.    **"Secured Claim"** shall mean, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage, or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of one or more of the Debtors in and to property of the Estates, to the extent of the value of the Holder's interest in such property as of the Petition date, or (b) Allowed as such pursuant to the terms of this Combined Disclosure Statement and Plan (subject to the Confirmation Order becoming a Final Order). The defined term Secured Claim includes any Claim that is (i) subject to an offset right under applicable law as of the Petition Date, and (ii) a secured claim against one or more of the Debtors pursuant to sections 506(a) and 553 of the Bankruptcy Code.

125.    **"Solicitation Procedures Order"** shall mean the Court's *Order (I) Approving on an Interim Basis the Adequacy of Disclosures in the Combined Plan and Disclosure Statement, (II) Fixing Voting Record Date, (III) Scheduling the Confirmation Hearing and Approving Form and Manner of Related Notice and Objection procedures Deadline for Filing Objections, (IV) Approving Solicitation Packages and Procedures and Deadlines for Soliciting, Receiving, and Tabulating Votes to Accept or Reject the Combined Plan and Disclosure Statement, and (V) Approving Form of Ballot and Notice to Non-Voting Classes*, including all exhibits thereto, entered on [                    ] at Docket No.____.

126.    **"Subordinated General Unsecured Claim"** means General Unsecured Claim on account of the Purchaser Acquired Claim.

127.    **"Tax"** or **"Taxes"** shall mean all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise, or other similar taxes, estimated import duties, fees, stamp taxes, and duties, value added taxes, assessments, or charges of any kind whatsoever (whether payable directly or by withholding), together with any interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto.

128.    **"Unclaimed Distributions"** shall mean any undeliverable or unclaimed Distributions.

129.    **"Unimpaired"** shall mean, when used in reference to a Claim or Interest, any Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

130.    **"Unimpaired Class"** shall mean a Class of Claims that are not impaired within the meaning of section 1124 of the Bankruptcy Code.

131.    **"U.S. Trustee"** shall mean the office of the United States Trustee for the District of New Jersey.

132.    **"U.S. Trustee Fees"** shall mean all fees payable pursuant to 28 U.S.C. § 1930 and any interest thereon pursuant to 31 U.S.C. § 3717.

133.    **"Voting Agent"** shall mean Rabinowitz, Lubetkin & Tully, LLC, counsel to the Debtors.

134.    **"Voting Deadline"** shall mean [                                    ], at 5:00 p.m. (Eastern Time), the date and time by which ballots to accept or reject the Plan must be received by the Voting Agent in order to be counted, as set forth by the Solicitation Procedures Order.

135.    **"Waterfall"** shall mean the CAC Waterfall Estimates as defined in the Asset Purchase Agreement and set forth on Schedule 2.5(a) to the Asset Purchase Agreement.

# Exhibit B

*Liquidation Analysis*

## LIQUIDATION ANALYSIS

### *Projected as of October 31, 2023*

> **NOTHING CONTAINED IN THE FOLLOWING LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE PLAN PROPONENTS. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THESE CHAPTER 11 CASES COULD DIFFER MATERIALLY FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.**

### Introduction

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that the Bankruptcy Court find, as a condition to confirmation of the Plan, that each Holder of a Claim or Interest in each Impaired Class: (i) has accepted the Plan; or (ii) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such Person would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. To make these findings, the Bankruptcy Court must: (1) estimate the Cash proceeds that a chapter 7 trustee would generate if each Chapter 11 Case was converted to a chapter 7 case on the Effective Date and the Assets of such estate were liquidated; (2) determine the distribution that each non-accepting Holder of a Claim or Interest would receive from the net estimated liquidation proceeds under the priority scheme dictated in chapter 7; and (3) compare each Holder's estimated recovery under liquidation to the distribution under the Plan that such Holder would receive if the Plan were confirmed and consummated.

Based on the following hypothetical Liquidation Analysis, the Plan Proponents believe that the Plan satisfies the best interests test and that each Holder of an Impaired Claim or Interest will receive value under the Plan on the Effective Date that is not less than the value such Holder would receive if the Debtors liquidated under chapter 7 of the Bankruptcy Code. The Debtors believe that this Liquidation Analysis and the conclusions set forth herein are fair and represent management's best judgment regarding the results of a liquidation of the Debtors under chapter 7 of the Bankruptcy Code taking into account various factors, including the additional costs of a chapter 7 trustee and its counsel. This Liquidation Analysis was prepared for the sole purpose of assisting the Bankruptcy Court and Holders of Impaired Claims or Interests in making this determination and should not be used for any other purpose. Nothing contained in this Liquidation Analysis is intended as or constitutes a concession or admission for any purpose other than the presentation of a hypothetical Liquidation Analysis for purposes of the best interests test. Accordingly, asset values discussed herein may be different than amounts referred to in the Plan. This Liquidation Analysis is based upon certain assumptions discussed herein and in the Combined Disclosure Statement and Plan.

### Significant Assumptions

This Liquidation Analysis was prepared by KCP Advisory Group, LLC, the financial advisor to the Committee, in consultation with the Debtors, for use in this Combined Disclosure Statement and Plan. This Liquidation Analysis assumes that the liquidation of the Debtors would commence on or about [October 31, 2023] (the "Conversion Date") under the direction of a chapter 7 trustee and would continue for a period of approximately six months, during which time the chapter 7 trustee would reconcile claim amounts with historical records, oversee the collection of outstanding accounts receivable, and oversee the final reconciliation and payment of any outstanding Administrative Claims. Upon completion of these tasks, any remaining Cash would then be distributed to creditors in accordance with the priority scheme established under the Bankruptcy Code. The Plan Proponents expect any chapter 7 trustee to retain

professionals to assist in the liquidation of the Estates.

For the avoidance of doubt, the vast majority of the value of the Estates is derived from Cash on the Debtors' balance sheet and proceeds from Causes of Actions. Accordingly, there would be minimal "liquidation of assets" activities prior to moving on directly to claims analysis and distribution of value to creditors in accordance with the priorities established under the Bankruptcy Code.

The Plan is based in part on the Purchaser Acquired Claim Settlement whereby the Purchaser agreed to subordination of the Allowed Purchaser Acquired Claim in the amount of approximately $34 million until all other Allowed Claims are paid in full. For purposes of this Liquidation Analysis, the Debtors assume the terms of the Purchaser Acquired Claim Settlement are not enforceable upon conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

This Liquidation Analysis was prepared on a consolidated basis for all Debtors. The liquidation of the Debtors' Assets is based on projected book values as of the Conversion Date, unless noted otherwise.

The statements in this Liquidation Analysis, including estimates of Allowed Claims, were prepared solely to assist the Bankruptcy Court in making the findings required under section 1129(a)(7) of the Bankruptcy Code and they may not be used or relied upon for any other purpose.

THE PLAN PROPONENTS BELIEVE THAT ANY ANALYSIS OF A HYPOTHETICAL LIQUIDATION IS NECESSARILY SPECULATIVE. THERE ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS UNDERLYING THE LIQUIDATION ANALYSIS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE DEBTORS OR A CHAPTER 7 TRUSTEE. NEITHER THE LIQUIDATION ANALYSIS, NOR THE FINANCIAL INFORMATION ON WHICH IT IS BASED, HAS BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS. THERE CAN BE NO ASSURANCE THAT ACTUAL RESULTS WILL NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS PRESENTED IN THE LIQUIDATION ANALYSIS.

ADDITIONALLY, THE VALUE RANGE ASCRIBED IN THIS DISCLOSURE STATEMENT TO THE PLAN CONSIDERATION TO BE DISTRIBUTED TO CREDITORS DOES NOT PURPORT TO REFLECT OR CONSTITUTE AN APPRAISAL, NOR IS IT INTENDED TO BE AN ESTIMATE OF THE VALUE OF THE DEBTORS' BUSINESS AND ASSETS.

**Summary Notes to Liquidation Analysis**

1. *Dependence on assumptions.* This Liquidation Analysis is based on a number of estimates and assumptions that are inherently subject to significant economic, business, regulatory, and competitive uncertainties and contingencies beyond the control of the Plan Proponents. Accordingly, there can be no assurance that the values reflected in this Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such liquidation and actual results could vary materially and adversely from those contained herein.

2. *Additional claims in a liquidation.* The liquidation itself may trigger certain obligations and priority payments that otherwise would not be due in the ordinary course of business or would otherwise not exist under the Plan. These priority payments would be made in full before any distribution of proceeds to Holders of General Unsecured Claims or Interests. As discussed above, this Liquidation Analysis assumes the terms of the Purchaser Acquired Claim Settlement are not available in a chapter 7 liquidation. Accordingly, a conversion to chapter 7 may subject the chapter 7 estates to additional claims.

3. *Litigation claims.* This Liquidation Analysis does not attribute any value to potential litigation claims that may belong to the Estates, including any claims to recover potentially avoidable preferential and/or fraudulent transfers (if any).

4. *Dependence on a forecasted Cash balance.* This Liquidation Analysis is dependent on a forecasted Cash balance after payment of Administrative Claims and the Debtors' current best estimates with respect to such forecasted balance based on the Debtors' current legal and financial review. Forecasted balances could vary materially from the Debtors' estimates.

5. *Chapter 7 liquidation costs.* It is assumed that a period of six months would be required to complete the liquidation or wind-down of the Debtors' Estates. The fees and operating expenses incurred during the chapter 7 process are included in the estimate of Operating and Recovery Expense.

6. *Claim estimates.* Claims are estimated at the Conversion Date based on the Debtors' current projections. When Claims could not be projected, liabilities as of October 31, 2023 were used.

***Conclusion*: The Plan Proponents have determined, as summarized in the following analysis, that confirmation of the Plan will provide all Impaired Holders of Claims or Interests with a recovery (if any) that is not less than what they would otherwise receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.**

**Estimated Recovery by Creditor Class:**

1) <u>Proceeds of Realization</u>: The Debtors estimated Cash after collection of outstanding receivables and payout of all pre-confirmation accrued and unpaid expenses (*e.g.*, professional fees, postpetition payables, etc.) as of October 31, 2023. A range is provided based on an estimate of outstanding receivables to be collected.

2) <u>Trustee Fees</u>: This Liquidation Analysis assumes that a chapter 7 trustee would be compensated in accordance with the guidelines of section 326 of the Bankruptcy Code. .

3) <u>Operating Expenses and Professional Fees</u>: Operating expenses incurred during the liquidation period were estimated for the six months following the Conversion Date. Operating expenses consist primarily of liquidation expenses including payroll and record retention. Legal and financial professionals are expected to assist the trustee throughout the liquidation period. Estimates also assume that a chapter 7 Trustee hires its own counsel and other professionals and will incur costs and time to get up to speed. There may be incremental costs to pursue litigation, which are not included in this analysis.

4) <u>Administrative Claims</u>: For purposes of this Liquidation Analysis, the Proceeds for Realization is net of any chapter 11 Administrative Claims. Accordingly, the balance of chapter 11 Administrative Claims is $0 under a chapter 11 or chapter 7 scenario.

5) <u>Priority Tax Claims</u>: For both the chapter 7 and chapter 11 scenarios, the Debtors estimate Priority Tax Claims based on scheduled claims in High recovery scenarios. Incremental Priority Tax Claims yet to be reconciled are shown as incremental in Low recovery scenarios.

6) <u>Class 1 – Secured Claims</u>: For both the chapter 7 and chapter 11 scenarios, Secured Claims are assumed to have been partially or completely satisfied through sale proceeds, letters of credit, or collection of physical collateral.

7) <u>Class 2 – Secured PMSI Claims</u>:  For both the Chapter 7 and 11 scenarios, Secured PMSI Claims are assumed to be paid in full.

8) <u>Class 3 – Secured Claim of Electric Boat</u>: For both Chapter 7 and 11 scenarios, the Secured Claim of Electric Boat is assumed to be resolved by the SDF Agreements with no monetary distributions.

9) <u>Class 4 Priority Non-Tax Claims</u>: Priority Non-Tax Claims related to employee paid time off were either assumed by the Purchaser or paid as part of final payroll for terminated employees or paid under certain interim cash collateral orders. Accordingly, Debtors estimate there are no Priority Non-Tax Claims.

10) <u>Class 5 – Total Estimated General Unsecured Claims</u>: The chapter 11 scenario assumes the Purchaser Acquired Claim Settlement, in which the Purchaser's Unsecured Deficiency Claim is effectively waived unless all other Allowed Claims are paid in full, is not available in a chapter 7 case.

11) <u>Total Estimated Claims</u>: Estimated claims are based on scheduled and filed Claims as of the General Bar Date, plus estimates for additional claims. Estimated claim amounts may change as Rejection Claims or PMSI Deficiency Claims may be filed.

**Conclusion**

Based on the assumptions outlined above, the Plan Proponents project the recovery to Holders of General Unsecured Claims is an estimated recovery rate of 1.4% under chapter 11 or 0% under chapter 7.

**Custom Alloy Corporation et al**
**Chapter 11 Liquidation Plan**
*Analysis as of October 31, 2023*

| | Chapter 11 Liquidation Plan | | | Chapter 7 Liquidation | | | Note: Process Assumes Effective Immediately |
|---|---|---|---|---|---|---|---|
| | Value | Recovery % | Recovery $ | Value | Recovery % | Recovery $ | |
| **Cash** | | | | | | | |
| Cash Held by KCP from Landlord Settlement | 129,329 | 100.00% | 129,329 | 129,329 | 100.00% | 129,329 | - Cash Balance, includes last month end interest |
| Debtor Controlled Disbursement Account | 1,500 | 100.00% | 1,500 | 1,500 | 100.00% | 1,500 | - Cash on Hand in account |
| Funds Held by Debtor: | | | | | | | |
| Professional Fee Carveout pre 6/24 | 262,088 | 100.00% | 262,088 | 262,088 | 100.00% | 262,088 | - Agreed upon professional fee carveout balance net of fees through 6/24 |
| Professional Fee Carveout from Sale | 233,441 | 100.00% | 233,441 | 233,441 | 100.00% | 233,441 | - Funds provided from sale proceeds earmarked for professional fees |
| Winddown Account | 183,366 | 100.00% | 183,366 | 183,366 | 100.00% | 183,366 | - Winddown account balance as of 10/19/23 |
| Excess Cash from PMSI | 328,961 | 100.00% | 328,961 | 328,961 | 100.00% | 328,961 | - Excess cash in escrow after PMSI payment |
| Less: Amount Returnable to Trident | (328,961) | 100.00% | (328,961) | (328,961) | 100.00% | (328,961) | - Assumes proceeds are returned to Trident, not funds of debtor |
| **TOTAL CASH** | $ 809,725 | | $ 809,725 | $ 809,725 | | $ 809,725 | |
| Funds held by Great American for Worker's Comp | 300,000 | 10.00% | 30,000 | 300,000 | 10.00% | 30,000 | - Cash amounts supporting L/C, drawn Sep 2023 needing research |
| **Recoveries** | | | | | | | |
| Payments made within 90 days of Filing | | TBD | | | TBD | | - Excludes any recovery from preference payments |
| Potential Insider / Causes of Action | | TBD | | | TBD | | - Excludes any recovery from any causes of action |
| D&O Claims | | TBD | | | TBD | | - Excludes any recovery from D&O claims |
| **TOTAL** | $ 1,109,725 | | $ 839,725 | $ 1,109,725 | | $ 839,725 | |
| **Costs for Liquidation** | | | | | | | |
| Winddown Costs | | | 176,000 | | | 176,000 | - Winddown costs for tax filings and support activities |
| Chapter 11 Professionals | | | 490,890 | | | 490,890 | - Remaining estimate for professional charges |
| Liquidating Trustee & Professionals | | | 112,500 | | | - | - Legal, accounting and Trustee costs estimated post confirmation |
| Chapter 7 Trustee & Professionals | | | - | | | 500,000 | - Ch7 Trustee estimate |
| Total Costs for Liquidation | | | 779,390 | | | 1,166,890 | |
| **Net Proceeds Available for Unsecured Creditors** | | | $ 60,335 | | | N/A | - Under Chapter 7, administratively insolvent |
| (2) General Unsecured Claims | | | 4,383,203 | | | 4,383,203 | - General Unsecured Claims, net of duplicates, insider claims, disputed and paid / Subject to change based on further review and reconciliation |
| Recovery For GUC | | | 1.4% | | | N/A | |

(1) Counsel for the Liquidating Trustee will pursue recoveries on preferences, causes of actions and D&O claims on a contingency basis
(2) Nothing herein shall be deemed an admission for any purposes against the Plan Proponents

# **Exhibit C**

*Liquidation Trust Agreement*

## LIQUIDATION TRUST AGREEMENT

### PREAMBLE

This Liquidation Trust Agreement, dated as of November __, 2023 (the "**Agreement**"), which pertains to the administration of this Custom Alloy Liquidation Trust (the "**Liquidation Trust**"), is made effective as of the Effective Date[1] of the Plan, by and among Custom Alloy Corporation and CAC Michigan LLC, debtors and debtors-in-possession (together, the "**Debtors**") and KCP Advisory Group, LLC solely in its capacity as trustee (the "**Liquidation Trustee**" and together with the Debtors, the "**Parties**") in accordance with the *Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* dated November 3, 2023 (including all exhibits thereto, as the same may be further amended, modified, or supplemented from time to time, the "**Plan**") jointly filed by the Debtors and the Official Committee of Unsecured Creditors (the "**Committee**"), and such Plan having been confirmed pursuant to the entry of the Confirmation Order.

### RECITALS

A.    On October 13, 2022 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**"), thereby commencing their chapter 11 cases (together, the "**Chapter 11 Cases**").

B.    On November 3, 2023, the Plan Proponents filed the Plan.

C.    Among other things, the Plan provides for the creation of a post-confirmation Liquidation Trust to hold and administer certain Liquidation Trust Assets and distribute the proceeds therefrom to the Holders of certain Allowed Claims, in accordance with the terms of this Agreement and the Plan.  This Agreement is executed to establish the Liquidation Trust and to facilitate the implementation of the Plan.

D.    The Liquidation Trust is created on behalf of, and for the benefit of, the Liquidation Trust Beneficiaries.

E.    The respective powers, authority, responsibilities, and duties of the Liquidation Trustee shall be governed by this Agreement, the Plan, the Confirmation Order, other applicable orders issued by the Bankruptcy Court and, with respect to the Liquidation Trustee only, any obligations under New Jersey law.

F.    This Agreement is intended to supplement, complement, and implement the Plan. If any of the terms and/or provisions of this Agreement are inconsistent with the terms and/or provisions of the Plan, then the Plan shall govern except for inconsistencies or clarifications in furtherance of the Liquidation Trust as a liquidating trust for federal income tax purposes, in which case the terms and/or provisions of this Liquidation Trust shall govern.

---

[1]    A capitalized term used but not defined herein shall have the meaning ascribed to it in the Plan.

G.    The Liquidation Trust is intended to qualify as a "liquidating trust" under the United States Internal Revenue Code of 1986 and the Treasury Regulations promulgated thereunder, specifically Treasury Regulation section 301.7701-4(d), and as such is a "grantor trust" for federal income tax purposes with the Liquidation Trust Beneficiaries treated as the grantors and owners of the Liquidation Trust. In particular, as specified in Revenue Procedure 94-95, 1994-2 C.B. 684 (July 11, 1994):

(a)    The Liquidation Trust is organized for the primary purpose of liquidating the Liquidation Trust Assets, with no objective to conduct a trade or business except to the extent reasonably necessary to, and consistent with, the purpose of the Liquidation Trust. The Liquidation Trust shall not be deemed a successor of the Debtors or their Estates;

(b)    This Agreement provides that the Liquidation Trust Beneficiaries will be treated as the grantors of the Liquidation Trust and deemed owners of the Liquidation Trust Assets, and further, requires the Liquidation Trustee to file returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a);

(c)    This Agreement provides for consistent valuations of the transferred property by the Liquidation Trustee and the Liquidation Trust Beneficiaries, and those valuations shall be used for all federal income tax purposes;

(d)    All of the Liquidation Trust's income is to be and will be treated as subject to tax on a current basis to the Liquidation Trust Beneficiaries who will be responsible for payment of any tax due;

(e)    This Liquidation Trust contains a fixed or determinable termination date in that it will terminate as soon as practicable at such time as (i) all Disputed Claims have been resolved, (ii) all of the Liquidation Trust Assets have been liquidated, (iii) all duties and obligations of the Liquidation Trustee under the Liquidation Trust Agreement have been fulfilled, (iv) all Distributions required to be made by the Liquidation Trust under the Plan and the Liquidation Trust Agreement have been made, and (v) the Chapter 11 Cases have been closed; *provided, however*, that, notwithstanding the foregoing, the Liquidation Trust shall be dissolved no later than five (5) years from the Effective Date unless the Bankruptcy Court, upon a motion filed prior to the fourth anniversary of the Effective Date or the end of any extension period approved by the Bankruptcy Court (the filing of which shall automatically extend the term of the Liquidation Trust pending the entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period extension (not to exceed one (1) year, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidation Trust as a Liquidation trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets;

(f)    The investment powers of the Liquidation Trustee, other than those

reasonably necessary to maintain the value of the Liquidation Trust Assets and to further the liquidating purpose of the Liquidation Trust, are limited to powers to invest in Permissible Investments (as defined herein); and

(g)     The Liquidation Trustee is required to distribute, within thirty (30) days after the end of each calendar year, to the Liquidation Trust Beneficiaries the Liquidation Trust's net income plus all net proceeds from the sale, realization, settlement or liquidation of the Liquidation Trust Assets, except that the Liquidation Trustee may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the Liquidation Trust Assets, to satisfy current and projected expenses of the Liquidation Trust, and to satisfy Claims and contingent liabilities (including Disputed Claims).

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, the Parties agree as follows:

## DEFINITIONS

"Affiliates" means parents, subsidiaries, members, managers, limited partners, and general partners as defined in Section 101(2) of the Bankruptcy Code.

"Agreement" has the meaning specified in the Preamble to this Agreement.

"Bankruptcy Court" has the meaning specified in the Preamble to this Agreement.

"Causes of Action" means all Causes of Action (as defined in the Plan) that are Liquidation Trust Assets.

"Confidential Party" has the meaning specified in Article 16.4.

"Debtors" has the meaning specified in the Preamble to this Agreement.

"IRS" means the Internal Revenue Service of the United States of America.

"Liquidation Trust" has the meaning specified in the Preamble to this Agreement.

"Liquidation Trust Asset Proceeds" means any and all proceeds from the Liquidation Trust Assets, including, without limitation, any cash or other property received from or in connection with the Liquidation Trust Assets or the prosecution, settlement, or adjudication of any related Causes of Action that are Liquidation Trust Assets.

"Liquidation Trust Beneficiaries" means the Holders of Allowed Unsecured Claims.

"Liquidation Trustee" has the meaning specified in the Preamble to this Agreement and includes any successor Liquidation Trustee appointed pursuant to Article 10.1.

"Liquidation Trustee Non-Professionals" has the meaning specified in Article 13.1(b).

"Liquidation Trustee Professionals" has the meaning specified in Article 13.1(a).

"Parties" has the meaning specified in the Preamble to this Agreement.

"Person" means any individual, corporation, partnership, joint venture, association, trust, unincorporated organization, or other legal entity, or any governmental authority, entity, or political subdivision thereof.

"Petition Date" has the meaning specified in the Preamble to this Agreement.

"Plan" has the meaning specified in the Preamble to this Agreement.

"Post-Confirmation Committee" means the entity formed as of the Effective Date, pursuant to Article 2.10.

"Undeliverable Distributions" has the meaning specified in Article 4.3.

## ARTICLE 1
## NAME OF TRUST AND LIQUIDATION TRUSTEE

The name of the Liquidation Trust is the "Custom Alloy Liquidation Trust."

KCP Advisory Group, LLC is hereby appointed to serve as the initial Liquidation Trustee under the Plan, and hereby accepts this appointment and agrees to serve in such capacity effective upon the Effective Date of the Plan and pursuant to the terms of the Plan and this Agreement. Jacen Dinoff shall be the employee of the Liquidation Trustee who shall be primarily responsible for administering the Liquidating Trust on behalf of the Liquidation Trustee. A successor Liquidation Trustee shall be appointed as set forth in Article 10.1 in the event the Liquidation Trustee is removed or resigns pursuant to this Agreement, or if the Liquidation Trustee otherwise vacates the position.

## ARTICLE 2
## DUTIES AND POWERS OF THE LIQUIDATION TRUSTEE

2.1     Generally

The Liquidation Trustee shall be responsible for liquidating and administering (or abandoning, as the case may be) the Liquidation Trust Assets, including the Causes of Action, and taking actions on behalf of, and representing, the Liquidation Trust. The Liquidation Trustee shall have the authority to bind the Liquidation Trust within the limitations set forth herein but shall for all purposes hereunder be acting in the capacity of Liquidation Trustee and not individually.

2.2     Scope of Authority of Liquidation Trustee

Within the limitations set forth herein, and subject to the oversight provisions of the Post-Confirmation Committee set forth in this Agreement, the responsibilities and authority of the Liquidation Trustee shall include, without limitation: (i) holding and administering the Liquidation Trust Assets, (ii) evaluating and determining strategy with respect to the Causes of Action and litigating Causes of Action, or settling, transferring, releasing, or abandoning any and all Causes

of Action on behalf of the Liquidation Trust, (iii) facilitating the prosecution or settlement of objections to, or estimations of, Claims asserted against the Liquidation Trust or the Liquidation Trust Assets, (iv) calculating and implementing distributions to the Liquidation Trust Beneficiaries in accordance with the Plan and this Agreement, (v) filing all required tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), (vi) retaining Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals as provided in the Plan or this Agreement, (vii) receiving reasonable compensation for performing services as Liquidation Trustee in accordance with this Agreement and paying the reasonable fees, costs, and expenses of any Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals in accordance with the applicable provisions of this Agreement, (viii) filing all required reports with the Bankruptcy Court regarding the status of the administration of the Liquidation Trust Assets and the assets, liabilities, and transfers of the Liquidation Trust, and (ix) carrying out such other responsibilities not specifically set forth herein as may be vested in the Liquidation Trustee pursuant to the Plan, this Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or this Agreement.

2.3   Obligations to Liquidation Trust and Beneficiaries

The Liquidation Trustee's actions as Liquidation Trustee will be held to standards required under New Jersey law.

2.4   Additional Powers of Liquidation Trustee

In connection with the administration of the Liquidation Trust, subject to and except as otherwise set forth in this Agreement or the Plan, the Liquidation Trustee is hereby authorized to perform those acts necessary to accomplish the purposes of the Liquidation Trust, subject to the advice of the Post-Confirmation Committee. Without limiting, but subject to, the foregoing, the Liquidation Trustee shall, unless otherwise provided in this Agreement and subject to the limitations contained herein and in the Plan:

(a)   be expressly authorized and required to hold legal title (on behalf of the Liquidation Trust as Liquidation Trustee, but not individually) to the Liquidation Trust Assets, including, but not limited to, the Causes of Action, and be expressly authorized to vote any Claim held by the Liquidation Trust in any case or proceeding under the Bankruptcy Code or otherwise and to receive any distribution therein;

(b)   be expressly authorized and required to protect and enforce the rights to the Liquidation Trust Assets vested in the Liquidation Trust by the Plan by any method deemed appropriate in its discretion, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(c)   be expressly authorized to invest funds (in the manner set forth in Article 2.8), make distributions, and pay any other obligations owed by the Liquidation Trust from the Liquidation Trust Assets as provided herein and in the Plan;

(d)   be expressly authorized and required to prosecute, defend, compromise, adjust, analyze, arbitrate, abandon, estimate, or otherwise deal with and settle, in accordance with the terms set forth in Article 5 hereof, Claims against the Liquidation Trust or the Liquidation

Trust Assets;

(e)    be expressly authorized and required to pay expenses and make disbursements necessary to preserve and liquidate the Liquidation Trust Assets;

(f)    be expressly authorized and required to make the Distributions as contemplated in the Plan and this Agreement;

(g)    be expressly authorized and required to file appropriate tax returns with respect to the Liquidation Trust and the Debtors, and pay taxes properly payable by the Liquidation Trust, if any, in the exercise of its fiduciary obligations;

(h)    be expressly authorized and required to take such actions as are necessary and reasonable to carry out the purposes of the Liquidation Trust;

(i)    be expressly authorized to purchase insurance coverage as the Liquidation Trustee, in its sole discretion, deems necessary and appropriate with respect to the assets, liabilities, and obligations of the Liquidation Trust;

(j)    be expressly authorized to consult with the Post-Confirmation Committee on a regular basis and keep the Post-Confirmation Committee fully advised as to the status of the Liquidation Trust and the Liquidation Trustee's activities;

(k)    be expressly authorized to retain and pay, as applicable, the Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals as provided in, and subject to the terms of, this Agreement;

(l)    be expressly authorized to incur any reasonable and necessary expenses in liquidating and converting the Liquidation Trust Assets to Cash, or otherwise administering the Liquidation Trust, as set forth in the Plan or this Agreement;

(m)    be expressly authorized to terminate the Liquidation Trust and, subject to the terms of the Plan, seek to close the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code; and

(n)    be expressly authorized and required to assume such other powers as may be vested in or assumed by the Liquidation Trust pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or this Agreement.

2.5    General Authority of the Liquidation Trustee

Unless specifically stated otherwise herein, the Liquidation Trustee shall not be required to obtain Bankruptcy Court approval with respect any proposed action or inaction: (a) authorized in this Agreement, or (b) specifically contemplated in the Plan.

2.6    Limitation of Liquidation Trustee's Authority; No On-Going Business
(a)    The Liquidation Trustee shall have no power or authority except as set forth in this Agreement or in the Plan.

(b)    For federal income tax purposes, the Liquidation Trustee shall not be authorized to engage in any trade or business with respect to the Liquidation Trust Assets or any proceeds therefrom except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Liquidation Trust. The Liquidation Trustee shall take such actions consistent with the prompt orderly liquidation of the Liquidation Trust Assets as required by applicable law and consistent with the treatment of the Liquidation Trust as a liquidation trust under Treasury Regulation section 301.7701-4(d), to the extent such actions are permitted by this Agreement.

2.7    <u>Other Activities</u>

The Liquidation Trustee shall be entitled to retain Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals in accordance with the terms of this Agreement and to assist with the administration of the Liquidation Trust. The Liquidation Trustee, the Liquidation Trustee Professionals, and the Liquidation Trustee Non-Professionals may be retained in matters that are unrelated to the Liquidation Trust by banks, bank groups or other institutional lenders or debt holders who are, or whose Affiliates are, Beneficiaries of the Liquidation Trust or its Affiliates, so long as such other retention does not involve holding or representing any interest adverse to the interests of the Liquidation Trust, or otherwise preclude or impair the Liquidation Trustee from performing its duties under this Agreement.

2.8    <u>Investment and Safekeeping of Liquidation Trust Assets</u>

All monies and other assets received by the Liquidation Trustee shall, until distributed or paid over as herein provided, be segregated from all other monies and assets of the Liquidation Trustee, and further, shall be held in trust for the benefit of the Liquidation Trust Beneficiaries, but need not be segregated from other Liquidation Trust Assets, unless and to the extent required by the Plan and this Agreement. The Liquidation Trustee shall promptly invest any such monies in the manner set forth in this Article 2.8 but shall otherwise be under no liability for interest or income on any monies received by the Liquidation Trust hereunder and held for distribution or payment to the Liquidation Trust Beneficiaries, except as such interest shall actually be received. Investment of any monies held by the Liquidation Trust shall be administered in accordance with the general duties and obligations hereunder. The right and power of the Liquidation Trustee to invest the Liquidation Trust Assets, the proceeds thereof, or any income earned by the Liquidation Trust, shall be limited to the right and power to (i) invest such Liquidation Trust Assets (pending distributions in accordance with the Plan or this Agreement) in (a) short-term direct obligations of, or obligations guaranteed by, the United States of America or (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; or (ii) deposit such assets in demand deposits at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000 (collectively, the "**Permissible Investments**") *provided, however*, that the scope of any such Permissible Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulation section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

2.9    Establishment of Reserves

On the Effective Date, the Liquidation Trustee shall establish and maintain a Reserve of Cash from the Liquidation Trust Assets as the Liquidation Trustee deems reasonably necessary to satisfy Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, Disputed Secured Claims, Disputed PMSI Claims and for the Liquidation Trust Expense Reserve. Further, upon the Professional Fee Bar Date, the Liquidation Trustee shall establish a Reserve of Cash from the Liquidation Trust Assets in an amount that the Liquidation Trustee deems reasonably necessary to satisfy all Professional Fee Claims.

2.10    Post-Confirmation Committee

(a)    Formation.    On the Effective Date, the Post-Confirmation Committee, which shall consist of three (3) members, shall be formed to serve as an advisory board to the Liquidation Trustee. The initial members of the Post-Confirmation Committee shall be: (i) A&M Industrial, Inc., (ii) Trepanning Specialties, Inc. and (iii) the Honorable Kevin Gross (Ret.) provided that if Judge Gross is unwilling to serve on the Post-Confirmation Committee on terms acceptable to the Debtors and the Committee, Adam M. Ambielli shall serve as a member of the Post-Confirmation Committee provided that he shall recuse himself from voting on matters related to Insiders. The Post-Confirmation Committee shall have the rights and obligations set forth in the Plan and in this Agreement. The Committee's decisions shall be made by an affirmative vote of a majority of its members with each member having one vote. The Post-Confirmation Committee shall have the responsibility to oversee and advise the Liquidation Trustee with respect to the liquidation and distribution of the Debtor's assets in accordance with the Plan, as specified below. A member of the Post-Confirmation Committee shall recuse him/herself from considering any matter in which he/she is not disinterested; provided, however, such member shall not be considered not disinterested solely as a result of such member's affiliation with or employment by the (i) Holder of a Claim or (ii) Debtors. The proposed members of the Post-Confirmation Committee will be identified in a Plan Supplement or Confirmation Order. Vacancies on the Post-Confirmation Committee shall be filled by a Person designated by the remaining member or members of the Post-Confirmation Committee from among the holders of General Unsecured Claims and from candidates designated by the Debtors' Board of Directors. A majority of the Post-Confirmation Committee may remove or replace members of the Post-Confirmation Committee for cause, and any party-in-interest shall have the authority to seek an order from the Bankruptcy Court removing or replacing members of the Post-Confirmation Committee for cause. Any successor appointed pursuant to this Section shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor. For the avoidance of doubt, no member of the Post-Confirmation Committee shall be compensated for serving as a member of the Post-Confirmation Committee except as provided in the Plan or this Agreement; provided, however, that such members may be reimbursed by the Liquidation Trust, from funds in the Post-Effective Date Liquidation Trust Expense Reserve for documented reasonable out-of-pocket costs and expenses up to a cap of $2,500 per member. Beginning after the Effective Date, the Post-Confirmation Committee shall receive a quarterly report from the Liquidation Trustee showing receipts and disbursements, together with a narrative explanation regarding the activities of the Liquidation Trustee and any retained professionals.

(b)    Procedures for Oversight.    The rights, powers and duties of the Post-

Confirmation Committee shall be as follows:

(i) To terminate by majority vote in accordance with the Liquidating Trust Agreement, the Liquidation Trustee for cause, and upon such termination (or upon the resignation, death or incapacity of the Liquidation Trustee), appoint a successor Liquidation Trustee in accordance with the terms of the Plan;

(ii) Prior to the commencement of any litigation by the Liquidation Trustee against any of the Insiders, the Liquidating Liquidation Trustee shall present to the Post-Confirmation Committee a written description of the theory of liability and quantum of damages of the claims proposed to be asserted against the Insiders. An affirmative vote of the Post-Confirmation Committee shall be required to authorize the commencement of litigation provided that, if authorization is obtained, prior to commencement of litigation against the Insiders, the Liquidation Trustee and the Insiders prior to the commencement of an action shall mediate before a mutually agreeable mediator or in the absence of such agreement, as designated by the Court (the "Mediation Action"). If the matter is not successfully resolved by mediation, the Liquidation Trustee shall be authorized to commence litigation against those Insiders. If the potential expiration of an applicable statute of limitation prevents the completion of the Mediation Obligation, the Mediation Obligation shall be suspended and, provided that the Post-Confirmation Committee has authorized an action against any of the Insiders, the Liquidation Trustee shall be authorized to commence such action provided further that the Liquidation Trustee has made an unsuccessful good faith effort to obtain a tolling of such statute of limitation.

(iii)      To approve the settlement of any Cause of Action or dispute, for which the amount in controversy exceeds $250,000;

(iv)      To approve the allowance of any Disputed Claim if the proposed Allowed amount of such Claim exceeds $250,000;

(v) To approve the sale of any assets by the Liquidation Trustee;

(vi)      To approve any budget in connection with the administration of the Plan and the winding down of the Debtors' affairs prepared by the Liquidation Trustee at the request of the Post-Confirmation Committee;

(vii)      To review and object to fees and expenses of professionals retained by the Liquidation Trustee on a quarterly basis and in accordance with the terms of the Plan and the Liquidating Trust Agreement; and

(viii)      To consider and, if appropriate, approve any action proposed by the Liquidation Trustee that is not specifically authorized by the Plan that would have a material effect upon the administration of the Estates and/or the Post-Effective Date Debtors or the Liquidation Trust, provided, however, nothing contained herein shall be deemed to authorize the Liquidation Trustee to take any action that is inconsistent with the terms of the Plan or the Liquidation Trust.

## ARTICLE 3
## TERM AND COMPENSATION FOR LIQUIDATION TRUSTEE

3.1     Compensation

(a)     The Liquidation Trustee shall be entitled to receive compensation for services rendered on behalf of the Liquidation Trust in the amount of $2,500 per month, payable on the first Business Day of each month, plus reimbursement of all reasonable, out-of-pocket expenses, until the date the Liquidation Trust is dissolved and terminated pursuant to Article 14.1, or by an order of the Bankruptcy Court.

(b)     All compensation and other amounts payable to the Liquidation Trustee shall be paid out of the Liquidation Trust Expense Reserve.

3.2     Termination

The duties, responsibilities, and powers of the Liquidation Trustee will terminate on the date the Liquidation Trust is dissolved and terminated pursuant to Article 14.1, or by an order of the Bankruptcy Court.

3.3     No Bond

The Liquidation Trustee shall serve without bond.

3.4     Removal

The Liquidation Trustee may be removed only for (i) cause by a Final Order of the Bankruptcy Court, after notice and a hearing; *provided, however*, that the Liquidation Trustee may not be removed until a successor Liquidation Trustee has been named or is capable of being named immediately upon such removal, or (ii) the Post-Confirmation Committee may remove the Liquidation Trustee at its discretion upon a majority vote of all members without approval of the Bankruptcy Court, provided, however, that the Post-Confirmation Committee shall provide the Liquidation Trustee with thirty (30) days written notice of its intent to remove the Liquidation Trustee. For purposes of removing the Liquidation Trustee, "cause" shall mean gross negligence, breach of fiduciary duty, breach of trust, and reckless or willful mishandling of the Liquidation Trust Assets. Any fees and unreimbursed expenses that have been properly incurred by the Liquidation Trustee or the Post-Confirmation Committee in accordance with the terms of this Agreement that are owing to the Liquidation Trustee or Post-Confirmation Committee as of the date of the Liquidation Trustee's removal shall be paid to the Liquidation Trustee or Post-Confirmation Committee, as applicable, within seven (7) calendar days of the removal date.

3.5     Resignation

The Liquidation Trustee may resign by giving not less than sixty (60) calendar days' prior written notice thereof to the Bankruptcy Court, the Liquidation Trust Beneficiaries and the Post Confirmation Committee.

## ARTICLE 4

## PROVISIONS REGARDING DISTRIBUTIONS

4.1      Priority and Method of Distributions

(a)      Generally.  The Liquidation Trustee, on behalf of the Liquidation Trust, or such other Person as may be designated in accordance with this Agreement, will make distributions to the Liquidation Trust Beneficiaries in accordance with this Agreement and in accordance with the priorities set forth in, and the other provisions of, the Plan.  Whenever any distribution to be made under the Plan or this Agreement is due on a day other than a Business Day, such distribution shall be made, without interest, on the immediately succeeding Business Day, but any such distribution will have been deemed to have been made on the date due.

(b)      Distribution of Liquidation Trust Assets and Proceeds Thereof.  All Liquidation Trust Assets and all Liquidation Trust Asset Proceeds shall be distributed in accordance with the terms of this Agreement, the Plan, and Confirmation Order.

(c)      Timing of Distributions.  Except as specifically set forth in the Plan, the Liquidation Trustee may determine, in its discretion, the appropriate timing, amount, and cadence for distributions.

(d)      Periodic Distribution Requirement.  Subject to the provisions of this Article 4 and to the extent required to maintain grantor trust tax status, the Liquidation Trustee is required to distribute within thirty (30) days after the end of each calendar year following the Effective Date, or upon such other interval as the Bankruptcy Court may order, but in no event less frequently than annually, to the Liquidation Trust Beneficiaries the Liquidation Trust's net income plus all net proceeds from the sale, realization, settlement, or liquidation of the Liquidation Trust Assets, except that the Liquidation Trustee may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the Liquidation Trust Assets, to satisfy current and projected expenses of the Liquidation Trust, and to satisfy Claims and contingent liabilities (including Disputed Claims).

(e)      Withholding.  When making a Distribution, the Liquidation Trustee may retain an amount of Liquidation Trustee Assets reasonably necessary to satisfy current and projected expenses of the Liquidation Trust, and to satisfy Claims and contingent liabilities (including Disputed Claims).  The Liquidation Trustee may also withhold from amounts distributable to any Person any and all amounts, to be determined in the Liquidation Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive or other government equivalent of the United States or of any political subdivision thereof.  To the extent that amounts are so withheld and paid over to the appropriate governmental entity, such amounts shall be treated for all purposes of this Agreement as having been paid to the Person in respect of whom such deduction and withholding was made.

(f)      Tax Identification Numbers.  The Liquidation Trustee is authorized to request and obtain from the Liquidation Trust Beneficiaries or any other Person Forms W-8 and/or W-9 or such other forms or information relating to the Liquidation Trustee's obligations to withhold as the Liquidation Trustee may reasonably request, and the Liquidation Trustee may condition any distribution to any Liquidation Trust Beneficiary or other distributee upon receipt

of such forms or information.

### 4.2    Delivery of Distributions.

Subject to the provisions of Federal Rule of Bankruptcy Procedure 2002(g), and except as otherwise provided herein, Distributions to the Liquidation Trust Beneficiaries shall be made: (i) at the addresses set forth on the respective proofs of Claim Filed by such Holders; (ii) at the addresses set forth in any written notices of address changes delivered to the Liquidation Trustee after the date of any related proof of Claim; or (iii) at the address reflected in the Schedules if no proof of Claim is Filed and the Liquidation Trustee has not received a written notice of a change of address.

### 4.3    Undeliverable Distributions.

If the Distribution to a Liquidation Trust Beneficiary is returned to the Liquidation Trustee as undeliverable ("**Undeliverable Distributions**"), no further Distribution shall be made to such Liquidation Trust Beneficiary unless and until the Liquidation Trustee is notified in writing of such Liquidation Trust Beneficiary's then current address. Undeliverable Distributions shall remain in the possession of the Liquidation Trustee until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such Undeliverable Distribution becomes an Unclaimed Distribution under this Agreement and the Plan.

The Liquidation Trustee shall make reasonable efforts to update or correct contact information for recipients of undeliverable Distributions, *provided, however*, nothing contained in the Plan or this Agreement shall require the Liquidation Trustee to locate any Liquidation Trust Beneficiary.

### 4.4    Unclaimed Distributions

Any entity which fails to claim any Cash within 90 days from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan, and the Liquidation Trustee shall be authorized to cancel any distribution that is not timely claimed. Pursuant to section 347(b) of the Bankruptcy Code, upon forfeiture, such Cash (including interest thereon, if any) shall revert to the source of such distribution (*i.e.,* the Liquidation Trustee or the Distribution Reserve) free of any restrictions under the Plan, the Bankruptcy Code or the Bankruptcy Rules. Upon forfeiture, the claim of any Creditor or Interest Holder with respect to such funds shall be irrevocably waived and forever barred against all of the Debtors, the Estates, and the Liquidation Trustee, notwithstanding any federal or state escheat laws to the contrary, and such Creditor or Interest Holder shall have no claim whatsoever against the any of the foregoing or to any Holder of a Claim to whom distributions are made.

### 4.5    Remainder Amounts After Final Distribution

After final Distributions have been made in accordance with the terms of the Plan, if the aggregate amount of Unclaimed Distributions and Undeliverable Distributions is less than $5,000, the Liquidation Trustee may donate such amount to a New Jersey Bankruptcy Charity or such other charitable organization as determined by the Liquidation Trustee in its sole discretion.

4.6     De Minimis Distributions

If any interim distribution under the Plan to the Holder of an Allowed Claim would be less than $100.00, the Liquidation Trustee may withhold such distribution until a final distribution is made to such Holder. If any final distribution under the Plan to the Holder of an Allowed Claim would be less than $100.00, the Liquidation Trustee may cancel such distribution. Any potential distributions pursuant to this Section shall be treated as an Unclaimed Distribution under Section 9.02(i) of the Plan.

**ARTICLE 5**
**PROCEDURES FOR RESOLUTION OF DISPUTED,**
**CONTINGENT, AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS**

5.1     Objections to Claims; Prosecution of Disputed Claims

Except insofar as a Claim is Allowed under the Plan on and after the Effective Date, the Liquidation Trustee will have the authority, but not the obligation, subject to Section 6.08 of the Plan, to do any of the following with respect to any Claims or Interests: (1) file, withdraw, or litigate to judgment objections to and requests for estimation of Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by, the Bankruptcy Court. The Liquidation Trustee shall succeed to any pending objections to Claims filed by the Debtors prior to the Effective Date and shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim. The Liquidation Trustee shall not be obligated to object to any Claim but may consult with the Post-Confirmation Committee in deciding whether to object to any particular Claim.

5.2     Estimation of Claims

The Liquidation Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidation Trustee previously have objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute the maximum allowed amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidation Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

5.3     Payments and Distributions on Disputed Claims

(a)     Notwithstanding anything herein to the contrary: (a) no distribution shall be

made with respect to any Disputed Claim until such Claim becomes an Allowed Claim (as applicable), and (b) unless agreed otherwise by the Liquidation Trustee no distribution shall be made to any Person that holds both an Allowed Claim and a Disputed Claim until such Person's Disputed Claims have been resolved by settlement or Final Order.

(b)     Except as otherwise provided in a Final Order or as agreed by the relevant parties, distributions on account of Disputed Claims, if any, that become Allowed, shall be made by the Liquidation Trustee at such periodic intervals as the Liquidation Trustee determines to be reasonably prudent. No interest will be paid on Disputed Claims that later become Allowed or with respect to any distribution in satisfaction thereof to a Holder.

## ARTICLE 6
## LIABILITY AND EXCULPATION PROVISIONS

6.1     Standard of Liability

In no event shall the Liquidation Trustee or the Liquidation Trustee Professionals, Liquidation Trustee Non-Professionals, Post-Confirmation Committee, Affiliates, representatives, employees, directors, officers or principals be held personally liable for any claim, expense, liability or other obligation asserted against the Liquidation Trust. The Post-Confirmation Committee, the Liquidation Trustee, the Liquidation Trustee Professionals, the Liquidation Trustee Non-Professionals, and each of their Affiliates, representatives, employees, directors, officers or principals shall not be liable for any negligence or any error of judgment made in good faith with respect to any action taken or omitted to be taken in good faith, except to the extent that the action taken or omitted to be taken by each of the same or their respective Liquidation Trustee Professionals, Liquidation Trustee Non-Professionals, Affiliates, representatives, employees, directors, officers or principals is determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct, fraud or, solely in the case of the Liquidation Trustee or Post-Confirmation Committee, breach of fiduciary duty. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence or willful misconduct.

6.2     Reliance by Liquidation Trustee

Except as otherwise provided herein:

(a)     the Liquidation Trustee and Post-Confirmation Committee may rely, and shall be protected in acting upon, any resolution, certificate, statement, installment, opinion, report, notice, request, consent, order, or other paper or document reasonably believed to be genuine and to have been signed or presented by the proper party or parties;

(b)     the Liquidation Trustee and Post-Confirmation Committee shall not be liable for any action reasonably taken or not taken in accordance with the advice of a Liquidation Trustee Professional; and

(c)     persons dealing with the Liquidation Trustee or Post-Confirmation Committee shall look only to the Liquidation Trust Assets to satisfy any liability incurred by the Liquidation Trustee to such person in carrying out the terms of this Agreement, and the Liquidation

Trustee shall not have any personal obligation to satisfy any such liability, except to the extent that actions taken or not taken after the Effective Date by the Liquidation Trustee are determined by a Final Order to be solely due to the Liquidation Trustee's own gross negligence, willful misconduct, fraud or breach of fiduciary duty.

6.3     Exculpation; Indemnification

(a)     Exculpation. From and after the Effective Date, the Post-Confirmation Committee, the Liquidation Trustee, the Liquidation Trustee Professionals, the Liquidation Trustee Non-Professionals, and each of their Affiliates, representatives, employees, directors, officers or principals, shall be and hereby are exculpated by all Persons and Entities, including, without limitation, Holders of Claims and other parties in interest, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon said parties pursuant to or in furtherance of this Agreement, the Plan, or any order of the Bankruptcy Court or applicable law or otherwise, except only for actions taken or not taken, from and after the Effective Date only to the extent determined by a Final Order of the Bankruptcy Court be solely due to their own respective gross negligence, willful misconduct, fraud, or, solely in the case of the Liquidation Trustee or Post-Confirmation Committee, breach of fiduciary duty.

(b)     No Holder of a Claim or other party-in-interest will have or be permitted to pursue any claim or cause of action against the Post-Confirmation Committee, Liquidation Trustee, the Liquidation Trustee Professionals, the Liquidation Trustee Non-Professionals, or any of their representatives, employees, directors, officers or principals for making payments in accordance with the Plan or this Agreement or for implementing the provisions of the Plan or this Agreement. Any act taken or not taken, in the case of the Liquidation Trustee and Post-Confirmation Committee, with the approval of the Bankruptcy Court, will be conclusively deemed not to constitute gross negligence, willful misconduct, or a breach of fiduciary duty.

(c)     Indemnification. The Liquidation Trust shall indemnify, defend and hold harmless the Post-Confirmation Committee, Liquidation Trustee, the Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals, solely from Liquidation Trust Assets, from and against any and all claims, causes of action, liabilities, obligations, losses, damages or expenses (including attorneys' fees and expenses) occurring after the Effective Date, other than to the extent determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct, or, solely in the case of the Liquidation Trustee and Post-Confirmation Committee, breach of fiduciary duty, to the fullest extent permitted by applicable law. Satisfaction of any obligation of the Liquidation Trust arising pursuant to the terms of this Article shall be payable only from the Liquidation Trust Assets, may be advanced (from insurance or Liquidation Trust Assets) prior to the conclusion of such matter, and such right to payment shall be prior and superior to any other rights to receive a distribution of the Liquidation Trust Assets.

## ARTICLE 7
## ESTABLISHMENT OF THE LIQUIDATION TRUST

7.1     Transfer of Assets to Liquidation Trust; Assumption of Liabilities

Pursuant to the Plan, the Debtors and the Liquidation Trustee hereby establish the

Liquidation Trust on behalf of the Liquidation Trust Beneficiaries, to be treated as the grantors and deemed owners of the Liquidation Trust Assets and the Debtors hereby transfer, assign, and deliver to the Liquidation Trust, on behalf of the Liquidation Trust Beneficiaries, all of their right, title, and interest in the Liquidation Trust Assets, including the related claims and Causes of Action of the Debtors, other than Causes of Action released in accordance with the provisions of the Plan or assigned to the Purchaser under the provisions of the Asset Purchase Agreement or prior to the Effective Date, released by the Debtors which release was approved by the Bankruptcy Court on notice to parties-in-interest, notwithstanding any prohibition of assignability under applicable non-bankruptcy law. Such transfer includes, but is not limited to, all rights to assert, waive or otherwise exercise any attorney- client privilege, work product protection or other privilege, immunity, or confidentiality provision vested in, or controlled by, the Debtors. The Liquidation Trustee agrees to accept and hold the Liquidation Trust Assets in the Liquidation Trust for the benefit of the Liquidation Trust Beneficiaries, subject to the terms of the Plan and this Agreement.

7.2     Title to Assets

On the Effective Date, the Debtors shall transfer the Liquidation Trust Assets to the Liquidation Trust for the benefit of the Liquidation Trust Beneficiaries. Notwithstanding any prohibition of assignability under applicable non-bankruptcy law and subject to the Plan, all assets and properties encompassed by the Plan shall vest in the Liquidation Trust in accordance with section 1141 of the Bankruptcy Code. Upon the transfer of the Liquidation Trust Assets to the Liquidation Trust, the Debtors shall have no interest in or with respect to such Liquidation Trust Assets or the Liquidation Trust. For all federal income tax purposes, all Parties and Liquidation Trust Beneficiaries shall treat the transfer of the Liquidation Trust Assets by the Debtors to the Liquidation Trust, as set forth in this Article 7 and in the Plan, as a transfer of such assets by the Debtors to the Liquidation Trust Beneficiaries entitled to distributions under this Agreement followed by a transfer by such Liquidation Trust Beneficiaries to the Liquidation Trust. Thus, the Liquidation Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

7.3     Valuation of Assets

As soon as practicable after the Effective Date, the Liquidation Trustee (to the extent that the Liquidation Trustee deems it necessary or appropriate in its discretion), shall value the Liquidation Trust Assets based on the good faith determination of the Liquidation Trustee. The valuation shall be used consistently by all Parties and the Liquidation Trust Beneficiaries for all federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the Liquidation Trust Assets.

## ARTICLE 8
## LIQUIDATION TRUST BENEFICIARIES

8.1     Identification of Liquidation Trust Beneficiaries

In order to determine the actual names and addresses of the Liquidation Trust Beneficiaries, the Liquidation Trustee shall be entitled to conclusively rely on the names and addresses set forth in the Debtors' Schedules or filed proofs of claim, unless the Liquidation Trustee receives timely notice of a Liquidation Trust Beneficiary's change of address. Each Liquidation Trust

Beneficiary's right to distribution from the Liquidation Trust, which is dependent upon such Liquidation Trust Beneficiary's classification under the Plan, shall be that accorded to such Liquidation Trust Beneficiary under the Plan.

## ARTICLE 9
## ADMINISTRATION

### 9.1    Purpose of the Liquidation Trust

The Liquidation Trust shall be established for the primary purpose of liquidating its assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Liquidation Trust.  Accordingly, the Liquidation Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidation Trust Assets, make timely distributions to the Liquidation Trust Beneficiaries and not unduly prolong its duration, and shall take or refrain from taking such other actions as may be necessary, in the Liquidation Trustee's reasonable judgment, to preserve and maintain the status of the Liquidation Trust as a "liquidation trust" and as a "grantor trust" within the meaning of Treasury Regulation sections 301.7701-4(d) and 1.671-4(a).  The Liquidation Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth in the Plan or this Agreement.

### 9.2    Books and Records

The Liquidation Trustee shall maintain books and records relating to the administration of the Liquidation Trust Assets and the distribution by the Liquidation Trustee of the proceeds therefrom in such detail and for such period of time as may be necessary to make full and proper accounting in respect thereof and to comply with applicable provisions of law.  The Liquidation Trustee shall also maintain books and records relating to the administration of the Liquidation Trust Assets (including the Causes of Action), the income and expenses of the Liquidation Trust, and the payment of expenses of and liabilities of, claims against or assumed by, the Liquidation Trust in such detail and for such period of time as may be necessary to make full and proper accounting in respect thereof and to comply with applicable provisions of law.  Except as otherwise provided herein or in the Plan, nothing in this Agreement requires the Liquidation Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidation Trust, or as a condition for making any payment or distribution out of the Liquidation Trust Assets. Subject to Section 6.08 of the Plan, the Post-Confirmation Committee may obtain information relating to the management of the Liquidation Trust Assets upon reasonable written notice to the Liquidation Trustee, subject to applicable privileges, confidentiality requirements and applicable law.

### 9.3    Compliance with Laws

Any and all distributions of Liquidation Trust Assets shall comply with all applicable laws and regulations, including, but not limited to, applicable federal and state tax and securities laws.

## ARTICLE 10

## SUCCESSOR LIQUIDATION TRUSTEE

10.1   Successor Liquidation Trustee

In the event the Liquidation Trustee is removed pursuant to this Agreement, resigns pursuant to this Agreement, or otherwise vacates its position, subject to Section 6.08 of the Plan, the Post-Confirmation Committee shall appoint a successor Liquidation Trustee by majority vote of all members. If a successor Liquidation Trustee is not so appointed, then the Bankruptcy Court shall appoint a successor in accordance with the best interests of the Liquidation Trust Beneficiaries. Any successor Liquidation Trustee appointed hereunder shall execute an instrument accepting such appointment. Thereupon, such successor Liquidation Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts and duties of its predecessor in the Liquidation Trust with like effect as if originally named herein; *provided*, *however*, that a removed or resigning Liquidation Trustee shall, nevertheless, when requested in writing by the successor Liquidation Trustee, execute and deliver any reasonable instrument or instruments conveying and transferring to such successor Liquidation Trustee all the estates, properties, rights, powers, and trusts of such removed or resigning Liquidation Trustee.

## ARTICLE 11
## REPORTING

11.1   Quarterly and Final Reports

As soon as practicable but in no event later than thirty (30) calendar days after the end of the first full quarter following the Effective Date and on a quarterly basis thereafter until all Cash in the Liquidation Trust has been distributed or otherwise paid out in accordance with the Plan and this Agreement, the Liquidation Trustee shall File a report with the Bankruptcy Court setting forth the amounts, recipients, and dates of all Distributions made by the Liquidation Trustee through each applicable reporting period.

11.2   Federal Income Tax

(a)   Grantor Trust Status. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Liquidation Trustee of a private letter ruling if the Liquidation Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidation Trustee), the Liquidation Trustee shall file tax returns for the Liquidation Trustee as a grantor trust pursuant to Treasury Regulation section 1.671-4(a).

(b)   Allocations of Liquidation Trust Taxable Income. Subject to the provisions of Article 11.2(a) hereof, allocations of Liquidation Trust taxable income shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restriction on distributions described herein) if, immediately prior to such deemed distribution, the Liquidation Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the Liquidation Trust Beneficiaries (treating any Holder of a Disputed Claim, for this purpose, as a current Liquidation Trust Beneficiary entitled to distributions), taking into account all prior and concurrent distributions from the

Liquidation Trust (including any distributions held in reserve pending the resolution of Disputed Claims). Similarly, taxable losses of the Liquidation Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidation Trust Assets. The tax book value of the Liquidation Trust Assets for this purpose shall equal their fair market value on the Effective Date or, if later, the date such assets were acquired by the Liquidation Trust, adjusted in either case in accordance with tax accounting principles prescribed by the United States Internal Revenue Code, the Treasury Regulations and any other applicable administrative and judicial authorities and pronouncements.

(c)     Tax Reporting Duties of Liquidation Trustee.  Within sixty (60) calendar days following the end of each calendar year, the Liquidation Trustee shall prepare and distribute a statement setting forth the information necessary for each Liquidation Trust Beneficiary to determine its share of items of income, gain, loss, deduction or credit for United States federal income tax purposes.

11.3    Other

The Liquidation Trustee shall file (or cause to be filed) any other statement, returns or disclosures relating to the Liquidation Trust or the Liquidation Trust Assets, that are required by the IRS or any other Governmental Unit.

### ARTICLE 12
### TRANSFERABILITY OF LIQUIDATION TRUST BENEFICIARIES' INTERESTS

12.1    Transferability of Liquidation Trust Beneficiaries' Interests

The beneficial interests that are owned by the Liquidation Trust Beneficiaries, which shall be reflected only on the records of the Liquidation Trust maintained by the Liquidation Trustee, shall be uncertificated, are not negotiable, and shall not be assignable or transferable voluntarily. In the case of a deceased individual Liquidation Trust Beneficiary, its executor or administrator shall succeed to such decedent's beneficial interest upon notice to the Liquidation Trustee.

### ARTICLE 13
### LIQUIDATION TRUSTEE PROFESSIONALS
### AND NON-PROFESSIONALS

13.1    Retention of Liquidation Trustee Professionals and Non-Professionals

(a)     The Liquidation Trustee shall have the right to retain its own professionals including, without limitation, claims, disbursing and transfer agents, legal counsel, accountants, experts and other agents or advisors, as the Liquidation Trustee deems appropriate (the "**Liquidation Trustee Professionals**") and on such terms as the Liquidation Trustee deems appropriate. The Liquidation Trustee Professionals shall be compensated in accordance with Article 13.2 hereof. The Liquidation Trustee Professionals so retained need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of the Committee and the Debtors.

(b)     The Liquidation Trustee shall have the right to retain non-professionals

including, without limitation, employees, independent contractors or other agents as the Liquidation Trustee deems appropriate (the "**Liquidation Trustee Non-Professionals**") and on such terms as the Liquidation Trustee deems appropriate. Such Liquidation Trustee Non-Professionals shall be compensated in accordance with Article 13.2 hereof. The Liquidation Trustee Non-Professionals so retained need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, employees, independent contractors or agents of the Committee or the Debtors.

13.2    Payment to Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals

(a)    After the Effective Date, Liquidation Trustee Professionals shall be required to submit reasonably detailed invoices on a monthly basis to the Liquidation Trustee and the Post-Confirmation Committee, including in such invoices a description of the work performed, who performed such work, and if billing on an hourly basis, the hourly rate of each such person, plus an itemized statement of expenses. The Liquidation Trustee shall pay those invoices fourteen (14) calendar days after a copy of such invoices is provided to the Liquidation Trustee and the Post-Confirmation Committee, without Bankruptcy Court approval, unless the Liquidation Trustee or the Post-Confirmation Committee objects. If there is a dispute as to a part of an invoice, the Liquidation Trustee shall pay the undisputed portion and the Bankruptcy Court shall resolve any disputed amount.

(b)    After the Effective Date, Liquidation Trustee Non-Professionals shall be required to submit to the Liquidation Trustee periodic invoices containing information with sufficient detail to assess the reasonableness of the fees and charges. The Liquidation Trustee shall pay those invoices fourteen (14) calendar days after a copy of such invoices is provided to the Liquidation Trustee and the Post-Confirmation Committee, without Bankruptcy Court approval, unless the Liquidation Trustee or the Post-Confirmation Committee objects. If there is a dispute as to a part of an invoice, the Liquidation Trustee shall pay the undisputed portion and the Bankruptcy Court shall resolve any disputed amount.

(c)    All payments to Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals shall be paid out of the Liquidation Trust Assets.

## ARTICLE 14
## TERMINATION OF LIQUIDATION TRUST

14.1    Duration and Extension

Notwithstanding any provision of the Plan to the contrary, the Liquidation Trust shall be dissolved no later than five (5) years from the Effective Date unless the Bankruptcy Court, upon a motion filed prior to the fourth anniversary of the Effective Date or the end of any extension period approved by the Bankruptcy Court (the filing of which shall automatically extend the term of the Liquidation Trust pending the entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period extension (not to exceed one (1) year, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidation Trust as a Liquidation trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust

Assets; *provided, however,* that adequate funding exists for such extension period as determined by the Bankruptcy Court; provided, further, that each request for an extension shall be approved by the Bankruptcy Court within six months prior to the conclusion of the extended term. After (a) the final Distribution of the balance of the assets or proceeds of the Liquidation Trust pursuant to the Plan, (b) the filing by or on behalf of the Liquidation Trust of a certification of dissolution with the Bankruptcy Court in accordance with the Plan, and (c) any other action deemed appropriate by the Liquidation Trustee, the Liquidation Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

14.2   Diligent Administration

The Liquidation Trustee shall, as applicable, (i) not unduly prolong the duration of the Liquidation Trust; (ii) at all times endeavor to resolve, settle or otherwise dispose of all claims that constitute Liquidation Trust Assets; (iii) effect the liquidation and distribution of the Liquidation Trust Assets to the Liquidation Trust Beneficiaries in accordance with the terms hereof; (iv) consult and confer with the Post-Confirmation Committee and keep it fully advised of its activities, and; (v) endeavor to terminate the Liquidation Trust as soon as reasonably practicable.

**ARTICLE 15**
**AMENDMENT AND WAIVER**

15.1   Amendment and Waiver

Any substantive provision of this Agreement may be materially amended or waived only with the written consent of the Liquidation Trustee or by order of the Bankruptcy Court if necessary to implement the Plan; *provided, however,* that no change may be made to this Agreement that would adversely affect the federal income tax status of the Liquidation Trust as a "grantor trust." Technical or non-material amendments to or waivers of portions of this Agreement may be made as necessary, to clarify this Agreement or to enable the Liquidation Trust to effectuate the terms of this Agreement, with the consent of the Liquidation Trustee.

**ARTICLE 16**
**MISCELLANEOUS PROVISIONS**

16.1   Intention of Parties to Establish Grantor Trust

This Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as a grantor trust.

16.2   Preservation of Privilege

In connection with the vesting and transfer of the Liquidation Trust Assets, including rights and Causes of Action, subject to applicable law, any attorney-client privilege, work-product protection, or other privilege or immunity attaching or relating to any documents or communications (of any kind, whether written or oral, electronic or otherwise) held by the Debtors shall be transferred to the Liquidation Trust and shall vest in the Liquidation Trust. Accordingly, in connection with the prosecution and/or investigation of the Causes of Action by the Liquidation

Trustee, any and all directors, officers, employees, counsel, agents, or attorneys-in-fact, of the Debtors, cannot assert any attorney-client privilege, work product protection, or other privilege or immunity attaching or relating to any documents or communications (of any kind, whether written or oral, electronic or otherwise) held by the Debtors or otherwise prevent, hinder, delay, or impede production or discussion of documents or communications requested by the Liquidation Trustee in discovery (whether formal or informal, and including without limitation, depositions, written discovery, and interviews).  The Debtors and the Liquidation Trustee shall take all reasonable and necessary actions to protect the transfer of such privileges, protections and immunities provided that the Debtors shall not incur any expense in so doing.

16.3    Prevailing Party

Subject to Article 6.3(c) hereof, if the Liquidation Trustee or the Liquidation Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Agreement or the enforcement thereof, then such prevailing party shall be entitled to collect any and all costs, expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action.

16.4    Confidentiality

The Liquidation Trustee, and each of its employees, members, agents, professionals and advisors, including the Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals and the members of the Post-Confirmation Committee, (each a "**Confidential Party**" and collectively the "**Confidential Parties**") shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to any Entity to which any of the Liquidation Trust Assets relates; *provided, however*, that such information may be disclosed if (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties, or (b) such disclosure is required of the Confidential Parties pursuant to legal process including but not limited to subpoena or other court order or other applicable laws or regulations.  In the event that any Confidential Party is requested to divulge confidential information pursuant to this subparagraph (b), such Confidential Party shall promptly, in advance of making such disclosure, provide reasonable notice of such required disclosure to the Liquidation Trustee to allow him sufficient time to object to or prevent such disclosure through judicial or other means and shall cooperate reasonably with the Liquidation Trustee in making any such objection, including but not limited to appearing in any judicial or administrative proceeding in support of any objection to such disclosure.

16.5    Laws as to Construction

This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey, without giving effect to rules governing the conflict of law.

16.6    Severability

Except with respect to provisions herein that are contained in the Plan, if any provision of this Agreement or the application thereof to any person or circumstance shall be finally determined

by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and shall be valid and enforceable to the fullest extent permitted by law.

16.7    <u>Notices</u>

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered by facsimile or e-mail (at the numbers or addresses set forth below) and deposited, postage prepaid, in a post office or letter box addressed to the person (or their successors or replacements) for whom such notice is intended at such address as set forth below, or such other addresses as may be filed with the Bankruptcy Court:

Liquidation Trustee:

KCP Advisory Group, LLC
700 Technology Park Drive
Suite 212
Billerica, MA  01821
Attn:  Jacen A. Dinoff
jdinoff@kcpadvisory.com


With a copy to:

Martha B. Chovanes, Esq.
Fox Rothschild LLP
2000 Market Street,
20th Fl.
Philadelphia, PA 19103
Email: mchovanes@foxrothschild.com

-and-

Joseph J. DiPasquale, Esq.
49 Market Street
Morristown, NJ  07960
Email: jdipasquale@foxrothschild.com

With a copy to:

[Post-Confirmation Committee Notice]

With a copy to:

Jonathan I. Rabinowitz, Esq.
Rabinowitz, Lubetkin & Tully, LLC
293 Eisenhower Parkway, Suite 100

Livingston, NJ  07039
Email: jrabinowitz@rltlawfirm.com

16.8    Notices if to a Liquidation Trust Beneficiary

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended to the name and address set forth on such Liquidation Trust Beneficiary's proof of claim or such other notice filed with the Bankruptcy Court, or if none of the above has been filed, to the address set forth in the Debtors' Schedules or provided to the Liquidation Trustee pursuant to Article 8.1.

16.9    Survivability

Notwithstanding any provision of the Plan to the contrary, the terms and provisions of this Agreement shall remain fully binding and enforceable notwithstanding any vacancy in the position of the Liquidation Trustee.

16.10    Headings

The section headings contained in this Agreement are solely for the convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

16.11    Conflicts with Plan Provisions

Except as otherwise expressly stated herein, if any of the terms and/or provisions of this Agreement conflict with the terms and/or provisions of the Plan, then the Plan shall govern.

IN WITNESS WHEREOF, the Parties hereto have either executed and acknowledged this Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

KCP Advisory Group, LLC, solely as Liquidation Trustee

By: _____
Name:  Jacen A. Dinoff

Custom Alloy Corporation

By: _____
Name: Adam M. Ambielli
Title: P r e s i d e n t

CAC Michigan, LLC

By: _____
Name: Adam F. Ambielli
Title:   Managing Member

# **Exhibit D**

*Purchase Price Allocation*

**Custom Alloy Purchase Price Allocation**

| | | |
|---|---|---|
| Cash Purchase Price | 35,930,707 | |
| Other Purchase Price adjustments | 140,153 | Equipment Depot and Signature Payments |
| Other Purchase Price adjustments | | Barings 2L Purchase |
| Total Purchase Price | 36,070,860 | |
| Liabilites Assumed | 26,085,793 | See OBS Detail Tab |
| Total Consideration | 62,156,653 | |

| Asset Class | Asset Class Description | Fair Value | Allocation of Tax Basis |
|---|---|---|---|
| Class I | Cash, Demand Deposits, etc. | | |
| Class II | Marketable Stock, government securities, etc. | | |
| Class III | Accounts Receivables, mortgages, etc. | 7,103,004 | 7,103,004 |
| Class IV | Inventory | 20,155,644 | 20,155,644 |
| * Class V | Assets other than Classes I, II, III, IV or VII assets | 21,274,657 | 21,274,657 |
| Class VI and VII | Intangibles, Goodwill and Going Concern | 13,623,347 | 13,623,347 |
| Total | | 62,156,653 | 62,156,653 |

* Class V Asset Breakdown

| | |
|---|---|
| SDF Assets | 8,097,165 |
| Prepaid Assets | 877,442 |
| Fixed Assets | 12,300,050 |
| Total Class V | 21,274,657 |

**TMS - Custom Alloys Balance Sheet**
**As of June 30, 2023**
**UNAUDITED**

| Assets | 6/15/2023 Opening Day Balance Sheet | Non-tax Adj. | 6/15/2023 Opening Day Balance Sheet |
|---|---:|---:|---:|
| Cash | | | |
| Accounts Receivable-Trade | 6,192,552 | | 6,192,552 |
| Accounts Receivable-ERC Refund | 1,418,217 | | 1,418,217 |
| Allowance for Doubtful Accounts | (507,765) | | (507,765) |
| Inventory | 14,843,272 | | 14,843,272 |
| Deferred Revenue Inventory | 6,312,372 | | 6,312,372 |
| Inventory Reserve | (1,000,000) | | (1,000,000) |
| Prepaid Assets | 877,442 | | 877,442 |
| Total Current Assets | 28,136,091 | | 28,136,091 |
| | | | |
| Fixed Assets | 12,300,050 | | 12,300,050 |
| Supplier Development Fund Assets | 8,097,165 | | 8,097,165 |
| ROU Asset | 8,229,037 | (8,229,037) | - |
| Goodwill | 16,608,688 | (185,341) | 16,423,347 |
| Total Long Term Assets | 45,234,940 | | 36,820,562 |
| | | | |
| Total Assets | 73,371,031 | | 64,956,653 |
| | | | |
| Accounts Payable | | | |
| Accrued A/P-Offsite Inventory | 3,799,882 | | 3,799,882 |
| Accrued A/P-ProForma | 447,081 | | 447,081 |
| Accrued Liabilities | 475,988 | | 475,988 |
| Deferred Revenues | 13,265,677 | | 13,265,677 |
| ROU Liability | 8,414,378 | (8,414,378) | - |
| Total Current Liabilities | 26,403,006 | | 17,988,628 |
| | | | |
| Long-Term Customer Advances | 8,097,165 | | 8,097,165 |
| | | | |
| Total Liabilities | 34,500,171 | | 26,085,793 |
| | | | |
| Equity | 38,870,860 | | 38,870,860 |
| Retained Earnings | | | |
| Total Liabilities and Equity | 73,371,031 | | 64,956,653 |

<u>**SCHEDULE 2.9**</u>

<u>**Allocation Methodology**</u>

The Purchase Price (and all Assumed Liabilities, capitalized costs and other relevant items) (the "<u>Tax Purchase Price</u>") shall be allocated among the Acquired Assets as follows:

| Asset Class | Allocation Methodology |
|---|---|
| Class I (cash, demand deposits, etc.) | The portion of the Tax Purchase Price allocated to the Class I Assets will be based on the fair market value of the Class I Assets. |
| Class II (marketable stock, government securities, etc.) | The portion of the Tax Purchase Price allocated to the Class II Assets will be based on the fair market value of the Class II Assets. |
| Class III (accounts receivables, mortgages, etc.) | The portion of the Tax Purchase Price allocated to the Class III Assets will be based on the fair market value of the Class III Assets. |
| Class IV (inventory, etc.) | The portion of the Tax Purchase Price allocated to the Class IV Assets will be based on the fair market value of the Class IV Assets. |
| Class V (assets other than Class I, II, III, IV, VI, or VII assets) | The portion of the Tax Purchase Price allocated to the Class V Assets will be based on the fair market value of the Class V Assets. |
| Classes VI and VII | Remainder of the Tax Purchase Price |